IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF TENNESSEE

REID VAN NESS,                                          )
      PLAINTIFF,                                     ) CASE NO. _____
                                                     )
V.                                                      ) JURY OF 12 DEMANDED
                                                     )
PAMELA STEPHENS, CHRISTOPHER W. LEA,                    )
WENDELL J. NAYLOR, RANDLOPH R. NASH,                    )
TIMOTHY W. WHEELER, DONALD S. HAYNES AND                )
SCOTTIE POARCH IN THEIR OFFICIAL CAPACITIES             )
AS MEMBERS OF THE TENNESSEE BOARD OF                    )
FUNERAL DIRECTORS AND EMBALMERS; AND                    )
CARTER LAWRENCE IN HIS OFFICIAL CAPACITY AS             )
COMMISSIONER OF THE TENNESSEE DEPARTMENT                )
OF COMMERCE AND THE STATE FIRE MARSHALL,                )
AND JONATHAN SKRMETTI, IN HIS OFFICIAL                  )
CAPACITY AS ATTORNEY GENERAL OF TENNESSEE,              )
      DEFENDANTS.                                    )

**VERIFIED COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**

**INTRODUCTION**

1.      This civil-rights lawsuit seeks to vindicate the First Amendment rights of Plaintiff

Reid Van Ness ("Mr. Van Ness") to advise and guide families through the deeply personal choices

surrounding both the end of life and being remembered after life.  The First Amendment is first for

a reason:  it is the bedrock for the protection of every citizen's rights:  It succinctly states:

> **Congress shall make no law respecting an establishment of religion, or**
> **prohibiting the free exercise thereof; or abridging the freedom of speech, or of**
> **the press; or the right of the people peaceably to assemble, and to petition the**
> **Government for a redress of grievances.**

2.      The First Amendment is applicable to the states through the Fourteenth Amendment.

3.      In this case, the State of Tennessee through the Tennessee Board of Funeral

Directors and Embalmers ("Funeral Board" or "Board") has violated <u>every</u> provision of the First

Amendment. To wit: The Funeral Board, through the use of excessive fines and threats of *criminal* prosecution and incarceration has denied or chilled Mr. Van Ness's ability to exercise the following protected First Amendment rights:

a. His freedom exercise of religion by prohibiting him from being *involved with and speaking* to churches, synagogues, other religious institutions and/or the funeral and/or memorial services for his family members, co-parishioners, friends and neighbors. The Board seeks to prevent Mr. Van from counseling those who are bereaving, serving as a pall bearer, speaking at religious services in religious institutions and gravesites.

b. His freedom of speech by prohibiting him from *speaking* with "current and prospective consumers" of funeral services. (which includes every person on planet Earth). The Funeral Board seeks to deny Mr. Van Ness *from speaking* with religious leaders, church authorities and their congregations about end-of-life decisions and funeral and/or memorial services. The Board seeks to deny him the freedom *to speak* with the decedent's family members and <u>his</u> family members, friends and neighbors. "Any action" by definition includes speaking and/or meeting with family members, friends and neighbors.

c. His Freedom of speech by prohibiting him from providing translation services for any "current and prospective consumers" of funeral services. (which again, includes every person on the plane). The Board seeks to prohibit Mr. Van Ness from simply helping non-English speaking people to understand the funeral process.

d. The Board seeks to prohibit Mr. Van Ness from "any action relating to" providing "removal services," "funeral services," "embalming services," "securing grave spaces or plots." The later – "securing grave spaces or plots" – is specially exempted from the

definition of "funeral directing" under Tenn. Code Ann. § 62-5-101(6)(B) which plainly states that "The sale, maintenance and beautification of grave spaces" is specifically exempt from the definition of "funeral directing." Yet the Board seeks to deny or chill "any action" by Mr. Van Ness related to the helping his family, friends, co-parishioners, and neighbors related to the same.

e. His freedom of the press and religion. The Board seeks to prohibit Mr. Van Ness from handing out memorial programs, pamphlets and/or bulletins at funeral services and grave site services.

f. His right to petition the government for a redress of grievances. The Board attempts to deny Mr. Van Ness from speaking *for any reason* with "medical examiners" who are generally government officials. Thus, the Board's threats deny of chill Mr. Van Ness right to petition certain government officials concerning their actions related to the death of his family members, friends and neighbors.

4. Mr. Van Ness describes himself as a "community death care advocate" and is part of a growing national movement rethinking the practices, customs, and approaches surrounding death. Mr. Van Ness shares his knowledge about end-of-life options with families to help them put their own end-of-life plan in place that is best for them and their loved ones. By engaging in these difficult but important conversation he can give families the practical, emotional, and non-technical support that funeral directors do not typically provide. Mr. Van Ness offers his services for free.

5. In June 2022, the State of Tennessee enacted Public Chapter 1014 (effective May 9, 2022) amending a prior statute with the goal of preventing Mr. Van Ness from speaking, meeting with, providing translation services to non-English speaking citizens or assisting his family

members, friends, and neighbors with their funeral and graveside services. This Public Law is codified in Tenn. Code Ann. § 62-5-101(13). (Exhibit A). It is believed that amendment was specifically and intentionally advanced by Funeral Board at the Tennessee Legislature with the sole goal of intimidating Mr. Van Ness and denying him his Constitutional protections. The State of Tennessee enacted this amendment attempting to turn Mr. Van Ness' mourning for friends, family and neighbors into a crime for which he could be incarcerated coupled with the threat of severe monetary punishments. (Which has already occurred).

6. However, Mr. Van Ness is specifically <u>exempt</u> from the regulatory scheme under Tenn. Code Ann. § 62-5-102 because he does <u>not charge</u> for his help, guidance and/or services, and in all cases is or was a family member, friend, or neighbor of the deceased person. (Exhibit B). The statue states:

> **Nothing** in this chapter shall be constituted to prevent or interfere with the ceremonies, customs, religious rites or religion of any people, denomination or sect, to prevent or interfere with any religious denomination, sect or any body composed of persons of a denomination, or to prevent or interfere with any church or synagogue from having its committee or committees prepare human bodies for burial **<u>or to the families, friends or neighbors of deceased persons who prepare and bury their dead without charge</u>**. (Emphasis added).

7. But beginning in early 2022, the Funeral. Board began investigating Mr. Van Ness's protected speech and actions under Tennessee's Embalmers and Funeral Directors laws and regulations. Though Mr. Van Ness's no longer has a funeral director's license and does not hold himself out to be a licensed funeral director, or engage in the technical conduct of licensed funeral professionals such as embalming, the Tennessee Board of Funeral Directors and Embalmers ultimately ordered he "cease and desist" from speaking with other adults about death care or assisting his family members, friends, and neighbors in their difficult times under threat of excessive fines and incarceration.

8. On June 21, 2022, the Funeral Board through the legal counsel for Regulatory Boards Division of the Tennessee Department of Commerce and Insurance sent a "cease and desist" styled letter to Mr. Van Ness outlining what it considered to be actions which would violate the newly enacted amendment to § 62-5-101(13) (Enacted May 9, 2022). (Exhibit C). The Funeral Board's letter claimed that under Public Chapter No. 1014, Mr. Van Ness was no longer considered an "Unlicensed Assistant." As such, he was under the continuing threat that if he took certain actions "the [Funeral] Department will administratively open a complaint against [him] regarding his unlicensed activity where civil penalties and other disciplinary action may be assessed). According to the Funeral Board's legal counsel the threat of "civil penalties and other disciplinary action" would be assessed for the conduct shown below. The Funeral Board's June 21, 2022, letter states: (emphasis added for elements that are most plainly speech and freedom of assembly).

For the sake of clarity, the following. Are examples that include, but are not limited to, actions that would be. Considered unlicensed activity if [Mr. Van Ness] were to engage in them.

- **Speaking** or engaging with current or prospective consumers in Tennessee.
- **Speaking** to medical examiners in Tennessee
- **Meeting** with clients to discuss arrangements to be provided in Tennessee
- **Translation services** for current and prospective consumers for Tennessee residents.
- Any action related to providing removal services to Tennessee residents
- Any action related to providing funeral services to Tennessee residents
- Any action related to providing embalming services to Tennessee residents
- Any action related to securing grave spaces or plots to Tennessee residents

If any of the above listed action or any others that involve providing funeral directing, embalming, or removal services to any resident of Tennessee, are performed or performed by someone else with your involvement such actions will be considered unlicensed activity on your behalf. Following such actions, the Department will administratively open a complaint against you regarding

unlicensed activity where civil penalties and other disciplinary action may be assessed.

9.      On November 14, 2023, the Tennessee Board of Funeral Directors and Embalmers met at its monthly meeting.  The approved November 2023 Minutes show that during this meeting the Funeral Board reviewed Case Nos. 2022021381, 2022044371, 2023029901 and 2023029921 related to Mr. Van Ness's alleged conduct. (Exhibit D).

10.      The Board's legal counsel recommended the following punishment for Mr. Van Ness which was approved by the Board: (Ex. D, p. 17):

> **$20,000.00** civil penalty plus the costs of investigation. Break-down of civil penalty for each of the cases.   FUN-2022021381 - $12,000.00, FUN-2022044371 - $1,000.00, FUN-2023029901 - $4,000.00, and FUN-2023029921 - $3,000.00. Authorize via Consent Order and formal hearing if necessary. (*Id*).

11.      The total civil penalty was $20,000.00 plus the costs of investigation. (*Id*).

12.      Further, a motion was made by the Board to make a referral to the district attorney's office for **criminal prosecution**.  Pursuant to Tenn. Code Ann. § 62-5-103, a violation of this Chapter is a class C misdemeanor, and it is the duty of the district attorney general to prosecute violations. (*Id*)

13.      Under Tennessee law, if convicted, Mr. Van Ness could be imprisoned for 30 days and/or fined $50.00 for a Class C misdemeanor for each alleged transgression. (See Tenn. Code Ann. § 40-35-111(e)(3).)

14.      The Funeral Board's actions effectively imposed a complete gag order on Mr. Van Ness preventing him from speaking about death to any "Tennessee resident" under threat of excessive civil penalties and/or criminal prosecution with incarceration up to 30 days.

15.      The Funeral Board's actions violate Mr. Van Ness' First Amendment free-speech rights, whether that speech is in the form of one-on-one, educational lectures to the public, assisting

the public by providing language translation services.  It violates his First Amendment <u>right to assembly</u> by prohibiting Mr. Van Ness from *meeting* with any person "to discuss" funeral arrangements before, during or *even after* such services have been rendered.  It violates Mr. Van Ness's freedom of the press by prohibiting him from preparing and delivering written memorial information during funeral and gravesite services, speaking at funeral services, commenting about Tennessee's funeral laws, or potentially truthful discussions / advertisements about his free services.

## JURISDICTION AND VENUE

16.     Plaintiff brings this civil rights lawsuit pursuant to the First and Fourteenth Amendments to the United States Constitution. the Civil Rights Act of 1871, 42 U.S.C. § 1983; and the Declaratory Judgment Act, 28 U.S.C. § 2201.

17.     Plaintiff seeks declaratory and injunctive relief against Defendants, future enforcement of Tennessee's Chapter 5 Funeral. Directors and Embalmers' Laws ("Tennessee funeral laws"), Tenn. Code Ann. § 62-5-101 *et seq*. and any regulations promulgated under Tennessee's funeral laws, and the policies and practices of Defendants that deny Plaintiff's ability to exercise all of his First Amendment rights, including his right to speak with adults, including family members, friends and neighbors, regarding all aspects of funeral services and death care and the providing of translation services.

18.     This Court has jurisdiction under 28 U.S.C. § 1331 and § 1343.

19.     Venue lies in this Court under 28 U.S.C. § 1391(b).

## PARTIES

20.     Plaintiff Mr. Reid Van Ness is a US citizen and resident of Goodlettsvile, Tennessee.

21.     Defendants Pamela Stephens, Christopher W. Lea, Scottie Poarch, Wendell J. Naylor, Randolph R. Nash, Timothy W. Wheeler, and Donald S. Haynes in their official capacities are members of the Tennessee Board of Funeral Directors and Embalmers.  Board members are responsible for adopting and enforcing regulations under Tennessee's funeral laws, including issuing show-cause orders and cease-and-desist orders. Tenn. Code Ann. § 62-5-201, *et seq*.  They are all sued in their official capacities.

22.     Carter Lawrence is the Commissioner of the Tennessee Department of Commerce and the State Fire Marshall.  The Department of Commerce and Insurance is the umbrella state agency in which the Funeral Board is situated.  He is responsible for receiving, investigating, and prosecuting all complaints regarding the licensure of funeral directors and funeral homes, and filing motions for cease-and-desist orders. He is sued in his official capacity. He is sued in his official capacity.

23.     Jonathan Skrmetti is the Attorney General of Tennessee.  He is responsible for receiving, investigating, and prosecuting all complaints against the state of Tennessee.  He is sued in his official capacity.

## STATEMENT OF FACTS

### Mr. Van Ness is Part of a Nationwide Movement Rethinking End-of-Life Care.

24.      Mr. Van Ness is one of many individuals across the country rethinking the practices, customs, and expenses of passing away.  Those in the movement rethinking death who share their knowledge with others are often called "death doulas," "death assistants," "death midwives," or more commonly known as "friends of the family."

25.     Death doulas differ from conventional funeral directors, nationwide and in Tennessee.  Licensed funeral directors usually have an arms-length relationship with their clients

and rarely provide the personal, nonmedical, or emotional support that Mr. Van Ness provides to the dying and their families.

26. As a death doula and community death care advocate, Mr. Van Ness seeks to inform the dying, their and his families, friends, fellow church members and neighbors, and occasionally the public at large of all their options regarding death care in Tennessee.

27. This often includes sharing information about services that conventional funeral directors and funeral homes offer. It also includes sharing information about alternatives to conventional funerals, such as environmentally conscious "green burials," "home funerals," "water cremation," and other alternative funeral arrangements-some of which are provided by licensed funeral professionals, but some of which can be done by the family, friends and religious sects by themselves.

28. For instance, a traditional home funeral is one alternative common in most of the world, most of history, and still in the United States in certain faith traditions, such as the Catholic wake or Jewish shemira (watching over and guarding the body). Ceremonies like these can be more intimate and personalized to a family's needs. They often occur in the home, where there is greater privacy, intimacy, and freedom to personalize saying goodbye to a loved one. Home funerals allow families to honor their own beliefs and are legal in all 50 states, including Tennessee.

29. Other alternatives growing in popularity include options for disposition of remains that take into account the ecological downsides of conventional cremation or burial with an elaborate casket. Options such as "green burial" avoid energy-intensive means or non-bio-degradable materials.

30. There is no legal presumption that when a person dies, that person's remains present a risk of infectious disease or any other health condition. In ordinary circumstances, human

remains present no material health and safety risk to those in the presence of the body for at least the first 72 hours after death.

31. In fact, what many now think of as a conventional funeral-involving embalming the body, holding a ceremony in a funeral parlor, and cremation or burying in an expensive casket-is a historically recent innovation. This now-conventional system often medicalizes death, making it the province of hospitals and hospice, without creating an emotionally supportive space for a dying person and their family to consider how they wish to approach death and to be remembered.

32. Friends, family members and neighbors like Mr. Van Ness and death doulas have a unique role in the continuum of care that a client's medical providers or hospice workers do not fulfill. The dying process itself is hard to talk about with family or doctors, and patients often do not want to seem a burden to busy medical professionals. And funeral directors are typically retained only after death and do not typically participate in emotional conversations about preparing for death.

33. Friends, family members and neighbors like Mr. Van Ness and death doulas fill this gap. Mr. Van Ness helps the dying, and their families decide among the options available for death, with the emotional support and detachment that comes with somebody who is <u>not</u> himself selling expensive goods and services like a casket or other merchandise or services such as embalming.

34. Friends, family members and neighbors like Mr. Van Ness and death doulas can also be advocates for the dying person with doctors, with funeral directors, and with the family. They develop a more personal and emotional connection. They can discuss options for the dying and their families to direct their own death care, like medical directives.

35. Friends, family members and neighbors like Mr. Van Ness and death doulas can also discuss the options available for being remembered. Because they are <u>not</u> selling funeral

services or merchandise, death doulas can help the people understand those options without a financial conflict of interest.

36.     Mr. Van Ness charges nothing for his services and has a personal relationship with his and the decedent's family, friends, fellow church members and/or neighbors to connect him to everyone he has assisted since 1992, and intends to assist, in their difficult times.

**Mr. Van Ness Assists his Family, Friends and/or Neighbors to Consider Their End-of-Life Care Options.**

37.     Mr. Van Ness was a licensed Tennessee Funeral Director from 1987 to 2020.

38.     In March 2020, Mr. Van Ness surrendered his Funeral Director license and retired.

39.     Mr. Van Ness remained troubled by what he saw was a "death-phobic culture," in which people are unlikely to engage in the important conversations surrounding death, such as how and where a person wants to die and what the decedent wants after death.

40.     Because that death-phobic culture makes conversations about death taboo, families are frequently caught off-guard when it comes to making important end-of-life care decisions, often at the most emotionally fraught times and when the dying person is no longer able to participate in these important conversations and decisions.

41.     Mr. Van Ness wants to address the death-phobic culture by educating and talking with his family members, friends, co-parishioners, neighbors, and other adults about end-of-life care before it is needed.  He affirms the reality of death, promotes healthy grieving, and respect his family members, friends, co-parishioners and neighbor's diverse moral and religious beliefs.

42.     Mr. Van Ness is not a licensed funeral director and does not hold himself out as one.

43.      Mr. Van Ness has never received any consumer complaint about the quality of the end-of-life guidance he has generously provided free of charge.

44.     Mr. Van Ness is not aware of a single instance in which an individual mistakenly took his services as those of a licensed funeral director or embalmer.

**Mr. Van Ness' Services Consist of Educating and Advising - In Other Words, He Speaks Family, Friends, Co-Parishioners, Neighbors and to Other Adults.**

45.     Mr. Van Ness's work is comparable to others in the movement rethinking death care, who often describe themselves as "friends of the family" or "death doulas."

46.      Mr. Van Ness uses his *extensive knowledge* of death care to help his family, friends and neighbors navigate the deeply personal decisions around death.

47.     Mr. Van Ness does not advertise his services to the public and instead relies entirely on word-of-mouth recommendations from his family members, friends, co-parishioners, priests, Rabbi and/or other religious leaders and neighbors.

48.     Mr. Van Ness often provides free, no-obligation conversation with the decedent's amily so they may learn more about funeral[1] and/or memorial services and ask questions.  He may direct them to others in the death care community, or he may arrange individualized free services.

49.     Mr. Van Ness does discuss end-of-life options with his family members, friends, neighbors, and other adults on topics including funeral and/or memorial options, options for body disposition (including alternative such as cremation, traditional burial, or green burial), and choices families have for remembrance services.

50.     Mr. Van Ness facilitates conversations with his family members, friends, neighbors, and other adults about desired levels of medical intervention in the case of a sudden accident or medical issue.  However, most of Mr. Van Ness's interactions occur after the decedent passes and when he is contacted by family members, friends, co-parishioners, and neighbors.

---

[1] "Funeral Services" generally designates that a body is present.  "Memorial Services" generally have no body, but urned (a/k/a cremated) remains may be present.

51.     Mr. Van Ness joins his family members, friends, neighbors, and other adults as a celebrant with family in religious and non-religious services as well as funeral and/or memorial services.   He discusses and coordinates personal information, music and reading selections, religious acknowledgements (if any), and other programming.   These conversations ideally take place prior to death so that the dying person is involved in providing their own preferences for post death care and how they would like to be remembered.

52.     Mr. Van Ness has visited with his family members, friends, co-parishioners, neighbors, and other adults as they approach the end of life to offer emotional support.   His tasks may include readings, music, conversation, healing touch, or general companionship with the individual prior to death.

53.     In the active stages of dying immediately leading up to death, Mr. Van Ness been present to provide emotional support to his family members, friends, co-parishioners, neighbors, and other adults.

54.     Mr. Van Ness provides assistance with drafting funeral and/or memorial programs, pamphlets and other written materials to hand out during funeral, memorial and/or graveside services.

55.     All these services share one thing in common: they are all speaking, writing, assembly, and deeply religious practices.   All of Mr. Van Ness's action fits squarely with in the time-honored protections of the First Amendment of the United States Constitution.

56.     Everything Mr. Van Ness does is expressive communication with his family members, friends, neighbors, co-parishioners and other adults.

57.     Mr. Van Ness does not have any "clients" as he does not charge for his services.

58. In Mr. Van Ness's one-on-one consultations, discussions and planning with his family members, friends, neighbors, co-parishioners, religious leaders and other adults include topics such as:

   a. How the person and their families wish to approach death and make their wishes known, including approaching important legal forms on end-of-life wishes such as the Tennessee Advance Directive for Health Care[2], Tennessee Directions for Health Care Professional[3], and the Tennessee Provider Identification of Surrogate.[4] (Mr. Van Ness is rarely present when a family is actually filling out paperwork, but instead advises them about what forms and options are available so that clients and their family can make informed choices to fill out the forms themselves).

   b. Whether and how to leave messages to friends and loved ones, including writings or video recordings.

   c. What rituals the dying person and their family wish to be included in any funeral, memorial and/or graveside service.

   d. Where the person and family would like to hold a funeral service, whether in a religious institution, a funeral home, or in the family's home or other venue.

   e. How the person would wish their remains to be disposed of, such as burial, cremation, or green burial. and

   f. Who makes up the community that will support the dying person in achieving end of life goals.

_____

[2] https://www.tn.gov/content/dam/tn/health/documents/Advance_Directive_for_Health_Care.pdf
[3] https://www.tn.gov/content/dam/tn/health/healthprofboards/hcf/Post_Form.pdf
[44] https://www.tn.gov/content/dam/tn/health/documents/PH-4269.pdf

59.     One important part of these conversations is to identify the point person for each of the tasks.  Thus, wishes about palliative medicine may be given to family and doctors, a family member may be given medical power of attorney, and transportation and burial is assigned to the funeral director.  Mr. Van Ness does not usurp the roles of any family member or professional but helps facilitate a plan to affect the wishes of the dying and their family.

60.     Mr. Van Ness also teaches families concepts and skills for approaching grief, including how to process grief healthily and how to best support the friends and family members most intimately affected by a death.

61.     If a family chooses to conduct a home funeral, Mr. Van Ness can provide verbal guidance during the home funeral, such as guidance on dressing the deceased's body or placing cooling packs around the body.  None of this involves specialized technical or medical knowledge, and these are all things that a family can lawfully do for themselves.  Mr. Van Ness does occasionally participate in actions involving human remains, but generally simply provides emotional support and verbal guidance.

62.      All Mr. Van Ness' family members, friends, co-parishioners and neighbors have access to a licensed funeral director's services in addition to Mr. Van Ness's guidance.

63.     In fact, most of Mr. Van Ness 's family, friends, co-parishioners and neighbors choose to pursue a more conventional funeral.

64.     Mr. Van Ness has good relationships with licensed funeral directors who share his open-minded attitude to death.  Many of these directors utilized his vast knowledge, understanding and experience as a resource.

65.     One service Mr. Van Ness offers is to provide guidance and support to families who are selecting funeral-director services.  He offers to go with family members, friends, co-

parishioners and neighbors to the funeral home and support the family as it considers its options and what death services it wishes. In this role, Mr. Van Ness is and acts just as a friend or relative would in having these conversations with a funeral director to ensure that his people are comfortable and feel empowered as they plan for their own death or their loved one's death.

66. Mr. Van Ness 's individualized advising does not involve:

a. Acting as the funeral director's agent for transportation services or funeral-director services although he has occasionally ridden as a passenger with the deceased and assists in the removal of the body from the hearse.

b. Selling the family flowers, catering services, transportation services, or anything else (although he may run an errand to buy a client something simple like a rosary or crucifix and get reimbursed at cost).

c. Accepting money from families to hold in trust in his own bank account for the future purchase of goods or services. However, he will occasionally deliver funds from the decedent's family to funeral service providers.

d. Advising families about technical legal, financial, or medical matters that are generally beyond the scope of layperson knowledge, such as the embalming of remains or contagious disease.

e. Providing any medical care other than basic first aid.

f. Advising families about anything that would be illegal for a layperson to perform during a home funeral.

g. Encouraging a family to have a home funeral when this is not the family's preference.

h. Discouraging families from having modern, full-service conventional funerals or from using the goods and services of funeral directors.

i.  Maintaining a physical building to provide the goods and services of licensed funeral directors; or,

j.  Filling out government documents and forms or filing such forms with government offices.

67.  In addition to Mr. Van Ness 's individualized advising, he gives generalized and informal educational lectures to larger groups. These include hospice organizations, churches, and other groups at public community events. Some common themes of Mr. Van Ness 's talks include the history of death care in the United States, eco-friendly end-of-life choices, the necessity of mourning ritual, and mourning versus grief. These events discuss these topics generally and are not tailored to advising a specific individual or their family.

68.  None of Mr. Van Ness's services involve the conduct of licensed funeral directors or embalmers. For instance, he does not do any of the following:

a.  Embalm remains.

b.  Store remains.

c.  Cremate remains.

d.  Bury or otherwise dispose of remains.

e.  Hold money in trust for future use or expenses, or,

f.  File death certificates or other legal paperwork.

69.  Mr. Van Ness does not possess specialized medical or technical knowledge beyond the scope of a former funeral director's knowledge. Mr. Van Ness is not a medical professional nor currently a funeral director.

70.  Mr. Van Ness intentionally avoids using language to describe herself that might confuse clients or the public. He does not use the terms "funeral director," mortician," undertaker,"

funeral service licensee," funeral director intern," embalmer," funeral home manager," or any variant of these titles when he talks to his family, friends, co-parishioners or neighbors.

71.     Far from acting as a funeral director, Mr. Van Ness sees his gratuitous services as complementary to funeral directors and funeral homes.

72.     The local funeral directors and funeral homes perform any specialized technical activities that Mr. Van Ness's family members, friends, neighbors, co-parishioners and other adults may wish, such as embalming remains, storage of remains, and transporting deceased persons. Mr. Van Ness does not perform these activities. Mr. Van Ness does occasionally ride with a driver representing a funeral director or funeral home to insure proper delivery of the decedent, but he does not own nor drive the transporting vehicle. At all times he represents the family of the decedent, or acting personally as a family member, friend, co-parishioner or neighbor of the decedent.

73.     Mr. Van Ness will discuss generally the services that funeral homes offer, and will explain the packages and with his family, friends, co-parishioners, and neighbors. All information is consistent with the information provided by hospice workers, social workers, and often published under Federal Trade Commission rules. Due his extensive knowledge and qualifications Mr. Van Ness is uniquely situated to discuss funeral home general price lists, outer container prices, casket prices, and other expenses with his family, friends, co-parishioners, and neighbors.

74.     Mr. Van Ness may accompany his family, friends, co-parishioners and/or neighbors to a funeral home to offer emotional support and advice, but it is the funeral director and funeral homes that discuss the specialized licensed services that they provide.

75.     Mr. Van Ness endeavors to make his services available to his family, friends, co-parishioners or neighbors regardless of their means.

**The Funeral Board Investigates Mr. Van Ness For Talking
to His Family, Friends, and Neighbors About Death Care
and Participating in Funeral Services.**

76.     Mr. Van Ness does not regard himself as a funeral director and does not hold himself out as a funeral director.

77.     Mr. Van Ness does not own a funeral home.

78.     Mr. Van Ness does not regard himself as competitors of funeral directors or funeral homes.

79.     Mr. Van Ness enjoys excellent cooperative relationships with local funeral directors and funeral homes.

80.     Mr. Van Ness knows Tennessee's funeral laws.

81.     Despite being exempt from the entire funeral regulatory scheme under Tenn. Code Ann. § 62-5-102, Mr. Van Ness has sought to comply with Tennessee state law at all times.

82.     Until November 2023, Mr. Van Ness was not aware of any complaints about his submitted to the Funeral Board by his family, friends, co-parishioners or neighbors.

83.     To his knowledge, no family member, friend, co-parishioners or neighbor has ever complained about his assistance.

84.     Shortly after Public Chapter No. 1014 was enacted in May 2022, the Funeral Board allegedly began receiving "complaints" from other funeral directors and parties with financial interest adverse to the public and Mr. Van Ness.

85.     These self-serving "complaints" targeted Mr. Van Ness' free speech, conduct, religious practices, right to assembly and freedom of the press and other actions clearly protected by the First Amendment of the United States Constitution.

86.     According to the Funeral Board's own records, these "complaints" did not allege that Mr. Van Ness had actually harmed or deceived any of his family member, friend, co-parishioners or neighbors, but only that his actions and conduct were those of an "Unlicensed Assistant." According to the Funeral Board, Mr. Van Ness is prohibited from acting as an "Unlicensed Assistant" which he never did, and is prohibited from exercising his free speech rights under the Frist Amendment.

87.     In its Jun 21, 2022, letter, the Funeral Board's legal counsel delineated the list above of all the speech, conduct and actions which the Funeral Board deemed illegal and punishable by excessive fines and imprisonment. This letter clearly states that if Mr. Van Ness continued to exercise his First Amendment rights the Funeral Board would "open a complaint against you regarding your unlicensed activity where civil penalties and other disciplinary action may be assessed."

**The Funeral Board Threatens Mr. Van Ness with Excessive Civil Fines and Imprisonment
For Talking to His Family, Friends, and Neighbors About Death Care
and Participating in Funeral Services.**

88.     At its November 2023, public Board Meeting the Funeral Board voted unanimously to refer Mr. Van Ness's exercise of his First Amendment Rights to the district attorneys' office for <u>crimina</u>l prosecution. (Ex. D).

89.     The Funeral Board voted to assess Mr. Van Ness fines of **$20,0000** plus the cost of the investigations in an unknown amount.

90.     The Funeral Board further voted to refer Mr. Van Ness' First Amendment actions to the district attorney's office for criminal imprisonment of up to 30 days (per alleged transgression) and fines of $50.00. (per alleged transgression)

91.    The Funeral Board is charged with administering and implementing Tennessee's funeral laws and promulgating regulations under them.  It has the authority to "conduct inspections and investigate complaints" to enforce the funeral laws and regulations. Tenn. Code Ann. § 62-5-208.

92.    The Board typically consists of seven members appointed by the governor: four of which are both licensed funeral directors and embalmers, two of which are licensed funeral directors or embalmers (or both), and one person who is not engaged in the business of a funeral director or embalmer. Tenn. Code Ann. § 62-5-201.

**As Applied, Tennessee's Funeral-Licensing Laws Restrict Broad Swaths of Speech.**

93.    The Funeral Board and its legal counsel position on the speech-restrictive nature of Tennessee's funeral-licensing laws, reflected in its June 21, 2022, letter is inconsistent with the First Amendment to the United States Constitution.

94.    The funeral-licensing statutes sweep incredibly broadly and, by their plain language, restrict a wide variety of speech when spoken or written by individuals without funeral licenses.

95.    For instance, as interpreted and applied the Funeral Board and its legal counsel, Tenn. Code Ann. 62-5-101(13) prohibits citizens in Mr. Van Ness's situation form:

- **Speaking** or engaging with consumers in Tennessee for any reason;

- **Speaking** to medical examiners in Tennessee for any reason;

- **Meeting** with clients to discuss funeral, memorial or gravesite arrangements to be provided in Tennessee by any person or entity;

- **Translation services** for current and prospective consumers for Tennessee residents on any topic or issue.

- Any action related to providing removal services to Tennessee residents

- Any action related to providing funeral services to Tennessee residents

- Any action related to providing embalming services to Tennessee residents

**INJURY TO PLAINTIFF**

96.    Because of Defendants' enforcement actions, Mr. Van Ness has been forced to dramatically curtail proving free services to members of the Hispanic and lower income communities who are his family, friends, co-parishioners and neighbors.

97.    Mr. Van Ness lives in constant fear that he will be arrested and imprisoned for exercising his First Amendment Rights.

98.    Mr. Van Ness lives in constant fear that he will be sued for excessive fines for exercising his First Amendment Rights.

99.    Because of the Defendants' enforcement actions and threat of excessive fines and incarceration, Mr. Van Ness had had to stop speaking with and meeting with his and the decedent's family members, friends, co-parishioners and neighbors.

100.    Because of the Defendants' enforcement actions and threat of excessive fines and incarceration, Mr. Van Ness has had to turn away his and decedent's family members, friends, co-parishioners and neighbors and tell them he cannot provide them with advice help and/or translation services.

101.    Because of the Defendants' enforcement actions and threat of excessive fines and incarceration, is afraid to speak and provide generalized educational lectures to larger groups.

102.     Because of the Defendants' enforcement actions and threat of excessive fines and incarceration, Mr. Van Ness has been prevented from pursuing his life mission to help people prepare for and deal with death.

103.     The Defendants' enforcement actions and threat of excessive fines and incarceration have silenced and chilled Mr. Van Ness's pure speech.  He was forced to stop giving people individualized advice about death, writing letters to loved ones, and providing guidance about home funerals or other alternatives to conventional funerals to his and the decedent's family members, friends, co-parishioners and neighbors.

104.     The Defendants' enforcement actions and threat of excessive fines and incarceration have silenced and chilled Mr. Van Ness's pure speech.  He is prohibited from "engaging with current or prospective consumers in Tennessee."  This includes the 6,910,840 Tennessee citizens and any of the 8,100,000,000+ persons currently alive in the world who might visit Tennessee, or who might want to speak to Mr. Van Ness while he is within the geographic boundaries of Tennessee.  The Funeral Board's overly broad prohibition of speaking with any "current or prospective consumers" of funeral services means he cannot speak to anyone in the entire world (and presumably the International Space Station) who is currently alive about such services. ("Prospective consumers" includes all persons currently alive or who know someone who is currently alive).

105.     The Defendants' enforcement actions and threat of excessive fines and incarceration have silenced and chilled Mr. Van Ness's pure speech.  He is prohibited from Speaking to any medical examiners in Tennessee for any reason concerning any subject at any time, nor can he seek redress for any action of the medical examiner.  The Funeral Board designated an entire class of official governmental persons Mr. Van Ness cannot speak with under any

circumstances, including the death of his own family members, friends, co-parishioners and/or neighbors.

106.    The Defendants' enforcement actions and threat of excessive fines and incarceration have silenced and chilled Mr. Van Ness's right to peaceably assemble and religious services, funeral services, memorials, and graveside services.

107.    Furthermore, the Funeral Board's prohibition on "meeting" with "clients" is both misleading and overly broad.  Mr. Van Ness has no "clients" as he provides his services without charge to his own family members, friends, co-parishioners and/or neighbors.  Furthermore, Tenn. Code Ann § 62-5-101 does not define the term "client" resulting in the Board fabricating an overly. Broad definition that it can apply at will to curtain Mr. Van Ness's rights.  *Black's Law Dictionary* defines a "client" as "[a]n individual, corporation, trust or estate that employs a professional to advise or assist it in the professional's line of work… (*Black's Law Dictionary*, Sixth Edition).  Mr. Van Ness is not a "professional," nor does he "advise or assist" in a non-existent line of work.  Nor is he "employed" by his or the decedent's family members, friends, co-parishioners or neighbors as that term issued in legal jurisprudence.  *Black's Law Dictionary* defines a "employ" in part as "[t]o engage in one's service; to hire; to uses as an agent or substitute in transacting business…" (*Id.*).  Mr. Van Ness transacts no "business" with anyone as he provides his services for free to his own family members, friends, co-parishioners and/or neighbors.

108.    However, despite his specific exemption from the funeral laws under Tenn. Code Ann. § 62-5-102, the Funeral Board seeks to restrict his exercise of his First Amendment Rights.

109.    The Defendants' enforcement actions and threat of excessive fines and incarceration has caused Mr. Van Ness to be concerned that a person facing his or her last moments

will die, wanting their advice and assistance, without having had an opportunity to consult with them regarding death care.

110. Because of Defendants' application and enforcement of Tennessee's funeral laws and regulations, Mr. Van Ness is faced with the constant fear of governmental harassment and imprisonment.

111. Because of Defendant' application and enforcement of Tennessee's funeral laws and regulations, Mr. Van Ness fears the termination of his efforts to educate and advise others of their death care options, as well as his efforts to tackle the "death-phobic culture."

112. But for the Defendants' application and enforcement of Tennessee's funeral laws and regulations, Mr. Van Ness would not fear the Board's future enforcement efforts and fines.

113. But for the Defendants' application and enforcement of Tennessee's funeral laws and regulations, Mr. Van Ness would not have to choose between helping the families who need them and risking enforcement and fines.

114. But for the Defendants' application and enforcement of Tennessee's funeral laws and regulations, Mr. Van Ness would resume providing individualized death care planning to his and the decedent's family, friends, and neighbors.

115. But for the Defendants' application and enforcement of Tennessee's funeral laws and regulations, Mr. Van Ness would resume speaking with his and the decedent's family, friends, co-parishioners and neighbors before and after the death of a loved one to provide them with the guidance, support, and assistance they want at that important time.

116. But for the Defendants' application and enforcement of Tennessee's funeral laws and regulations, Mr. Van Ness would resume providing guidance to his and the decedent's family,

friends, co-parishioners and neighbors performing their own home funeral after a death has occurred.

117. But for the Defendants' application and enforcement of Tennessee's funeral laws and regulations, Mr. Van Ness would not decline future opportunities to provide mentorship to others who are interested in learning more about or becoming themselves professionally involved in the death care movement.

118. But for the Defendants' application and enforcement of Tennessee's funeral laws and regulations, Mr. Van Ness would resume providing educational lectures about death care.

119. But for the Defendants' application and enforcement of Tennessee's funeral laws and regulations, Mr. Van Ness would not lose future friendships and co-parishioners as a result of declining to provide individualized and general advice regarding death care.

120. But for the Defendants' application and enforcement of Tennessee's funeral laws and regulations, Mr. Van Ness would be able to practice his own religious activities without the fear his participation in activities related to the death of his friends, family members, co-parishioners and neighbors will result in criminal investigation by the Board and possible imprisonment and excessive fines.

121. The Defendants' application and enforcement of Tennessee's funeral laws and regulations against Mr. Van has had a chilling effect on his speech and activities due to fear of enforcement and fines and imprisonment.

**CONSTITUTIONAL VIOLATIONS**
**COUNT I**
**42 U.S.C. §1983 - First Amendment - Conduct**

122. Paragraphs I through 121 are incorporated as though fully set forth herein.

123.    Plaintiff Mr. Van Ness advice and counseling of his and the decedent's family, friends, co-parishioners, neighbors and other adults regarding death care is pure speech, not a form of occupational conduct.

124.    The First Amendment's Free Speech Clause fully protects Mr. Van Ness's speech regarding death care, whether that speech is in the form of one-on-one consultations, educational lectures, or comments about Tennessee's funeral laws on a blog or website. Moreover, the First Amendment's protection does not hinge on whether Plaintiffs receive a fee for his advice.

125.    By enforcing Tennessee's funeral laws against the exempt Mr. Van Ness the Defendants are engaged in the content-based regulation of pure speech.

126.    Defendants lack even a substantial interest, much less a compelling one, in preventing a person exempt from the regulatory scheme like Mr. Van Ness from sharing important and useful knowledge about death care to his and the decedent's family, friends, co-parishioners, neighbors and other with interested adults.

127.    Even if a substantial or compelling interest existed - which it does not – a complete prohibition of speaking to any of his and the decedent's family, friends, co-parishioners, neighbors and other adults is not the least restrictive alternative to accomplish the Board's statutory mission to "… to adopt, promulgate, and enforce rules and regulations to effectuate this chapter, to transact its business, and to establish standards of service, practice, and education for licensees…" T.C.A. § 62-5-203 (Lexis Advance through the 2024 Regular Session)

128.    Not only are there less restrictive alternatives to a total speech ban, but Tennessee has also not attempted any less restrictive alternative to determine if a less speech-restrictive option would address any government interest supposedly advanced by the ban.

129.    By suppressing Plaintiff's, fully protected speech, the Defendants are inflicting an ongoing irreparable harm to Mr. Van Ness.

130.    The Defendants' enforcement of the challenged statutes, regulations, policies, and practices to suppress Plaintiff's free speech rights cannot withstand any level of First Amendment scrutiny.

## COUNT II
### 42 U.S.C. §1983 - First Amendment - Speech

131.    Paragraphs 1 through 130 are incorporated as though fully set forth herein.

132.    Plaintiff Mr. Van Ness's advice and counseling of his and the decedent's family, friends, co-parishioners, neighbors and other adults regarding death care is protected speech.

133.    The First Amendment's Free Speech Clause protects Mr. Van Ness's right to speak about both individualized advice and generalized education regarding death care to his and the decedent's family, friends, co-parishioners, neighbors and other adults.

134.    Plaintiffs Mr. Van Ness advertising through word-of-mouth is speech protected under the First Amendment.

135.    Plaintiffs Mr. Van Ness word-of-mouth is speech (advertisements) concern lawful activity, are truthful, and is not misleading.

136.    Mr. Van Ness does not speak (or advertise) that he is a licensed funeral director nor a licensed funeral home.

137.    Defendants do not have a consumer-protection interest or any other legitimate interest-in prohibiting truthful, non-misleading word-of-mouth speech (or advertisements) concerning lawful activity.

138. Defendants do not have a valid interest in banning Plaintiff's speech (advertisements) for his individualized consulting about death care to his and the decedent's family, friends, co-parishioners, neighbors and other adults.

139. Even if Defendants have a valid interest in banning Plaintiffs, truthful, non-misleading speech - which they do not - then ordering Mr. Van Ness to cease all discussions of Tennessee's funeral laws is not reasonably tailored to that interest.

140. By suppressing Plaintiff's fully protected speech, Defendants are inflicting an ongoing irreparable harm to Mr. Van Ness.

141. Defendants' enforcement of the challenged statutes, regulations, policies, and practices to suppress Plaintiff's free speech rights cannot withstand any level of First Amendment scrutiny.

## COUNT III
### 42 U.S.C. §1983 - First Amendment– Speech to Medical Examiners and Others

142. Paragraphs 1 through 141 are incorporated as though fully set forth herein.

143. Plaintiff Mr. Van Ness's communications with government officials such as medical examiners concerning his and the decedent's family, friends, co-parishioners, neighbors and other adults regarding death care is protected speech.

144. The First Amendment's Free Speech Clause protects Mr. Van Ness's right to speak and seek readdress government officials such as medical examiners concerning his and the decedent's family, friends, co-parishioners, neighbors and other adults.

145. Mr. Van Ness does not represent to government officials such as medical examiners that he is a licensed funeral director or a licensed funeral home.

146.     Defendants do not have a consumer-protection interest or any other legitimate interest-in prohibiting truthful, non-misleading word-of-mouth speech (or advertisements) concerning lawful activity.

147.     Defendants do not have a valid interest in banning Plaintiff's speech to and attempts seek readdress from government officials such as medical examiners concerning reports or investigations related to his and the decedent's family, friends, co-parishioners, neighbors and other adults.

148.     Even if Defendants have a valid interest in banning Plaintiff's communications with and attempts seek readdress from government officials such as medical examiners concerning reports or investigations related to his and the decedent's family, friends, co-parishioners, neighbors and other adults - which they do not - then ordering Mr. Van Ness to cease all discussions with government officials such as medical examiners is not reasonably tailored to that interest.

149.     By suppressing Plaintiff's fully protected speech, Defendants are inflicting an ongoing irreparable harm to Mr. Van Ness.

150.     Defendants' enforcement of the challenged statutes, regulations, policies, and practices to suppress Plaintiffs, free speech rights cannot withstand any level of First Amendment scrutiny.

## COUNT IV
## 42 U.S.C. §1983 - First Amendment – Translation Services / Speech

151.     Paragraphs 1 through 150 are incorporated as though fully set forth herein.

152.     Plaintiff Mr. Van Ness's providing of language translation services for his and the decedent's family, friends, co-parishioners, neighbors and other adults regarding death care is protected speech.

153.    The First Amendment's Free Speech Clause protects Mr. Van Ness's right to assist non-English speakers understand and navigate an English-based society.

154.    Plaintiff Mr. Van Ness's language translation assistance concerns lawful activity, are truthful, and are not misleading.

155.    Defendants do not have a consumer-protection interest or any other legitimate interest-in prohibiting accurate language translation assistance concerning lawful activity.

156.    Defendants do not have a valid interest in banning Plaintiff's speech in the form of language translation assistance for his and the decedent's family, friends, co-parishioners, neighbors and other adults.

157.    Even if Defendants have a valid interest in banning Plaintiffs accurate language translation assistance concerning lawful activity - which they do not - then threatening Mr. Van Ness to cease all discussions under the threat of excessive fines and imprisonment is not reasonably tailored to that interest.

158.    Even if Defendants have a valid interest in banning Plaintiffs accurate language translation assistance concerning funeral services - which they do not - then threatening Mr. Van Ness to cease all language translation services related to funeral, memorial and/or gravesite services under the threat of excessive fines and imprisonment is not reasonably tailored to that interest.

159.    By suppressing Plaintiff's fully protected speech and language translation services the Defendants are inflicting an ongoing irreparable harm to Mr. Van Ness.

160.    Defendants' enforcement of the challenged statutes, regulations, policies, and practices to suppress Plaintiff's free speech rights cannot withstand any level of First Amendment scrutiny.

**COUNT V**
**42 U.S.C. §1983 - First Amendment – Speech, Religious Expression, Assembly and Freedom of the Press**

161.     Paragraphs 1 through 160 are incorporated as though fully set forth herein.

162.     Plaintiff Mr. Van Ness's conduct related to assisting his and the decedent's family, friends, co-parishioners, neighbors and other adults regarding death care is protected speech, religious expression, assembly, freedom of the press and right to seek redress against the government.

163.     The First Amendment protects Mr. Van Ness's right to speak, meet, prepare and distribute written materials to both individuals and government officials regarding death care related to his and the decedent's family, friends, co-parishioners, neighbors and other adults.

164.     The Funeral Board's June 21, 2022, letter states that "any action" by Mr. Van Ness not specifically defined as "Funeral Directing under Tenn. Code Ann. 62-5-101(6) related to death care to his and the decedent's family, friends, co-parishioners, neighbors and other adults is protected under the First Amendment.

165.     Defendants do not have a consumer-protection interest or any other legitimate interest-in prohibiting "any action" by Mr. Van Ness related to providing free death care advice related to "removal services to Tennessee residents."  (Ex. A).

166.     Defendants do not have a consumer-protection interest or any other legitimate interest-in prohibiting "any action" by Mr. Van Ness related to providing free death care advice related to "funeral services to Tennessee residents."  (Ex. A).

167.     Defendants do not have a consumer-protection interest or any other legitimate interest-in prohibiting "any action" by Mr. Van Ness related to providing free death care advice related to "embalming services to Tennessee residents."  (Ex. A).

168.    Defendants do not have a consumer-protection interest or any other legitimate interest-in prohibiting "any action" by Mr. Van Ness related to providing free death care advice related to "securing grave spaces or plots to Tennessee residents."  (Ex. A).

169.    Defendants do not have a valid interest in banning Plaintiff's conduct or speech for his individualized consulting about death care to his and the decedent's family, friends, co-parishioners, neighbors and other adults.

170.    Defendants do not have a valid interest in banning Plaintiff from drafting, producing, printing and/or distributing religious and funeral related programs, pamphlets, and other written materials to about death care to his and the decedent's family, friends, co-parishioners, neighbors and other adults.

171.    Even if Defendants had a valid interest in banning Plaintiffs non-funeral directing conduct - which they do not - then ordering Plaintiffs Mr. Van Ness to cease "any action" related to the same is not reasonably tailored to that interest.

172.    By suppressing Plaintiff's fully protected conduct, speech and ability to write and distribute religious materials, the Defendants are inflicting an ongoing irreparable harm to Mr. Van Ness.

173.    Defendants' enforcement of the challenged statutes, regulations, policies, and practices to suppress Plaintiff's free conduct and speech rights cannot withstand any level of First Amendment scrutiny.


**COUNT VI**
**42 U.S.C. §1983 - First Amendment - General Speech**

174.    Paragraphs 1 through 173 are incorporated as though fully set forth herein.

175.    Plaintiff Mr. Van Ness's advice and counseling of his and the decedent's family, friends, co-parishioners, neighbors and other adults regarding death care is protected speech.

176.    The Funeral Board's June 21, 2022, letter states in closing that "If any of the above listed actions, or any to others that involve providing funeral directing, embalming or removal services to any resident of Tennessee are performed or performed by someone else with your involvement, such actions will be considered "unlicensed activity on your behalf." (Ex. A, p. 2).

177.    The First Amendment protects Mr. Van Ness's right to engage in expressive conduct and speech about both individualized advice and generalized education regarding death care to his and the decedent's family, friends, co-parishioners, neighbors and other adults.

178.    Defendants do not have a consumer-protection interest or any other legitimate interest in prohibiting "any of the above listed actions, or any to others…" related to Mr. Van Ness's undefined "involvement" with third parties who provide removal services for his and the decedent's family, friends, co-parishioners, neighbors and other adults who are Tennessee residents.

179.    Defendants do not have a consumer-protection interest or any other legitimate interest in prohibiting "any of the above listed actions, or any to others…" related to Mr. Van Ness's undefined "involvement" with third parties who provide funeral services for his and the decedent's family, friends, co-parishioners, neighbors and other adults who are Tennessee residents.

180.    Defendants do not have a consumer-protection interest or any other legitimate interest in prohibiting "any of the above listed actions, or any to others…" related to Mr. Van Ness's undefined "involvement" with third parties who provide embalming services for his and the decedent's family, friends, co-parishioners, neighbors and other adults who are Tennessee residents.

181. Defendants do not have a consumer-protection interest or any other legitimate interest in prohibiting "any of the above listed actions, or any to others…" related to Mr. Van Ness's undefined "involvement" with third parties who secure grave spaces or plots" for his and the decedent's family, friends, co-parishioners, neighbors and other adults who are Tennessee residents.

182. Defendants do not have a valid interest in banning Plaintiff's speech (advertisements) for his individualized consulting about death care to his and the decedent's family, friends, co-parishioners, neighbors and other adults.

183. Even if Defendants have a valid interest in banning Plaintiffs, truthful, non-misleading speech - which they do not - then ordering Plaintiffs Mr. Van Ness to cease all discussions of Tennessee's funeral laws and services is not reasonably tailored to that interest.

184. By suppressing Plaintiff's fully protected speech, Defendants are inflicting an ongoing irreparable harm to Mr. Van Ness.

185. Defendants' enforcement of the challenged statutes, regulations, policies, and practices to suppress Plaintiff's free speech rights cannot withstand any level of First Amendment scrutiny.

## REQUEST FOR RELIEF

Plaintiff respectfully request the following relief:

1. A declaration that Defendants' enforcement of Tennessee's funeral statutes and regulations violates the First Amendment as applied to Plaintiff.

2. A preliminary and permanent injunctions enjoining future enforcement of Tennessee's funeral laws and regulations as applied to Plaintiff in violation of the First Amendment.

3.      Attorneys, fees and costs pursuant to 42 U.S.C. §1983 and §1988 and any other

relevant statute; and,

4.      Any other relief that the Court deems appropriate.


RESPECTFULLY SUBMITTED this 13th day of November 2024.


__/s/ James Roberts_____
James D. R. Roberts #017537
**Creditor Law Center, PLLC Attorneys at Law**
PO Box 641, Dickson, Tennessee 37056
(615) 242-2002 office
Jim.Roberts@CreditorLawCenter.com
*Attorney for Reid Van Ness*

IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF TENNESSEE


REID VAN NESS,                                          )
      PLAINTIFF,                                    ) CASE NO. _____
                                                      )
V.                                                      ) JURY OF 12 DEMANDED
                                                      )
PAMELA STEPHENS, CHRISTOPHER W. LEA,                    )
WENDELL J. NAYLOR, RANDLOPH R. NASH,                    )
TIMOTHY W. WHEELER, DONALD S. HAYNES AND                )
SCOTTIE POARCH IN THEIR OFFICIAL CAPACITIES             )
AS MEMBERS OF THE TENNESSEE BOARD OF                    )
FUNERAL DIRECTORS AND EMBALMERS; AND                    )
CARTER LAWRENCE IN HIS OFFICIAL CAPACITY AS)
COMMISSIONER OF THE TENNESSEE DEPARTMENT)
OF COMMERCE AND THE STATE FIRE MARSHALL,   )
AND JONATHAN SKRMETTI, IN HIS OFFICIAL                  )
CAPACITY AS ATTORNEY GENERAL OF TENNESSEE,)
      DEFENDANTS.                                   )


**VERIFICATION OF PLAINTIFF REID VAN NESS**

1. I, Reid Van Ness, declare as follows:

2. I am a Plaintiff in the above-captioned civil action.

3. I have read the foregoing complaint and know the contents thereof

4. The facts contained in this complaint are true and correct to my own knowledge.

5. The statements of law in those paragraphs accurately reflects my understanding of Tennessee's funeral laws and regulations.

6. All exhibits referenced in and attached to this complaint are true and correct to my own knowledge.

7. If called upon, I would competently testify as to these facts and my knowledge.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on November 13, 2024.

_____ /s/ Reid Van Ness _____
Reid Van Ness