# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF TENNESSEE
# NASHVILLE DIVISION

| | |
|---|---|
| **REID VAN NESS** ) | CASE NO. 3:24CV01353 |
| ) | **Judge Waverly Crenshaw** |
| **Plaintiff,** ) | **Magistrate Frensley** |
| ) | |
| **v.** ) | |
| ) | |
| **TENNESSEE BOARD OF FUNERAL** ) | |
| **DIRECTORS AND EMBALMERS,** ) | |
| **ET AL.,** ) | |
| ) | |
| **Defendants.** ) | |

## DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION TO DISMISS PLAINTIFF'S COMPLAINT

### I. INTRODUCTION

Defendants, by and through counsel, submit this Memorandum of Law in support of their Motion to Dismiss Plaintiff's Complaint pursuant to Rules 12(b)(1) and (6) of the Federal Rules of Civil Procedure.

### II. FACTUAL BACKGROUND

**A. The Tennessee Board of Funeral Directors and Embalmers Licenses and Regulates the Provision of Funeral Services in the State.**

Defendant Tennessee Board of Funeral Directors and Embalmers ("Funeral Board") regulates the provision of funeral services in the State of Tennessee under a statutory scheme that requires funeral directors and embalmers to be licensed. Tenn. Code Ann. §§ 62-5-101 to 62-5-810; Tenn. Comp. R. & Reg. 0660-01 to -12. The laws permit licensed funeral directors and embalmers to employ unlicensed assistants who work under the direction and supervision of a licensed funeral director and/or embalmer. Tenn. Code Ann. §§ 62-5-101(13)(A); 62-5-313(a).

A person seeking a funeral-director license must complete two years of apprenticeship under the direction and supervision of a licensed funeral director. Tenn. Code Ann. § 62-5-305. Apprentices are required to register with the Funeral Board. *Id.* § 62-5-312. The use of the names of any living person who has not been licensed under the statutory scheme "on any card, sign, stationery or other printed or written instrument or device, in any announcement or advertisement or in any manner so as to give or tend to give the impression that the person is licensed or entitled to practice either as a funeral director or embalmer" is prohibited. *Id.* § 62-5-314.

> **B.     Plaintiff Previously Held Tennessee-Issued Funeral Director and Embalmer Licenses and Surrendered Both in March 2020 in the Face of Numerous Consumer Complaints.**

Plaintiff, Reid Van Ness, is a formerly licensed funeral director and embalmer. Compl., D.E. 1 ¶ 38, PageID#: 11. Plaintiff surrendered his licenses in March 2020. *Id.* According to a Consumer Alert issued by the Tennessee Department of Commerce and Insurance, at the time Plaintiff surrendered his funeral director license, he was being investigated by the Funeral Board. *Consumer Alert,* issued by the Tennessee Department of Commerce and Insurance ("TDCI") December 6, 2021, https://www.tn.gov/commerce/news/2021/12/6/consumer-alert-for-tennessee-consumers-and-funeral-professionals.html, accessed December 7. 2024, 2:57 p.m.; *see also* Ex. C to Compl., D.E. 1, *Fun. Bd. Ltr.,* D.E. 1-4.[1]

Plaintiff was sued (in this District) at least five times between December 2020 and November 2021 by his customers for matters that originated as Board complaints filed against him before the change in the law discussed below. The lawsuits are styled as follows:

---

[1] Plaintiff refers to the exhibit filed as D.E. 1-4 as Exhibit C throughout the Complaint. However, it is marked on the face of the exhibit as Exhibit "D." Plaintiff refers to the exhibit filed as D.E. 1-5 as Exhibit D throughout the Complaint. Accordingly, Defendants will likewise refer to the Funeral Board letter, D.E. 1-4, as Exhibit C.

2

Case 3:24-cv-01353     Document 34     Filed 12/20/24     Page 2 of 18 PageID #: 223

*Torres v. Van Ness et al.,* 3:2021cv583 filed July 29, 2021;

*Ralios v. Van Ness et al.,* 3:2021cv778 filed October 8, 2021;

*Islas and Lechuga v. Van Ness et al.,* 3:2021cv877 filed November 21, 2021;

*Lopez v. Van Ness et al.,* 3:20cv1073; filed December 15, 2020; and

*Castillo et al. v. Van Ness et al.,* 1:21cv68, filed November 1, 2021.[2]

In addition, as noted above, TDCI issued a Consumer Alert Bulletin on December 6, 2021, alerting Tennessee residents that Mr. Van Ness surrendered both his funeral director and embalmer licenses while being investigated for activities involving providing funeral director services that were considered harmful to the public seeking those services. *See* https://www.tn.gov/commerce/news/2021/12/6/consumer-alert-for-tennessee-consumers-and-funeral-professionals.html, accessed December 7. 2024, 2:57 p.m.[3]

### C. Effective May 9, 2022, the General Assembly Amends Funeral Licensing Statute and Prohibits Formerly Licensed Directors who Surrender their License in the Face of Pending Discipline from Serving as "Unlicensed Assistants" to Licensed Funeral Directors.

In May 2022, the legislature amended the Funeral Board's licensing scheme to add the following definition of "Unlicensed assistant":

(A) Means an individual who assists in the operation of a funeral establishment, under the direction and supervision of a funeral director or embalmer, and who is not a licensed funeral director or embalmer pursuant to § 62-5-303.

---

[2] These lawsuits were consolidated under *Lopez v. Van Ness, et al.* As further discussed in Argument Section D below, federal courts may take judicial notice of public records and proceedings in other courts of record. *See Granader v. Pub. Bank*, 417 F.2d 75, 82-83 (6th Cir. 1969) (collecting cases); *see also Rodic v. Thistledown Racing Club, Inc.,* 615 F.2d 736, 738 (6th Cir. 1980).

[3] The Court can also take judicial notice of the fact that a Consumer Alert was issued and is posted on the Department of Commerce and Insurance's website and of the contents of the alert as a public record. Fed. R. Evid. 201.

(B) Does not mean an individual who previously held a funeral director or embalmer license in this state that was revoked, suspended, or voluntarily surrendered with outstanding complaints.

Tenn. Code Ann. § 62-5-101(13) (added by 2022 Tenn. Pub. Acts, ch. 1014, § 3). As a result of this change in the law, Plaintiff could not serve as an unlicensed assistant to a licensed funeral director or embalmer.[4]

### D. Counsel for the Funeral Board Writes Plaintiff on June 21, 2022, Advising him of the Change in the Law.

On June 21, 2022, Plaintiff was sent a letter by legal counsel for the Funeral Board notifying him of the change in the law regarding the definition of "Unlicensed Assistant," and outlining conduct that potentially violated the statute. Compl., D.E. 1 ¶ 8, PageID#: 5; Ex. C to Compl, *Fun. Bd. Ltr.,* D.E. 1-4, PageID# 50. The letter concluded:

> If any of the above listed actions, or any others that involve providing funeral directing, embalming, or removal services to any resident of Tennessee, are performed or performed by someone else with your involvement, such actions will be considered unlicensed activity on your behalf. Following such action, the Department will administratively open a complaint against you regarding unlicensed activity where civil penalties or other disciplinary action may be assessed.

Ex. C to Compl, *Fun. Bd. Ltr.,* D.E. 1-4, PageID#: 51. In other words, if Plaintiff continued to engage in activity that involved *funeral directing, embalming, or body removal services,* those activities would violate the statute even if done under the supervision of a licensed funeral director and embalmer, and Plaintiff could be subject to an administrative investigation regarding unlicensed activity. *See id.*

---

[4] The prior version of the statute recognized as an unlicensed assistant only the category of "Resident trainee" or "apprentice." Tenn. Code Ann. § 62-5-101(11) (2014).

**E.    At the Funeral Board's November 2023 Meeting, the Board Considered Four Open Cases Against Plaintiff for Engaging in Unlicensed Funeral Director Activity; Adopts a Recommendation to Impose a Civil Penalty and Referral to the District Attorney's Office for the Conduct and Dismissal of Complaint That He Engaged in Unlicensed Embalming Activity.**

At the Funeral Board's November 14, 2023, meeting, it considered four pending cases that prompted an investigation of Plaintiff and had been opened after the change in the law: Case Nos. 2022021381, 2022044371, 2023029901, and 2023029921. Ex. D to Compl., Minutes, D.E. 1-5, PageID ##: 62-71. In Case No. 2022021381, Plaintiff had been observed by investigators working directly with another licensed funeral director. *Id.* at PageID#: 62. Investigators also confirmed with a grave digger at a local cemetery that Plaintiff arranged for the opening and closing of the grave and presented a check for those services. *Id.*

In another case, sworn affidavits were obtained documenting the fact that Plaintiff was providing funeral-director services to a family and receiving payments. *Id.* at PageID#: 64. In another, sworn affidavits were provided noting that Plaintiff lied about his identity and represented himself as another funeral director and not himself; he received a cash payment for funeral director services without providing a receipt; and he was requesting to "embalm, prepare, and dress the decedent." *Id.* at PageID#: 65. And the fourth case involved Plaintiff's selling funeral and burial services and taking payments for those services. *Id.* at PageID#: 66.

Investigators presented video, photographic and testimonial evidence, among other things, that Plaintiff was holding himself out as a funeral director and conducting funeral services; receiving payment for services; communicating with cemeteries to arrange for interment of decedents and purchase of cemetery plots; selling funeral services; providing contracts and statements of funeral goods and services; and transporting bodies and removing them from a hearse. *Id. at PageID*#: 62-71.

Based on these complaints, it was recommended to the Funeral Board that it impose civil penalties that, in the aggregate, totaled $20,000.00, through a "Consent Order and a formal hearing if necessary" *Id.* at PageID#: 71. The Board approved the recommendation and, on its own motion, approved a vote to refer the matter to the District Attorney's Office for further action. *Id.*

### F. Plaintiff Files this Action against the Funeral Board Alleging Violation of his First Amendment Rights.

On November 14, 2024, Plaintiff sued the members of the Funeral Board, the Commissioner of the Department of Commerce and Insurance, and the Tennessee Attorney General, all in their official capacities. Plaintiff alleges that he is a "death doula" or "community death care advocate" who merely provides "end-of-life guidance," free of charge, to "family members, friends, co-parishioners, neighbors, and other adults bout end-of-life care." Compl., D.E. 1, ¶¶ 4, 24-36, PageID# 3, 8-11. He asserts that he is "specifically *exempt* from the regulatory scheme under Tenn. Code Ann. § 62-5-102 because he does *not charge* for his help," *id.* at ¶ 6, PageID# 4 (emphasis in original), and he pointedly denies that his services "involve the conduct of licensed funeral directors or embalmers," *id.* at ¶ 68, PageID# 17; *see also id.* at ¶¶ 65-66, PageID## 15-16.

Plaintiff further alleges that all his action "fits squarely within the time-honored protections of the First Amendment of the United States Constitution," *id.* at ¶ 1, PageID# 13, and that Defendants' enforcement of Tennessee's funeral laws against him violates his rights under the First Amendment, *id.* at PageID# 27; *see also id.* at PageID## 28, 29, 30, 31, 33, 35. Plaintiff claims he does not "engage in the technical conduct of licensed funeral professionals such as embalming…" anymore. *Id.* at ¶ 7, PageID#: 4. Instead, he characterizes the services he now offers, after surrendering his license, as "gratuitous" and "complementary to funeral directors and funeral homes." *Id.* at ¶ 72, PageID#: 18. At all times, Plaintiff claims, he acts as a representative

6

of the family of the decedent, or he acts "personally as a family member, friend, co-parishioner or neighbor of the decedent." *Id.* For example, he discusses, for free, end-of-life options with "adults on topics including funeral and/or memorial options, options for burial and disposition (including alternative (sic) such as cremation, traditional burial, or green burial), and choices families have for remembrance services." *Id.* at ¶ 50, PageID#: 12.

### III. LAW AND ARGUMENT

A motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(1) and (6) requires the Court to construe the Complaint filed by the Plaintiff in the light most favorable to the Plaintiff, while accepting all factual allegations as true. *Meador v. Cabinet for Hum. Res.*, 902 F.2d 474, 475 (6th Cir. 1990); *see also Gabbard v. First Tenn. Bank*, 2005 WL 2922187, at *1 (E.D. Tenn. Nov. 4, 2005). However, the Complaint "must articulate more than a bare assertion of legal conclusions." *Gabbard,* 2005 WL 2922187, at *1. In fact, the Complaint "must contain either direct or inferential allegations respecting all the material elements to sustain recovery under some viable legal theory." *Id.* (*quoting Scheid v. Fanny Farmer Candy Shops, Inc.,* 859 F.2d 434 (6th Cir. 1998)). "A plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than mere labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do[.]" *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555 (2007) (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986) (on a motion to dismiss, courts "are not bound to accept as true a legal conclusion couched as a factual allegation")).

> To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it

7

Case 3:24-cv-01353    Document 34    Filed 12/20/24    Page 7 of 18 PageID #: 228

'stops short of the line between possibility and plausibility of "entitlement to relief."'

(internal citations omitted). *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 555). A complaint should be dismissed for failure to state a claim if the plaintiff "can prove no set of facts in support of his claim which would entitle him to relief." *Claybrook v. Birchwell,* 199 F. Supp. 3d 350, 357 (6th Cir. 2000).

Rule 12(b)(1) provides for the dismissal of an action for lack of subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1). The motion can challenge the sufficiency of the pleadings or the factual existence of subject matter jurisdiction. *United States v. Ritchie,* 15 F.3d 592, 598 (6th Cir.1994). A facial challenge looks at whether the Complaint has alleged a basis for subject matter jurisdiction, and the court then takes all allegations of the complaint as true as in a Rule 12(b)(6) motion. *Id.* A factual attack examines the factual basis for subject matter jurisdiction and the court considers matters beyond the pleadings and weighs evidence. *DLX, Inc. v. Kentucky*, 381 F.3d 511 (6th Cir. 2004).

### A. Plaintiff Lacks Standing to Bring his First Amendment Claims.

Plaintiff claims that he wants to "vindicate" his First Amendment right to "advise and guide families through" their end-of-life choices, Compl., D.E. 1, ¶ 1, PageID #:1, and "the State of Tennessee through the Tennessee Board of Funeral Directors and Embalmers . . . has violated every provision of the First Amendment" through "the use of excessive fines and threats of criminal prosecution and incarceration." *Id.* at ¶ 3, Page ID##: 1-2 (emphasis omitted). But Plaintiff also alleges that his protected conduct falls outside the scope of the Funeral Board statutes. He alleges that he "offers his services for free," *id.* at ¶ 4, Page ID#: 3 (emphasis omitted), and is consequently "exempt from the regulatory scheme under Tenn. Code Ann. § 62-5-102," *id.* at ¶ 6 PageID #: 4 (emphasis omitted); he also alleges that the services he provides do not "involve the

conduct of licensed funeral directors or embalmers," *id.* at ¶ 4, PageID #: 3. Plaintiff's allegations therefore fall short of establishing that Plaintiff has standing to bring this pre-enforcement challenge.

"To establish Article III standing, a plaintiff must show (1) an 'injury in fact,' (2) a sufficient 'causal connection between the injury and the conduct complained of,' and (3) a 'likel[ihood]' that the injury 'will be redressed by a favorable decision." *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 157-58 (2014) (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560-61 (1992)). "The party invoking federal jurisdiction bears the burden of establishing standing." *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 411-12 (2013) (quoting *Lujan*, 504 U.S. at 561). "[E]ach element must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, i.e., with the manner and degree of evidence required at the successive stages of the litigation." *Driehaus*, 573 U.S. at 158 (internal quotations omitted).

Ordinarily, "an injury" in the context of a constitutional challenge requires that the government enforce the allegedly unconstitutional law against the plaintiff before he has standing to sue. But courts have recognized some plaintiffs may establish standing "from an imminent, rather than an actual, injury, but only when 'the threatened injury is real, immediate, and direct.'" *Crawford v. U.S. Dept. of the Treasury*, 868 F.3d 438, 454 (6th Cir. 2017) (quoting *Davis v. FEC*, 554 U.S. 724, 734 (2008)). Pre-enforcement challenges may be brought only when a plaintiff "(1) alleges an intention to engage in a course of conduct arguably affected with a constitutional interest, (2) that the challenged statute proscribes, and (3) the plaintiff's intention generates a certainly impending threat of prosecution." *Friends of George's, Inc. v. Mulroy*, 108 F.4th 431, 435 (6th Cir. 2024) (internal quotations and citations omitted). Plaintiff cannot satisfy those

requirements. Rather, Plaintiff has expressly disavowed an intent to engage in conduct proscribed by statute.

### 1. Plaintiff fails to allege an impending threat of prosecution by the Board for the conduct in which he intends to engage.

Plaintiff does allege "an intention to engage in a course of conduct arguably affected with a constitutional interest"—he alleges that he provides services as a "death doula" or "community death care advocate" and that "[a]ll of [his] action fits squarely within the time-honored protections of the First Amendment." Compl., D.E. 1, ¶¶ 4, 24, 26, 55, PageID##: 3, 8, 9, 13. But he does not allege in intention to engage in conduct "that the [Funeral Board statutes] proscribe[]." *Friends of George's*, 108 F.4th at 435. Indeed, Plaintiff alleges exactly the opposite—that the protected conduct in which he engages and intends to engage is *not* proscribed by statute, because it is not unlicensed *funeral directing or embalming*. *See, e.g.,* Compl. D.E. 1, ¶ 68, PageID#: 17 ("None of [Plaintiff's] services involve the conduct of licensed funeral director or embalmers.").

The Funeral Board statutes do not prohibit Plaintiff from teaching, counseling, or speaking. They prohibit an unlicensed person from engaging in the activities of "funeral directing," which means:

  (i)   Practice of directing or supervising funerals or the practice of preparing dead human bodies for burial by any means, other than by embalming, or the disposition of dead human bodies;
  (ii)  Making of arrangements to provide for funeral services or the making of financial arrangements for the rendering of funeral services;
  (iii) Provision or maintenance of a place for the preparation for disposition or for the care or disposition of dead human bodies;
  (iv)  Use of the word or term "funeral director," "undertaker," "mortician," "funeral parlor," "funeral chapel" or any other word or term from which can be implied the practice of funeral directing; or
  (v)   Holding out to the public that one is a funeral director or engaged in a practice described in this subdivision (6);

Tenn. Code Ann. § 62-5-101(6)(A).

Tennessee law thus regulates the practice of funeral directing and authorizes the Board to regulate those who engage in such activity. *See id.* §§ 62-5-305, -306(a) (requiring "every person desiring" to practice "funeral directing" to "pass an examination"). And Tennessee law prohibits "any person not" registered as a "funeral director" to "engage in funeral directing." *Id.* § 62-5-309(a). Finally, Tennessee law prohibits a former funeral director and/or embalmer who has voluntarily surrendered his license with complaints pending before the Funeral Board from engaging in activity as an unlicensed assistant. *Id.* § 62-5-101(13)(B). No portion of Tennessee law, however, prevents a person from "sharing information" about "conventional funerals" and their "alternatives," or providing "emotional support." Compl., D.E. 1, ¶¶ 27, 33, PageID ##: 9-10.

To establish standing Plaintiff must show that the conduct in which he intends to engage would be "arguably proscribe[d]" by the applicable statutory scheme. *Davis v. Colerain Twp.*, 51 F.4th 164, 172 (6th Cir. 2022); *see also Birmingham v. Nessel*, No. 21-1297, 2021 WL 5712150, at *2 (6th Cir. Dec. 2, 2021) ("In his complaint, Birmingham did not allege that he intends to engage in any conduct that the law prohibits."); *Daly v. McGuffey,* No. 21-3266, 2021 WL 7543815, at *2 (6th Cir. Nov. 15, 2021) (the plaintiffs did not allege they engaged in any conduct prohibited by statute, nor did they allege facts to allow a court to infer that they were substantially likely to do so). And "[c]onduct is arguably proscribed by a statutory provision if, 'on a plausible interpretation of the statute,' the conduct is forbidden." *Christian Healthcare Ctrs., Inc. v. Nessel,* 117 F.4th 826, 843 (6th Cir. 2024) (quoting *Kentucky v. Yellen*, 54 F.4th 325, 337 (6th Cir. 2022) (emphasis omitted). But Plaintiff affirmatively *disavows* any intent to violate the statutory scheme. Compl., D.E. 1, ¶¶ 7, 66 a-j, 68, 104. Plaintiff alleges that he provides only "end-of-life guidance;" teaching and counseling services; "no-obligation conversation" about "funeral and/or memorial

11

services;" "options for body disposition" and "choices families have for remembrance services;" and/or teaching, counseling, and speaking in the community about end-of-life issues. *Id.* at ¶¶ 43, 48, 49, Page ID##: 11-12. He also alleges that he is "specifically *exempt* from the regulatory scheme" because "he does not *charge* for his help, guidance and/or services." (Compl., D.E. 1, ¶ 6, PageID#: 4.)

### 2. Plaintiff fails to allege a certainly impending threat of prosecution.

Largely because Plaintiff has failed to allege an intention to engage in conduct proscribed by the Funeral Board statutes, he has also failed to allege that his "intention generates a certainly impending threat of prosecution." *Friends of George's*, 108 F.4th at 435. Plaintiff does allege that his First Amendment rights have been "chilled" (Compl., D.E. 1, § 3, PageID# 2), but an alleged subjective chill does not establish standing in the absence of a credible threat of prosecution. *See Friends of George's*, 108 F.4th at 439 (citing *McKay v. Federspiel*, 823 F.3d 862, 868 (6th Cir. 2016)).

Plaintiff also alleges that the Board has enforced its statutes against him in the past— namely, in November 2023. (Compl., D.E. 1, ¶¶ 9-12, 88-90.) Usually, "past enforcement against the same conduct is good evidence" of a credible threat of enforcement. *Driehaus*, 573 U.S. at 164; see *Russell v. Lundergan-Grimes*, 784 F.3d 1037, 1049 (6th Cir. 2015). But Plaintiff has not alleged past enforcement against *the same conduct*. Aside from a conclusory allegation that the Board "voted unanimously to refer [Plaintiff's] exercise of his First Amendment Rights to the district attorneys' office," notably absent from Plaintiff's Complaint is any allegation that the Board took action against him on November 14, 2023, for the conduct in which he allegedly engages or intends to engage – providing services as a "death doula" or "community death care advocate." (Compl., D.E. 1, ¶¶ 9-12, 88-90.)

In fact, the Minutes to the November 14, 2023, Funeral Board meeting—which are attached as an exhibit to Plaintiff's Complaint—make clear that Plaintiff was *not* prosecuted for such conduct, but that he was investigated and prosecuted by the Board for engaging in unlicensed *funeral directing*. (Ex. D to D.E. 1, Minutes, D.E. 1-5, PageID#: 62-72.) Nothing in the minutes indicates that Plaintiff was investigated for speaking, teaching, or counseling persons grieving over the loss of a loved one.

Finally, Plaintiff alleges that the Board, through legal counsel, sent him a "cease and desist" letter on June 21, 2022—nearly two and a half years before Plaintiff filed his Complaint—informing him that he was no longer considered an "Unlicensed Assistant" under Tennessee law, and "outlining what it considered to be actions which would violate" the Funeral Board statutes. (Compl., D.E. 1, ¶¶ 8, 93-95, PageID##: 5, 21.) Usually, courts consider warning letters as evidence of a credible threat of enforcement where they relate to specific conduct. *See McKay*, 823 F.3d at 869*; see also Kiser v. Reitz*, 765 F.3d 601, 605 (6th Cir. 2014) ("On August 17, 2009, the Board issued a written warning to Kiser for practicing 'outside the scope' of his declared specialty in endodontics, in violation of Ohio [law]"). But the June 2022 letter was not a warning letter relating to the specific the conduct in which Plaintiff allegedly engages or intends to engage.

The letter advised Plaintiff of a change in the law that defined who is and is not considered an "unlicensed assistant," and it advised Plaintiff that he could be subject to Board action for engaging in statutorily proscribed conduct—namely, "any future involvement in the business of funeral directing or embalming" without a license. (Ex. C to D.E. 1, Doc. 1-4, PageID#: 50.) In other words, the letter informed Plaintiff, a former licensed funeral director and embalmer, that if he provided embalming or funeral-director services, he would be subject to enforcement action by the Board.

Plaintiff points to examples listed in the letter of what the Board "considered to be actions which would violate" the Funeral Board statutes, and he alleges that prohibiting *these actions violates the* First Amendment. (Compl., D.E. 1, ¶¶ 8, 94-95 PageID##: 5, 21.) But the standing inquiry focuses on whether an impending threat of enforcement exists for an intent to engage in conduct that is proscribed *by statute*. *See Christian Healthcare Centers*, 117 F.4th at 843. And again, Plaintiff has disavowed any intent to engage in conduct proscribed by the Funeral Board statutes; and he has not alleged any actual enforcement by the Board—or impending threat of enforcement by the Board—against conduct not proscribed by statute.

### B. Even if Plaintiff Has Standing, his Claims Would be Barred by the Applicable Statute of Limitations.

Even if Plaintiff has shown a credible threat of enforcement—and thus standing to sue—based on the Board's June 2022 letter, his claims would be barred by the applicable statute of limitations and therefore subject to dismissal. The one-year statute of limitations found at Tenn. Code Ann. § 28-3-104(a)(1) applies to Plaintiff's § 1983 claims. *Dibrell v. City of Knoxville*, 984 F.3d 1156, 1161 (6th Cir. 2021). But "federal law determines when a § 1983 claim accrues to trigger the running of this state statute of limitation." *Reguli*, 109 F.4th 874, 879 (6th Cir. 2024) (emphasis omitted). Under the discovery rule employed by the Sixth Circuit, the limitations period begins when (1) there is "a 'complete and present cause of action,'" *id.* at 880 (citation omitted), and (2) Plaintiff "knows, or in the exercise of due diligence should have known, both his injury and the *cause* of that injury," *id.* at 882.

A "plaintiff's complaint need not allege facts showing that a claim is timely," but "plaintiffs can plead themselves out of court on statute-of-limitations grounds if the complaint alleges facts showing that they did not sue in time." *Id.* at 879. The allegations in Plaintiff's Complaint show that insofar as Plaintiff has standing to bring a pre-enforcement challenge based on the Board's

14
Case 3:24-cv-01353    Document 34    Filed 12/20/24    Page 14 of 18 PageID #: 235

June 2022 letter, the statute of limitations clock started when Plaintiff received that letter on June 21, 2022. Plaintiff's Complaint—filed nearly two and a half years later on November 14, 2024, was therefore time-barred.

Plaintiff's Complaint discusses the Board's June 2022 letter at length in Paragraph 8 and then makes several additional references to it. Compl., D.E. 1, ¶ 8, PageID ##: 5-6. In Paragraphs 86 and 87, Plaintiff relies on the letter in alleging that "[a]ccording to the Board, [Plaintiff] . . . is prohibited from exercising his free speech rights under the First Amendment." *Id.* at ¶¶ 86-87, PageID##: 20. And in Counts IV and VI, Plaintiff cites the June 21, 2022, letter in support of his specific claims. *Id.* at ¶¶ 164-168, 178-181, PageID##: 32-35.

If the letter establishes Plaintiff's standing to bring his First Amendment claims, then it also gave him reason to bring those claims when he received the letter on June 21, 2022, because he would then have had a "complete and present cause of action" and known "both his injury and the cause of that injury." *Reguli*, 109 F.4th at 880, 882 (citation omitted) (emphasis omitted).

### C. Defendant Skrmetti Is Entitled to State Sovereign Immunity.

Even if Plaintiff has standing to sue and his claims are not time-barred, Defendant Jonathan Skrmetti would still need to be dismissed as a party on sovereign-immunity grounds. As "a sovereign entity," Tennessee is not "amenable to the suit of an individual without its consent." *Seminole Tribe of Fla. v. Florida*, 517 U.S. 44, 54 (1996) (citation omitted); *see also* U.S. Const. amend. XI. And "[o]fficial-capacity lawsuits normally amount to lawsuits against the State." *Mich. Corr. Org. v. Mich. Dept. of Corr.*, 774 F.3d 895, 904 (6th Cir. 2014). But "an exception to Eleventh Amendment sovereign immunity" exists for "claims for injunctive relief against individual state officials in their official capacities." *Diaz v. Mich. Dept. of Corr.*, 703 F.3d 956, 964 (6th Cir. 2013) (citing *Ex parte Young*, 209 U.S. 123 (1908)). "In order to fall within the *Ex*

*parte Young* exception, a claim must seek prospective relief to end a continuing violation of federal law." *Id.*; *see also Ashcroft*, 556 U.S. at 676 ("[In a § 1983 suit], a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution.").

Plaintiff has sued several defendants, all in their official capacities, including Jonathan Skrmetti, the Tennessee Attorney General. Compl., D.E. 1, ¶ 23, PageID #: 8. But Plaintiff has not alleged that Defendant Skrmetti is committing any "continuing violation of federal law." *Diaz*, 703 F.3d at 964. Indeed, Plaintiff has not pled any "individual actions" by Defendant Skrmetti at all. *Ashcroft*, 556 U.S. 676. Defendant Skrmetti is therefore entitled to sovereign immunity and should be dismissed from this action. *See Mich. Corr. Org.*, 774 F.3d at 904.

### D. The Court Can Take Judicial Notice of the Consumer Alert Issued by the Tennessee Department of Commerce and Insurance and of the Prior Lawsuits Filed Against Plaintiff.

Defendants ask this Court to take judicial notice of two items for purposes of ruling on their motion to dismiss. Rule 201 of the Federal Rules of Evidence permits a Court to take judicial notice of a fact "that is not subject reasonable dispute because it (1) is generally known within the trial court's territorial jurisdiction; or (2) can accurately and readily be determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201. Federal courts may take judicial notice of public records and court proceedings. *See Granader*, 417 F.2d at 82-83 (collecting cases); *see also Rodic*, 615 F.2d at 738.

Defendants first ask the Court to take judicial notice that Plaintiff was sued in this District for matters that originated as complaints filed by funeral clients of Plaintiff before March 2020. Federal courts may take judicial notice of court proceedings. *Granader*, 417 F.2d at 82-83 (collecting cases). Plaintiff was sued at least five times between December 15, 2020, and

November 21, 2021. The fact that the suits were filed, and the dates of filing are public record and can accurately and readily be determined from the court's records.

The second item of which Defendants ask the Court to take judicial notice is the issuance of a consumer-alert bulletin by the TDCI on December 6, 2021, alerting Tennessee residents that Plaintiff continued to engage in funeral-director activities following the surrender of his license that were considered harmful to the public seeking funeral services. The statement was posted on the TDCI's website, is generally accessible with a simple internet search, and remains available on TDCI's public website. TDCI's website, and the page at the hyperlink listed above, is a public record and a source whose accuracy cannot reasonably be questioned. *See United States v. Garcia,* 855 F.3d 615 (4th Cir. 2017) (judicial notice of documents on government website proper as government website source whose accuracy could not be reasonably questioned); *Demis v. Sniezek,* 558 F. 3d 508 513 n.2 (6th Cir. 2009) (court may take judicial notice of information and documents published on a government website); *U.S. ex rel. Dingle v. BioPort Corp.*, 270 F. Supp. 2d 968, 972 (W.D. Mich. 2003) (court may take judicial notice of public records and government documents available from reliable sources on the Internet); *Tri-Union Seafoods, LLC v. Starr Surplus Lines Ins. Co.*, 88 F. Supp. 3d 1156 (S.D. Cal. 2015) (judicial notice of two weekly printouts from FDA website); *Open Cmtys. All. v. Carson,* 286 F. Supp. 3d (D.D.C. 2017) (judicial notice of a description of Housing Choice Voucher program on HUD's public website).

## CONCLUSION

For the reasons stated, Defendants' motion to dismiss should be granted.

Respectfully submitted,

JONATHAN SKRMETTI
ATTORNEY GENERAL & REPORTER

By:/*s/ Andrew Grams*
ANDREW GRAMS (BPR#018380)
Office of the Tennessee Attorney General
P.O. Box 20207
Nashville, TN 37202-0207
Phone: (615) 741-2935
Andrew.Grams@ag.tn.gov

## CERTIFICATE OF SERVICE

I hereby certify that on Friday, December 20, 2024, a true and correct copy of the foregoing *Memorandum of Law in Support of Motion to Dismiss* has been forwarded via the District Court's electronic filing system, to all counsel of record. All other parties will be served through counsel by electronic mail as follows:

James D. Roberts
Creditor Law Center, PLLC
P.O. Box 641
Dickson, TN 37056
Jim.Roberts@CreditorLawCenter.com
*Attorneys for Plaintiff*

      *s/ Andrew Grams*
      Assistant Attorney General