IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF TENNESSEE

| | |
|---|---|
| REID VAN NESS, | ) |
| PLAINTIFF, | ) CASE NO. 3:24-CV-1353 |
| | ) |
| V. | ) JURY OF 12 DEMANDED |
| | ) |
| PAMELA STEPHENS, *ET. AL*. | ) |
| DEFENDANTS. | ) |

# REVISED

# PLAINTIFF'S BRIEF IN SUPPORT OF MOTION FOR PRELIMINARY AND PERMANENT INJUNCTION

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................. iv

INTRODUCTION .............................................................................. 1

STATEMENT OF THE FACTS ........................................................... 7
.
FACTUAL BACKGROUND ............................................................... 7

    A.  Tennessee Does Not Require the Hiring of A Funeral Director to conduct a Funeral.. 7

    B.  Mr. Van Ness is Exempt from the Funeral Board's Regulatory Scheme………………. 8

    C.  Mr. Van Ness Provides Truthful Education, Advice and Comfort to His Family
        Members, Friends, Co-Parishioners and Neighbors. ...................................... 8

    D.  Mr. Van Ness speaks and engages with His Family Member, Friends,
        Co-Parishioners and Neighbors About Deeply Religions Matters ……………….... 9

    E.  The Defendants' Restrictions on Mr. Van Ness's Free Speech, Expressive
        Conduct, Religious Practices, Peaceable Assembly, Free Press, and Right to
        Redress the Actions of His Government by Its Threat of Excessive Fines
        and Imprisonment. …............................................................................. 10

        1.  The Funeral Board's Investigation and "Cease and Desist" Styled Letter …....… 10

        2.  The Funeral Board Votes to Impose Excessive Fines and Refer Mr. Van
            Ness to the District Attorney for Prosecution and Imprisonment ……………… 12

    F.  Mr. Van Ness's First Amendment Rights are Being Violated ………………………. 12

LEGAL STANDARD ........................................................................ 13

ARGUMENT ................................................................................... 14

I.  DEFENDANTS' ENFORCEMENT OF TENNESSEE'S FUNERAL
    REGULATORY SCHEME LIKELY VIOLATES THE FIRST AMENDMENT
    AS A CONTENT-BASED RESTRICTION OF FULLY PROTECTED SPEECH
    AND EXPRESSIVE CONDUCT ................................................... 14

    A.  Forbidding Plaintiffs From Providing Education And Individualized Advice
        About End-of-Life Care To His Family Members, Friends, Co-Parishioners
        and Neighbors Likely Fails Any Level Of First Amendment Scrutiny. …………… 14

B. Defendants are Unlikely to Satisfy Strict Scrutiny ..................................................... 17

    1.    Defendants' Speech Restrictions Are Unlikely To Satisfy Any
          Level Of Scrutiny ................................................................................... 17

    2.    There Is No Compelling Government Interest In Preventing Adults
          From Receiving Education and Individualized Advice About Death. ..… 17

    3.    Requiring Mr. Van Ness to Become a Licensed Funeral Director to
          Speak and Interact With Other Adults is Not the Least
          Restrictive Alternative. ………………………………………………… 19

C. The Defendants' speech restrictions are unlikely to satisfy any level of scrutiny. … 21

D. The Defendants' Restrictions on Mr. Van Ness's First Amendment Rights
   Serves No Public Benefit and Harms Vulnerable Citizens........................................... 22

II. PLAINTIFF WILL SUFFER IRREPARABLE HARM TO HIS ABILITY TO
    GIVE INDIVIDUALIZED ADVICE, ENGAGE IN PEACABLE ASSEMBLY,
    RELIGIOUS EXPRESS AND ACTIVITIES, FREEDOM OF THE PRESS TO
    PREPARE AND DISTRIBUITE RELGIOUS WRITTINGS, AND REDRESS
    HIS GOVERNRMENT BY SPEAKING WITH MEDICAL EXAMINERS IF
    THE COURT DOES NOT GRANT PRELIMINARY RELIEF...................................... 23

III. THE BALANCE OF EQUITIES AND THE PUBLIC INTEREST FAVOR
    A PRELIMINARY AND PERMANENT INJUNCTION............................................... 25

CONCLUSION ..................................................................................................................... 25

# TABLE OF AUTHORITIES

**CASES**

44 Liquormart, Inc. v. Rhode Island, 517 U.S. 484 (1996) ..................................................... 6, 18

ACLU of Ill. v. Alvarez, 679 F.3d 583 (7th Cir. 2012) ................................................... 21, 24,25

Ams. for Prosperity Found. v. Bonta, 141 S. Ct. 2373 (2021) ..................................................... 20

Ashcroft v. ACLU, 542 U.S. 656 (2004) ............................................................................... 13, 20

Billups v. City of Charleston, 961 F.3d 673 (4th Cir. 2020 ................................................… 17, 21

Christian Legal Soc'y v. Walker, 453 F.3d 853 (7th Cir. 2006) ............................................ 24, 25

Edenfield v. Fane, 507 U.S. 761 (1993) .................................................................................... 21

Elrod v. Burns, 427 U.S. 347 (1976) ........................................................................................ 23

Ent. Software Ass 'n v. Blagojevich, 469 F.3d 641 (7th Cir. 2006) ........................................... 19

FCC v. League of Women Voters of Calif , 468 U.S. 364 (1984) ……......................................... 15

First Nat'l Bank of Boston v. Bellotti, 435 U.S. 765 (1978) ……............................................... 18

Full Circle of Living & Dying v. Sanchez, No. 2:20-cv-01306-KJM-KJN, 2020 WL 7714200 (E.D. Cal. Dec. 29, 2020) .......................................................................................... passim

Full Circle of Living & Dying v. Sanchez, No. 2:20-cv-01306-KJM-KJN, 2023 WL 373681 (E.D. Cal. Jan. 24, 023) .......................................................................................... 6, 14

Higher Soc. v of Indiana v. Tippecanoe Cnty., 858 F.3d 1113 (7th Cir. 2017) ............... 22, 23, 25

Hines v. Quillivan, 982 F.3d 266 (5th Cir. 2020) ..................................................................... 17

Holder v. Humanitarian Law Project, 561 U.S. I (2010) …................................................. 16 ,17

Int'l Ass'n of Fire Fighters, Loc. 365 v. City of E. Chicago, 56 F.4th 437 (7th Cir. 2022) …....... 23

Klein v. City of San Clemente, 584 F.3d 1196 (9th Cir. 2009) .................................................. 24

*Kohler v. City of Cincinnati,* No. 21-3466, 2021 U.S. App. LEXIS 32574, at *5 (6th Cir.2021)..2-3

Geraghty v. Jackson Local Sch. Dist. Bd. of Educ., No. 5:22-cv-02237, 2024 U.S. Dist.

LEXIS 142938, at *47 (N.D. Ohio Aug. 12, 2024) ...............................…… 13

Lauren Richwine, et al v Matuszak, et al *Case No. 1:2-cv-00370,on appeal 24-1081 (6th Circuit)* ...................................................................................... *6, 7*

McCullen v. Coakley, 573 U.S. 464 (2014) ........................................................ 15. 21

Melendres v. Arpaio, 695 F.3d 990, 1002 (9th Cir. 2012)) ......................…… 25

National Institute of Family & Life Advocates v. Becerra, 138 S. Ct. 2361 (2018) ...……… 16, 20

Pac. Coast Horseshoeing Sch., Inc. v. Kirchmeyer, 961 F.3d 1062 (9th Cir. 2020) ................... 17

S. Ridge Baptist Church v. Indus. Com. of Ohio*, 911 F.2d 1203, 1206 (6th Cir. 1990)* ............. 19

R.A.V. v. City of St. Paul, 505 U.S. 377 (1992) ........................................... 17

Reed v. Town of Gilbert, 576 U.S. 155 (2015) .................................................. 15, 17

Riley v. Nat'l Fed'n of the Blind of N. Carolina, Inc., 487 U.S. 781 (1988) ............................ 19

Sanders Cnty. Republican Cent. Comm. v. Bullock, 698 F.3d 741 (9th Cir. 2012) ………......… 24

Sorrell v. IMS Health Inc., 564 U.S. 552 (2011) ..................................................... 16, 21

Turner Broad. Sys., Inc. v. FCC, 512 U.S. 622 (1994) ............................................... 21

United States v. Alvarez, 567 U.S. 709 (2012) ...................................................... 20, 24

United States v. Playboy Ent. Grp., Inc., 529 U.S. 803 (2000) .................................... 15

Vill. Of Schaumburg v. Citizens or a Better Env't, 444 U.S. 620 (1980) ………….................... 20

Va. State Bd. Of Pharmacy v. Va. Citizens Consumer Council, Inc., 425 U.S. 748 (1976) … 7, 18

Vizaline, L.L.C. v. Tracy, 949 F.3d 927 (5th Cir. 2020) .............................................. 16

Watchtower Bible & Tract Soc. Of New York, Inc. v. Vill. Of Stratton, 536 U.S. 150 ……. 18, 19

Williams-Yulee v. Fla. Bar, 575 U.S. 433 (2015) ..................................................... 17

Winter v. Nat. Res. Def Council, Inc., 555 U.S. 7 (2008). ......................................... 13

Wollschlaeger v. Governor, Fla., 848 F.3d 1293 (11th Cir. 2017) …............................... 17

Worrell Newspapers of Indiana, Inc. v. Westhafer, 739 F.2d 1219 (7th Cir. 1984) .................... 18

STATUTES AND REGULATIONS

42 U.S.C. § 1983........................................................................................................ 11

Tenn. Code Ann. § 62-5-101.......................................................................................... 4

Tenn. Code Ann. § 62-5-101(6)(B) ............................................................…... 4

Tenn. Code Ann. § 62-5-102 .......................................................................................... 7

Tenn. Code Ann. § 62-5-103............................................................................................ 12

Tenn. Code Ann. § 62-5-305 .......................................................................................... 19

Tenn. Code Ann. § 62-5-404 ........................................................................................... 8

Tenn. Code Ann. § 40-35-111(e)(3) .............................................................................. 12

OTHER SOURCES:

11A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and
Procedure § 2948.1 (3d ed. 2021) …………………………………………………..… 6

**INTRODUCTION**

Mr. Reid Van Ness ("Mr. Van Ness") speaks with people about a difficult topic, one we often wish to avoid: death and dying. He gives individualized advice to his family members, friends, co-parishioners, and neighbors. Mr. Van Ness helps his friends plan for the final days of life, options for funeral goods and services, and how they would like to be remembered. Mr. Van Ness does not arrange funerals or sell funeral merchandise. He simply helps his close "family" learn about end of life options and talks through what is important.

Tennessee law is crystal clear that no family or religious congregation is **ever required** to hire a funeral director for the purposes of burying a family member. (Tenn. Code Ann. § 62-5-102, "TCA"). All the acts that a Funeral Director *might* engage in can and are often performed by citizens for their own family members, friends, co-parishioners, and neighbors. It is perfectly legal in Tennessee for families to legally handle all the details of burying a loved one without ever contacting, much less hiring, a licensed Funeral Director. (The only exception relates to embalming which is not an issue in this case).

Though Mr. Van Ness is not a funeral director and is not trying to supplant funeral directors, Defendants - the State of Tennessee has threatened him with excessive fines and imprisonment for engaging in activities which are entirely legal in Tennessee for all citizens. On November 14, 2023, after a two-year clandestine investigation, the Tennessee Board of Funeral Directors and Embalmers ("Funeral Board" or "Board") voted to assess Mr. Van Ness a $20,000.00+ fine for exercising his free speech rights, and then voted to refer him for criminal prosecution. (Exhibit B, November 14, 2023, official Minutes, p. 8-17). The Board admitted in its responses to the Requests for Admissions that the anonymous charges presented in the official November 2023 Minutes' "Case #  7" referred to Mr. Van Ness' conduct. (Motion Ex. D, # 24 & 25). As applied, these actions act as a prohibition on Mr. Van Ness's speech and religious expression. Mr. Van Ness'

1

actions that the Board deemed suppressible include: 1) "entering the hearse after conducting the graveside service. PageID# 326, 2) "setting up the casket at the front of the church and arranging the flowers and commemorations around the casket. PageID# 330, 3) "speaking at the service of the decedent while a member of the family translates" PageID# 331, 4) "[speaking] at the service for several minutes to family and friends" PageID# 331, 5) "sitting by the [church] door handing out programs" PageID# 331, 6) "after all ministers had completed their portion of the service, [Mr. Van Ness] spoke for 15-20 Minutes." PageID# 332, and 7) "Accompanying a family to a cemetery 'to make burial arrangements.' PageID# 333. This is despite Mr. Van Ness having a personal family, friendship, co-parishioner and neighborly relations ship with all of the decedents and providing these "services" without charge).

Such plain First Amendment violations warrant a preliminary injunction to restore his free speech and religious rights for the duration of this case.

Defendants demand Mr. Van Ness cease discussing deeply religious matters of death and death care with his family members, friends, co-parishioners, and neighbors. (*Id*.). The Funeral Board's speech ban prohibits Mr. Van Ness from discussing topics such as "removal services," "funeral services," "embalming services," "securing grace spaces or plots. (*Id*.). (See Minutes, Motion Ex. B). These prohibitions on Mr. Van Ness' types of discussions and actions are content-based speech regulation and triggers strict First Amendment scrutiny, which Defendants cannot hope to satisfy. Mr. Van Ness is also prohibited from speaking with state medical examiners concerning any topic, whether related to funeral services or not. (*Id*.). The Funeral Board further threatens fines and imprisonment if Mr. Van Ness offers English translation services to any person for any reason. (*Id*.). Lastly, the Funeral Board's ban prohibits Mr. Van Ness from preparing and distributing religious literature about the decedent at funeral and memorial services. (*Id*.). The Funeral Board's threats against Mr. Van Ness from giving free, truthful advice to family members,

friends, co-parishioners, neighbors, and neighbors' families serve no compelling interest. Even if there were some such interest, the conditions Defendants have imposed are far from narrowly tailored.

The Defendants are thus likely to fail strict scrutiny, and Plaintiff is likely to prevail on the merits. The non-merit factors for a preliminary injunction follow naturally. It is always an irreparable injury to quash free-speech rights and *never* in the public interest for the government to violate constitutional rights. *Kohler v. City of Cincinnati,* No. 21-3466, 2021 U.S. App. LEXIS 32574, at *5 (6th Cir. Nov. 1, 2021). That is especially true in this case, where the Board's prohibitions are backed by excessive fines and *continuing* threats of criminal prosecution.

This civil-rights lawsuit seeks to vindicate Mr. Van Ness and all Tennesseans' First Amendment rights to advise and guide families through the deeply personal choices surrounding both the end of life and remembrance after life. The First Amendment is first for a reason: it is the bedrock for the protection of every citizen's rights. In this case, the State of Tennessee, through the Funeral Board, violated <u>every</u> provision of the First Amendment against Mr. Van Ness. To wit: The Board, through the threat of <u>excessive fines</u> and threats of <u>criminal prosecution</u> has denied or chilled Mr. Van Ness's ability to exercise the following protected First Amendment rights. (Comp. ¶¶ 10-12, Comp. Ex. C). His protected rights include:

a. His right to engage in the unrestrained free exercise of religion by prohibiting him from being *involved with and speaking* to churches, synagogues, and other religious funeral or memorial[1] services as well as discussing end-of-life choices. (Comp. ¶ 3)

b. His right to engage in the unrestrained free exercise of speech and religion by counseling those who are bereaving, his serving as a pall bearer, directing / participating in religious

---

[1] "Funeral Services" generally designates that a body is present. "Memorial Services" generally have no body, but urned (a/k/a cremated) remains may be present.

services, speaking / singing at religious services, drafting and distributing of memorial programs, and his speaking during religious services at churches and gravesites. (*Id*.).

c. His right to engage in the unrestrained free exercise of his freedom of speech by "speaking or engaging" with "current and prospective consumers in Tennessee" of funeral services for any reason. The Board's prohibition bars him by threats of excessive fines and imprisonment from taking "any action" which by definition includes speaking and/or meeting with family members, friends, co-parishioners and neighbors). (*Id*.). Furthermore, under the Board's broad interpretation, Mr. Van Ness could face excessive fines and imprisonment for merely *attending* a funeral, memorial or graveside service.

d. His right to engage in the unrestrained exercise of his freedom of speech and religion by speaking and/or interacting with the decedent's family members, friends, co-parishioners, and neighbors. (*Id*.).

e. His right to engage in the unrestrained free exercise of his freedom of speech and religion by providing English language translation services for any "current and prospective consumers" of funeral services, even if the information being transcribed is un<u>related</u> to the funeral business. (*Id*.). The Board prohibits translating funeral and memorial religious presentations to non-English speakers whether spoken or written. *(Id*.).

f. His right to engage in the unrestrained free exercise of his freedom of speech, conduct, assembly, and religion by protecting his right to take "any action relat[ed] to" providing "removal services," "funeral services," "embalming services," "securing grave spaces or plots" for and with <u>his</u> family members, members, friends, co-parishioners, and neighbors. (*Id*.). Notably, the later – "securing grave spaces or plots" – is specially exempted from the definition of "funeral directing" under Tenn. Code Ann. § 62-5-101(6)(B). Yet the

Board seeks to deny or chill "any action" by him related to his religious activities connected to helping his family, friends, co-parishioners, and neighbors who are Tennessee residents.

g.  His right to engage in the unrestrained exercise of his freedom of the press and religion. *Id*.).  The Funeral Board seeks to prohibit him from engaging in "funeral services" such as the drafting, preparing and/or distributing religious programs, and/or pamphlets related funeral, memorial, and grave site services if they are Tennessee residents. *Id*.).

h.  His right to petition the government for a redress of grievances.  The Board attempts to deny Mr. Van Ness from speaking for any reason with "medical examiners" who are generally government officials. (*Id*.).  Thus, the Board's threats deny or chill Mr. Van Ness' right to petition certain government officials concerning their actions related to the death of his family members, friends, and neighbors if they are Tennessee resident.

Mr. Van Ness describes himself as a "community death care advocate" and is part of a growing national movement rethinking the practices, customs, and approaches surrounding death. (Complaint ¶ 4, "Comp.").  Mr. Van Ness shares <u>for free</u> his extensive knowledge about end-of-life options to help people put their own end-of-life plan in place that is best for them and their loved ones. (*Id*.).  Forbidding Mr. Van Ness from giving truthful guidance to his family members, friends, co-parishioners, and neighbors serves no compelling State interest.  Even if there were some such an interest, the conditions the Board has imposed are far from narrowly tailored. Defendants are thus likely to fail strict scrutiny, and Plaintiff is likely to prevail on the merits.

The non-merit factors for a preliminary injunction follow naturally.  It is always an irreparable injury to quash free-speech rights and never in the public interest for the government to violate constitutional rights.  "When an alleged deprivation of a constitutional right is involved, such as the right to free speech or freedom of religion, most courts hold that no further showing

of irreparable injury is necessary." 11A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 2948.1 (3d ed. 2021) (footnotes omitted That is especially true in this case, where Defendants attempt to prohibit Mr. Van Ness from speaking freely, meeting with others about religious matters, and participating in religious services related to the death of family members, friends, co-parishioners, and neighbors by threats of fines and incarceration.

In fact, when a federal district court confronted materially identical First Amendment claims about giving end-of-life advice in California, that court issued a preliminary injunction (which later became permanent). See *Full Circle of Living & Dying v. Sanchez*, No.2:20-cv-01306-KJM-KJN, 2020 WL 7714200, at *5-7 (E.D. Cal. Dec. 29, 2020) (preliminary injunction). *Full Circle of Living & Dying v. Sanchez*, No. 2:20-cv-01306-KJM-KJN, 2023 WL 373681, at *17-22 (E.D. Cal. Jan. 24, 2023) (permanent injunction). Even more recently in the nearby Seventh Circuit case of *Lauren Richwine, et al v Matuszak, et al*, a preliminary injunction was granted enjoining the State of Indiana's Board of Funeral & Cemetery Service from restricting Ms. Richwine's individual and commercial speech related to her efforts to speak to the public about death care alternatives. (Motion Ex. E, case No. 23-CV-370, which later became permanent December 19, 2023. Appealed January 2024, Case No. 24-1081). However, unlike Mr. Van Ness's free services to his family, friends, co-parishioners, and neighbors, Ms. Richwine charged for her services and advertised to the general public. Indiana sought to restrict her individual and commercial speech until she went through the laborious process of obtaining a funeral-directors license for herself and a funeral-home license for her business – just to speak with the public.

The Indiana District Court, citing the US Supreme Court, affirmed "that when a generally applicable law is "directed at [a person] because of what his speech communicated," heightened scrutiny is warranted." (*Richwine* Doc. 38, p. 23) Further noting "[a]lthough consumer protection may be compelling in some situations, there is nothing compelling about deliberately suppressing

speech to keep consumers ignorant about their options in preparing for death and subsequent memorials. See 44 *Liquormart, Inc. v. Rhode Island*, 517 U.S. 484, 503 (1996) (plurality opinion) ("The First Amendment directs us to be especially skeptical of regulations that seek to keep people in the dark for what the government perceives to be their own good."). The First Amendment rejects a "highly paternalistic approach" and "assume[s] that . . . information is not in itself harmful, that people will perceive their own best interests if only they are well enough informed, and that the best means to that end is to open the channels of communication rather than to close them." *Va. State Bd. of Pharmacy v. Va. Citizens Consumer Council, Inc.,* 425 U.S. 748, 770 (1976).

## STATEMENT OF FACTS

I     **Factual background**

### A. Tennessee Does NOT Require the Hiring of a Funeral Director to Bury the Dead.

There are only ten (10) states that by law <u>require</u> the participation of a licensed Funeral Director by families caring for their own dead.[2] Thankfully, Tennessee is not among these states. In Tennessee, not only are families allowed to <u>not</u> to hire a funeral director, but also the deceased's family, friends, co-parishioners, and neighbors are <u>exempt</u> from the Board's statutory scheme:

> **Nothing** in this chapter shall be constituted to prevent or interfere with the ceremonies, customs, religious rites or religion of any people, denomination or sect, to prevent or interfere with any religious denomination, sect or any body composed of persons of a denomination, or to prevent or interfere with any church or synagogue from having its committee or committees prepare human bodies for burial **or to the families, friends or neighbors of deceased persons who prepare and bury their dead without charge**. (Bold added). (Motion Ex. C, TCA § 62-5-102)

Tennessee additionally does <u>not require</u> persons selling pre-need funeral goods and services to consumers be a licensed Funeral Director. Simply, any citizen can pre-sell all the goods and

---

[2] Funeral Consumers Alliance. https://funerals.org/your-rights/state-by-state-rights/the-10-states-that-restrict-caring-for-your-own-dead/

services a funeral director provides without ever having a Funeral Director's license. (See TCA § 62-5-404.). As long as the funeral goods and service buyer has not yet died, any citizen can engage in all the aspects of funeral directing and sell funeral goods and services to the buyer. The Board's position is that *after* a person dies the "need" for a funeral director suddenly arises, despite the fact that all the goods and services a licensed Funeral Director could offer can be easily provided by the deceased's family, friends, co-parishioners, and neighbor. The <u>only</u> requirement for a citizen to engage in pre-need funeral directing services is that the seller register as a "pre-need sales agent" with the Commissioner of the Dept. of Commerce and Insurance. (See TCA § 62-5-404 *et seq.)*. Ironically, no exam, education, or other abilities or knowledge of funeral is apparently necessary.

**B. Mr. Van Ness is Exempt from the Funeral Board's Regulatory Scheme.**

Mr. Van Ness is specifically <u>exempt</u> from the regulatory scheme under Tenn. Code Ann. § 62-5-102 because he does not charge for his help, guidance, and/or services, and in all cases, he is or was a family member, friend, co-parishioner, or neighbor of the deceased person. (Comp. Ex. B). He is not nor has he ever been since retiring his license in the "business" of funeral directing as claimed by the State to justify its suppression of his rights.

**C. Mr. Van Ness Provides Truthful Education, Advice, and Comfort to His Family Members, Friends, Co-Parishioners, and Neighbors**

Mr. Van Ness is one of many individuals across the country rethinking the practices, customs, and expenses of passing away. Those in the movement rethinking death who share their knowledge with others are often called "death doulas" or more commonly known as "friends of the family." *(Id.* ¶ 24). People like Mr. Van Ness differ from conventional funeral directors who usually have an arms-length relationship with their clients and rarely provide the personal, non-medical, or emotional support Mr. Van Ness provides to the dying and their families. *(Id.* ¶ 25).

Mr. Van Ness seeks to inform the dying, their and his families, friends, fellow church members and neighbors, and occasionally the public of all their options regarding death. *(Id.* ¶ 26).

### D. Mr. Van Ness Speaks and Engages with His Family Member, Friends, Co-Parishioners, and Neighbors About Deeply Religions Matters

A traditional home funeral is common in most of the world, most of history, and still in the United States in certain faith traditions, such as the Catholic wake or Jewish shemira *(Id.* ¶¶ 28-31). Ceremonies like these are more intimate and personalized to a family's needs and often occur in the home where there is greater privacy, intimacy, and freedom to personalize saying goodbye to a loved one. (*Id.*) Home funerals allow families to honor their own beliefs and are legal in all 50 states. (*Id.*). Alternatives rising in popularity include options for the disposition of remains that consider the ecological problems of cremation or burial with an elaborate casket. *(Id.* ¶ 29).

What many now think of as a conventional funeral-involving embalming the body, holding a ceremony in a funeral parlor, and cremation or burying in an expensive casket is a historically recent innovation. *(Id.* ¶ 31). Mr. Van Ness and death doulas have a unique role in the continuum of care that a client's medical providers or hospice workers do not fulfill. *(Id.* ¶ 32).

Mr. Van Ness (and death doulas) fills this gap. *(Id.* ¶ 33). Mr. Van Ness helps the dying and their families decide among the options available for death with the emotional support and attachment that comes with somebody who is not selling expensive goods and services like a casket or other merchandise or services such as embalming. (*Id.*) Mr. Van Ness can also advocate for the dying person with doctors, with funeral directors, and with the family – but this requires speech. *(Id.* ¶ 34). He can discuss options for the dying and their families to direct their own death care, like medical directives. (*Id.*). Death doulas can also discuss the options available for being remembered. *(Id.* ¶ 35). Mr. Van Ness can help his community understand their options without a financial conflict of interest because he is not selling funeral services or merchandise. (*Id.*). Mr.

Van Ness charges nothing for his services and has a personal relationship with his and the decedent's family, friends, church members, and/or neighbors to unite him to those he has assisted in the past. Mr. Van Ness desires to continue assisting people in their difficult times but is afraid to do so due to the Board's threats. *(Id.* ¶ 36).

**E. The Defendants Restrict Mr. Van Ness's Free Speech, Expressive Conduct, Religious Practices, Peaceable Assembly, Free Press, and Right to Redress the Actions of His Government by its Threats of Excessive Fines and Imprisonment.**

After March 6, 2020, Mr. Van Ness used his extensive knowledge of the funeral business gained from his 20+ years as a funeral director to help his family members, friends, co-parishioners, and neighbors deal with the death of loved ones. *(Id.* ¶¶ 37-39). However, Mr. Van Ness remained troubled by what he perceived was a "death-phobic culture" in which people are unlikely to engage in the important conversations surrounding death. (*Id*.). Mr. Van Ness addressed the death-phobic culture by talking with his family members, friends, co-parishioners, neighbors, and other adults about end-of-life care *before* and when it is needed. *(Id.* ¶ 41).

**1. The Funeral Board's Investigation and June 21, 2022, Letter**

Beginning in early 2022, the Board began secretly investigating Mr. Van Ness' speech, assembly, religious practices, and other actions under Tennessee's Embalmers and Funeral Directors laws and regulations. (*Id*. ¶ 7). Though Mr. Van Ness no longer had a funeral director or embalmer's license, did not advertise to be a licensed funeral director, or engage in the technical conduct of licensed funeral professionals such as embalming, the Board sent Mr. Van Ness a letter threatening him if he spoke about death care or assisted his family members, friends, co-parishioners, and neighbors in their difficult times. (*Id*. ¶¶ 7 & 42).

On June 21, 2022, the Funeral Board, through the legal counsel for Regulatory Boards Division of the Tennessee Department of Commerce and Insurance, sent a letter to Mr. Van Ness outlining what <u>it</u> considered to be conduct which would violate the newly enacted amendment to

Tenn. Code. Ann. § 62-5-101(13) (*Id.* ¶ 8). (Enacted May 9, 2022). (Motion Ex. A, Comp. Ex. C). The Funeral Board's letter claimed Mr. Van Ness was no longer considered an "Unlicensed Assistant," and as such, was allegedly under the continuing threat that if he spoke certain words, engaged in religious activities, and/or took certain actions "the [Commerce] Department will administratively open a complaint against [him] regarding his unlicensed activity where civil penalties and other [civil] disciplinary action may be assessed. *(Id.*).

Mr. Van Ness knew this letter and Tenn. Code Ann. § 62-5-101(13) <u>could not</u> apply to him as there were no "outstanding complaints" filed against him at the time he surrendered his license, nor was he acting as an "assistant" – unlicensed or otherwise, to anyone. The Board's letter threatened that "civil penalties and other [civil] disciplinary action" would be assessed for his conduct …" *(Id.*). The Board's, further letter states: (emphasis added for elements that are most plainly speech and freedom of assembly). (*Id.*).

> For the sake of clarity, the following are examples that include, but are not limited to, actions that would be considered unlicensed activity if you were to engage in them:
>
> - **Speaking** or engaging with current or prospective consumers in Tennessee.
> - **Speaking** to medical examiners in Tennessee
> - **Meeting** with clients to discuss arrangements to be provided in Tennessee
> - **Translation services** for current and prospective consumers for Tennessee residents.
> - **Any action** related to providing removal services to Tennessee residents
> - **Any action** related to providing funeral services to Tennessee residents
> - **Any action** related to providing embalming services to Tennessee residents
> - **Any action** related to securing grave spaces or plots to Tennessee residents
>
> If any of the above listed action or any others that involve providing funeral directing, embalming, or removal services to any resident of Tennessee, are performed or performed by someone else with your involvement such actions will be considered unlicensed activity on your behalf. Following such actions, the Department will administratively open a complaint against you regarding unlicensed activity where civil penalties and other disciplinary action may be assessed.

Mr. Van Ness knew the new law did not apply to him. Furthermore, as he provided his religious guidance free of charge to the deceased and his/their friends, family member, co-parishioners and neighbors, he knew he fit squarely in the exemption under TCA § 62-5-102.

### 2. The Funeral Board Votes to Impose Excessive Fines and Refer Mr. Van Ness to the District Attorney for Prosecution and Imprisonment

On November 14, 2023, the Funeral Board met at its monthly public meeting. (Motion Ex. B, *Id*. ¶ 9). The approved November 2023 Minutes show it reviewed Case Nos. 2022021381, 2022044371, 2023029901 & 2023029921 related to Mr. Van Ness's alleged conduct. (Comp. Ex. D, *Id*. ¶¶ 9-10). The Board's legal counsel advocated the following punishment for Mr. Van Ness which was unanimously approved by the Funeral Board: (Motion Ex. B; Comp. Ex. D, p. 17):

> **$20,000.00** civil penalty plus the costs of investigation. Break-down of civil penalty for each of the cases. FUN-2022021381 - $12,000.00, FUN-2022044371 - $1,000.00, FUN-2023029901 - $4,000.00, and FUN-2023029921 - $3,000.00. Authorize via Consent Order and formal hearing if necessary. (*Id*).

The total civil penalty was $20,000.00, plus the unknown cost of investigation. (*Id*. ¶ 11). Further, a motion was made by the Board to make a referral to the district attorney's office for **criminal prosecution**. (*Id*. 12). Pursuant to Tenn. Code Ann. § 62-5-103, "a violation of this Chapter is a class C misdemeanor," and "it is the duty of the district attorney general to prosecute violations…". (*Id*). If convicted, Mr. Van Ness could be imprisoned for 30 days and/or fined $50.00 for each alleged transgression. (Tenn. Code Ann. § 40-35-111(e)(3).) (*Id at ¶ 13*).

### F. Mr. Van Ness's First Amendment Rights Are Being Violated

The Board's actions clearly violate Mr. Van Ness' First Amendment free-speech rights, whether that speech is in the form of one-on-one, educational public lectures, or assisting the public by providing language translation services. It violates his First Amendment right to assembly by prohibiting him from meeting with any person "to discuss" funeral arrangements before, during,

or even *after* such services have been rendered, or even attending or speaking at funeral or memorial services. It violates Mr. Van Ness' freedom of the press by prohibiting him from drafting, preparing, and/or distributing written memorial information during funeral / gravesite services, speaking at funeral services, commenting about Tennessee's funeral laws, or potentially truthful discussions about his free services. As everything surrounding the religious rituals related to death and the transition to the afterlife are by definition are religious in nature, the State's position against Mr. Van Ness violates his well-established right to religious freedom.

**LEGAL STANDARD**

A preliminary-injunction motion is governed by the familiar four-part test: a Plaintiff must show (l) he "is likely to succeed on the merits, (2) he "is likely to suffer irreparable harm in the absence of preliminary relief," (3) "the balance of equities tips in his favor," and (4) "an injunction is in the public interest., *Winter v. Nat. Res. Def Council, Inc*., 555 U.S. 7, 20 (2008). In a First Amendment cases heightened constitutional scrutiny means that the government bears the burden of proof to justify its speech / First Amendment restrictions, and thus the government bears the burden to prove the preliminary injunction <u>should not</u> be granted because it is unlikely to satisfy heightened scrutiny. *See Ashcroft v. ACLU*, 542 U.S. 656, 666 (2004) ("As the Government bears the burden of proof on the ultimate question. [Plaintiffs] must be deemed likely to prevail unless the Government has shown that [Plaintiffs'] proposed less restrictive alternatives are less effective than" the challenged regulation.). *Korte v. Sebelius*, 735 F.3d 654, 666 (7th Cir. 2013) (The court "will find a First Amendment violation unless the government can satisfy 'strict scrutiny' by demonstrating its course was justified by a compelling state interest and was narrowly tailored in pursuit of that interest. *Geraghty v. Jackson Local Sch. Dist. Bd. of Educ.,* No. 5:22-cv-02237, 2024 U.S. Dist. LEXIS 142938, at *47 (N.D. Ohio Aug. 12, 2024)

**ARGUMENT**

I.  **DEFENDANTS' ENFORCEMENT OF TENNESSEE'S FUNERAL-REGULATORY SCHEME VIOLATES THE FIRST AMENDMENT AS A CONTENT-BASED RESTRICTION ON FULLY PROTECTED SPEECH AND EXPRESSIVE CONDUCT**

Plaintiff is likely to prevail on both of his First Amendment claims. Requiring him to be funeral-director as a condition of speaking or engaging in death planning is a content-based restriction on speech that fails strict scrutiny (or any other form of First Amendment scrutiny).

In fact, the federal district court in California and Indiana have already laid out the roadmap. Both federal district courts ruled in favor of materially identical First Amendment claims brought by "death doulas" who also faced a demand from state funeral-licensing authorities to get funeral-director and funeral-home licenses in order to speak about end-of-life care and home funerals. They brought First Amendment claims (among others), premised on the same legal principles as here, to vindicate their speech rights to provide education and individualized advice about death. Both district courts issued preliminary injunction in the plaintiffs' favor shortly after their cases was filed, applying heightened First Amendment scrutiny and finding that the government failed it. See *Full Circle of Living & Dying*, 2020 WL 7714200, at *5-7. (E.D. Cal. Dec 29, 2020). At summary judgment, the California plaintiff again prevailed under heightened First Amendment scrutiny, and the injunction was made permanent. See *Full Circle of Living & Dying*, 2023 WL 373681, at *17-22. The facts and law for Mr. Van Ness's claims here are materially identical, and the same result should be obtained for the following reasons.

A.  **Forbidding Plaintiff from Providing Education And Individualized Advice About End-of-Life Care To His Family Members, Friends, Co-Parishioners and Neighbors Likely Fails Any Level of First Amendment Scrutiny.**

"[C]ontent-based restrictions on speech … can stand only if they survive strict scrutiny, which requires the Government to prove that the restriction furthers a compelling interest and is narrowly tailored to achieve that interest." *Reed v. Town of Gilbert*, 576 U.S. 155, 171 (2015)

(internal quotation marks omitted). This is a demanding test, and so "[i]t is rare that a regulation restricting speech because of its content will ever be permissible., *United States v. Playboy Ent. Grp., Inc.,* 529 U.S. 803, 818 (2000). Here, Defendant's application of Tennessee's funeral-licensing laws is a content-based restriction on Mr. Van Ness's speech, and it fails strict scrutiny because it neither serves a compelling interest nor is it narrowly tailored. Defendants' application of Tennessee's funeral-licensing scheme to restrict his ability to educate and give individualized end-of-life advice to his family members, friends, co-parishioners and neighbors is a content-based restriction on speech. "Government regulation of speech is content based if a law applies to particular speech because of the topic discussed or the idea or message expressed." *Reed*, 576 U.S. at 163 (collecting cases). Another way to think of that is that a speech regulation is "content based if it require[s] 'enforcement authorities, to 'examine the content of the message that is conveyed to determine whether a violation has occurred." *McCullen v. Coakley*, 573 U.S. 464, 479 (2014) (quoting *FCC v. League of Women Voters of Cal.,* 468 U.S. 364, 383 (1984)).

Defendants' enforcement of Tennessee's funeral-licensing laws against Mr. Van Ness is plainly content-based. Their enforcement turns entirely on the topics he discusses and the ideas and messages examining the content of Mr. Van Ness' messages. If Mr. Van Ness were speaking to his family members, friends, co-parishioners, and neighbors about UT football he would be in the clear; however, the moment his conversations veer into the topics of planning for death or a funeral, the full weight of Tennessee's funeral-licensure scheme snaps into force. Defendants' "cease-and-desist" demands, backed by threats of excessive fines and criminal prosecution, as well as the statutes themselves, make plain the content-based nature of their speech regulations.

The Supreme Court has repeatedly held that regulations that restrict speech like Mr. Van Ness' are content-based and trigger heightened First Amendment scrutiny. That is true for regulations on the "creation and dissemination of information." *Sorrell v. IMS Health Inc*., 564 U.S.

552, 570 (2011). Or where the action that "trigger[s] coverage under the statute consists of communicating a message," including "speech [that] imparts a 'specific skill,' or communicates advice." *Holder v. Humanitarian Law Project*, 561 U.S. 1, 27-28 (2010). Mr. Van Ness' speech fits squarely into all those categories, as it disseminates information, communicates a message, imparts skills, and communicates advice.

It is irrelevant to the First Amendment that Defendants' speech regulations come in the form of an occupational-licensing scheme. Although some lower courts used to treat so-called "professional speech" as receiving a lower form of First Amendment scrutiny, the Supreme Court firmly repudiated that doctrine in *National Institute of Family & Life Advocates v. Becerra* (*NIFLA*), 138 S. Ct. 2361 (2018). The Supreme Court explained that "[s]peech is not unprotected merely because it is uttered by 'professionals,' *id*. at 2371-72, and the Court specifically admonished that States cannot assert an "unfettered power to reduce a group's First Amendment rights by simply imposing a licensing requirement." *id*. at 2375. "[O]rdinary First Amendment principles" thus protect those who speak as part of their jobs – even if within or adjacent to a licensing regime-including "[d]octors and nurses," lawyers," marriage counselors," bankers," "accountants," physical therapists," truck drivers," bartenders," barbers," and "many others." (*Id*). "By discarding the professional speech doctrine, *NIFLA* rejected the proposition that First Amendment protection turns on whether the challenged regulation is part of an occupational-licensing scheme." *Vizaline, L.L.C. v. Tracy*, 949 F.3d 927, 932 (5th Cir. 2020) (applying heightened First Amendment scrutiny to regulation of map-drawing). In that vein, the circuit courts have routinely applied heightened First Amendment scrutiny to <u>laws that restrict people from communicating or giving advice in an occupational context</u>. *See, e.g., Billups v. City of Charleston*, 961 F.3d 673, 684, 690 (4th Cir. 2020) (tour guides); *Hines v. Quillivan*, 982 F.3d 266, 272 (5th Cir. 2020) (remote veterinary advice). *Pac. Coast Horseshoeing Sch., Inc. v. Kirchmeyer*,

961 F.3d 1062, 1069 (9th Cir. 2020) (providing education on horseshoeing). *Wollschlaeger v. Governor*, 848 F.3d 1293, 1301, 1307 (11th Cir. 2017) (*en banc*) (medical doctors).

**B.      Defendants are Unlikely to Satisfy Strict Scrutiny.**

**1.      Defendants' speech restrictions are unlikely to satisfy any level of scrutiny.**

"Content-based regulations" like the Tennessee scheme at issue here "are presumptively invalid." *R.A.V. v. City of St. Paul*, 505 U.S. 377, 382 (1992).  They "can stand only if they survive strict scrutiny, which requires the Government to prove that the restriction furthers a compelling interest and is narrowly tailored to achieve that interest. *Reed*, 576 U.S. at 171 (internal quotation marks omitted).  Here, the government is unlikely to satisfy either requirement because the funeral-licensing laws as applied to Mr. Van Ness does not serve a compelling interest and are far from narrowly tailored.  Mr. Van Ness is engaged in conduct which every Tennessean has the right to engage.  Tennesseans are permitted to <u>not</u> to hire a funeral director and plan their own religious arrangements free of government threats of fines and jail.  Mr. Van Ness desires nothing less.

**2.      There is no compelling government interest in preventing adults from receiving education and individualized advice about death.**

There is no compelling government interest in preventing Mr. Van Ness and Tennesseans from speaking with their family members, friends, co-parishioners and neighbor about the end of life.  Compelling interests are those that sit at the core functions of government such as "combating terrorism," *Humanitarian Law Project*, 561 U.S. at 28, or "preserving public confidence in the integrity of the judiciary," *Williams-Yulee v. Fla. Bar*, 575 U.S. 433, 444 (2015).  Restricting Mr. Van Ness from giving emotional comfort and advice about death serves no public interest at all, much less one comparable to protecting American lives from terrorist violence. "[T]he burden is on the government to show the existence of such an interest. *Worrell Newspapers of Ind., Inc. v. Westhaf*er, 739 F.2d 1219, 1222 (7th Cir. 1984), aff'd, 469 U.S. 1200 (1985) (quoting *First Nat'l*

*Bank of Bos. v. Bellotti*, 435 U.S. 765, 786 (1978)). In other words, "[t]he State must specifically identify an 'actual problem, in need of solving,' and its 'evidence' for this problem should itself be 'compelling.'" *Brown v. Ent. Merchants Ass'n*, 564 U.S. 786, 799-800 (2011) (citation omitted). The only possible governmental interest Plaintiff can imagine Defendants will proffer is consumer protection. No such interest, however, would be *compelling*.

In part, that is because it cannot be a legitimate interest – much less a compelling one – to deliberately suppress Mr. Van Ness's speech to his family members, friends, co-parishioners and neighbors just to keep them ignorant about their own options in preparing for death and their memorials afterwards. See, e.g., 44 *Liquormart, Inc. v. Rhode Island*, 517 U.S. 484, 503 (1996) (plurality opinion) ("The First Amendment directs us to be especially skeptical of regulations that seek to keep people in the dark for what the government perceives to be their own good."). This constitutional interest in the free flow of information belongs not just to Mr. Van Ness, but also to his family members, friends, co-parishioners, and neighbors who want to "receive information and ideas." *Va. State Bd. Of Pharmacy v. Va. Citizens Consumer Council, Inc.*, 425 U.S. 748, 756-57 (1976) (internal quotation marks omitted). The First Amendment rejects a "highly paternalistic approach" and "assume[s] that information is not in itself harmful, that people will perceive their own best interests if only they are well enough informed, and that the best means to that end is to open the channels of communication rather than to close them." (*Id*. at 770.) If the State truly felt funeral directors were necessary, it would have followed the lead of the ten (10) states that require a funeral director be involved. Instead, the Tennessee Legislature respected the religious beliefs of its citizens and specifically exempted them from the entire Funeral Board's regulatory scheme. The Board has taken it upon itself to criminalize Mr. Van Ness' conduct by simply magically claiming his conduct is "funeral directing" so it can threaten him with fines and imprisonment.

The Board's obvious goal to leave the public at the mercy of self-interested funeral directors who can take advantage of the vulnerable people in what is often the most trying time of their lives.

### 3. Requiring Mr. Van Ness to Become a Licensed Funeral Director to Speak and Interact With Other Adults is Not the Least Restrictive Alternative.

Even <u>if</u> Defendants had a compelling interest, the demands of the funeral-licensing laws are so sweeping and onerous that they are far from narrowly tailored. Especially in a State that specifically allows citizens to NOT hire a funeral director and perform all the necessary services to bury their dead. In other words, even if there were a compelling interest at stake, Tennessee's scheme "could still not survive strict scrutiny because" there are "other less restrictive alternatives" to accomplish it. *Ent. Software Ass'n v. Blagojevich*, 469 F.3d 641, 650 (7th Cir. 2006). see also S. Ridge Baptist Church v. Indus. Com. of Ohio*, 911 F.2d 1203, 1206 (6th Cir. 1990) "The state may justify an inroad on religious liberty by showing that it is the least restrictive means of achieving a compelling state interest."*

Instead, the Funeral Board has chosen the most <u>restrictive</u> means: imposing a blanket restraint of any speech or conduct under threat of excessive fines and criminal prosecution . "It is 'offensive' not only to the First Amendment, but to the very notion of a free society," to demand that "a citizen must first inform the government of his desire to speak to her neighbors and then obtain a permit to do so." *Watchtower Bible & Tract Society of N. Y., Inc. v. Vill. of Stratton*, 536 U.S. 150, 165-66 (2002). accord *Riley v. Nat'l Fed'n of the Blind of N.C., Inc.,* 487 U.S. 781, 802 (1988) ("Generally, speakers need not obtain a license to speak."). In *Watchtower*, the Supreme Court invalidated an ordinance requiring a license to engage in door-to-door hand-billing, and in *Riley* it did the same to a licensing requirement for professional fundraisers soliciting funds for charity. The Constitution's repugnance for such licensing of speech applies just as strongly here.

In fact, the licensing requirement here is especially odious because it is so burdensome. Defendants apparently require Mr. Van Ness be a licensed funeral director just to be able to offer education and guidance about death. For Mr. Van Ness to become a licensed funeral director requires him to attend mortuary school; spend years working full-time as an intern doing tasks, such as embalming, that have no relevance to his work; take exams; and pay hundreds of dollars in fees. (TCA § 62-5-305, *et seq*.). By law every Tennessean has the right to engage in the very conduct Mr. Van Ness is being threatened over. Citizens bear the risk of being secretly investigated, falsely accused of criminal conduct in a public meeting, having the Board vote for excessive fines and criminal prosecution – <u>all for conduct our state Legislature allows citizens to do</u>.

In practice, Tennessee's funeral-licensing scheme acts as a total prohibition on Mr. Van Ness' speech. Mr. Van Ness's does not perform the technical activities of a funeral director or funeral home. Requiring him to train and re-enter a profession he does not practice serves no interest at all. It is instead simply a prohibition on giving advice about death if you are not part of the licensed funeral (business) industry.

But "when the Government seeks to regulate protected speech, the restriction must be the 'least restrictive means among available, effective alternatives." *United States v. Alvarez*, 567 U.S. 709, 729 (2012) (plurality opinion) (quoting *Ashcroft*, 542 U.S. at 666). Here, there are ample alternatives to protect consumers from whatever "harm" the Board imagines. Defendants could update their government's websites to provide consumer information about death care to alleviate any concerns they may have. *See id*. (suggesting "Government-created database" as alternative to prohibiting speech to "protect the integrity of the military awards system"). Defendants can also invoke general anti-fraud and consumer protection laws that do not target the content of speech. See *Vill. of Schaumburg v. Citizens for a Better Env't*, 444 U.S. 620, 637 (1980) (recognizing that government's "legitimate interest in preventing fraud can be better served by measures less

intrusive than a direct prohibition on [speech]. Fraudulent misrepresentations can be prohibited and the penal laws used to punish such conduct directly."). And of course, the First Amendment is no barrier to Defendants' licensing non-expressive conduct that may implicate real government health-and-safety interests, such as by regulating embalming bodies or cremating remains. It is the government's duty to "consider alternatives" to speech restrictions, *Ams. for Prosperity Foundation v Bonita,* 141 S. Ct. 2373, 2389 (2021) - not Plaintiffs, burden. It is enough here simply to observe that many such alternatives obviously exist.

### C. The Defendants' speech restrictions are unlikely to satisfy any level of scrutiny.

Although Defendants' application of Tennessee's funeral-licensing laws is content-based and therefore triggers strict scrutiny, the Court need not even apply strict scrutiny because the speech restrictions would fail any level of First Amendment scrutiny. See, e.g., *NIFLA*, 138 S. Ct. at 2367-68. *Sorrell*, 564 U.S. at 571; *see also Billups*, 961 F.3d at 684-85 (collecting cases declining to decide level of scrutiny because regulation fails any level).

Even under intermediate scrutiny, Defendants must show that their restrictions on Mr. Van Ness' speech and religious freedoms can be "justified without reference to the content of the regulated speech" and that they are "narrowly tailored to serve a significant governmental interest." *McCullen*, 573 U.S. at 477 (internal quotation marks omitted). To satisfy that test, "the burden on First Amendment rights must not be greater than necessary to further the important governmental interest at stake." *ACLU of Ill. v. Alvarez*, 679 F.3d 583, 605 (7th Cir. 2012). accord *Turner Broad. Sys., Inc. v. FCC*, 512 U.S. 622, 662 (1994). Defendants "carr[y] the burden of justifying" their speech restrictions, and they must do so with real evidence: Intermediate scrutiny is "not satisfied by mere speculation or conjecture; rather, [Defendants] must demonstrate that "any" harm [they] recite are real and that [their] restriction will in fact alleviate them to a material degree." *Edenfield v. Fane,* 507 U.S. 761, 770-71 (1993) (internal quotation marks omitted). That requirement

includes showing that the government "seriously undertook to address the problem with less intrusive tools readily available to it," and it would not be "enough for [Tennessee] simply to say that other approaches have not worked." *McCullen*, 573 U.S. at 494, 496. Accord *Billups*, 961 F.3d at 686-90. Ironically, the Legislature in not requiring families to <u>ever hire</u> a licensed Funeral Director, has taken the "less intrusive" path that the Board rejects.

For the same reasons Defendants cannot satisfy strict scrutiny, they cannot satisfy intermediate scrutiny. Their indiscriminate application of the burdensome licensing laws and threats of excessive fines and imprisonment in response to Mr. Van Ness's speech and religious activities reveals that there is no tailoring at all. Nor is Mr. Van Ness aware of any evidence that there is some actual harm that censoring his speech would alleviate, or that Tennessee has considered any alternatives. (Comp. 127). In fact, the only "alternative" the Legislature actually considered was to allow <u>all Tennessee citizens</u> to engage in the exact same conduct of funeral directors when burying their dead. Thus, even under the somewhat more flexible requirements of intermediate scrutiny, the Board's application of the funeral-licensing laws would fail miserably.

That is just the result reached in the California and Indiana death-doula cases, finding that the government must "at minimum" satisfy intermediate scrutiny and that it could not do so. *Full Circle of Living & Dying*, 2020 WL 7714200, at *6. As is likely to be the case here, the government defendants there "offer[ed] no evidence to contradict plaintiffs' claims or rebut their evidence" and could not "identify any government interest or explain why" requiring full licensure OR complete censorship of speech religious activity "does not burden more speech than necessary to further an important interest." (*id*).

D.    **The Defendants' Restrictions on Mr. Van Ness's First Amendment Rights Serves No Public Benefit and Harms Vulnerable Citizens**

It is not possible for the Defendants to justify their total ban on Mr. Van Ness's speech, religious conduct, and counseling and English translation services those who are bereaving what often is the most traumatic event of their life – the death of a loved one. The Defendants cannot show how Mr. Van Ness serving as a pall bearer, directing and participating in religious services, moving caskets, speaking / singing at religious services, drafting and distributing of memorial programs, and his speaking during religious services in religious institutions or at gravesites harms anyone. There can be no "public benefit" in allowing those in the "funeral business" to prey unchallenged on unsophisticated and language challenged mourners. Tennessee residents at their most vulnerable situations need the *experienced guidance* Mr. Van Ness. These Tennessee residents want and need Mr. Van Ness's help, and they are blessed by his generosity and kindness.

It is not surprising the Funeral Board, which represents the *business interest* of funeral directors and funeral homes, wants to silence anyone standing between them and their "victims." It is not unexpected that nowhere in the Board's June 21, 2022, letter is the reason for the infringement of his First Amendment Rights based on some societal harm or consumer complaints. Nor is there any mention in the Board's November 2023, Minutes of any harm or potential harm from Mr. Van Ness's conduct. No, it is the funeral directors and funeral home operators who want to use the State's power to silence Mr. Van Ness by threats of excessive fines and imprisonment.

Mr. Van Ness is entitled under the First Amendment to freely engage in speech and religious activities without the continuing threat of criminal prosecution even if he uses his "speech in a way that "offends" the Funeral Board.

**II. PLAINTIFF WILL SUFFER IRREPARABLE HARM TO HIS ABILITY TO GIVE INDIVIDUALIZED ADVICE, ENGAGE IN PEACABLE ASSEMBLY, RELIGIOUS EXPRESSION AND ACTIVITIES, FREEDOM OF THE PRESS TO PREPARE AND DISTRIBUITE RELGIOUS WRITTINGS, AND REDRESS HIS GOVERNRMENT BY SPEAKING WITH MEDICAL EXAMINERS IF THE COURT DOES NOT GRANT PRELIMINARY RELIEF.**

In First Amendment cases, likelihood of success on the merits means irreparable harm is essentially automatic because "the loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." *Int'l Ass 'n of Fire Fighters, Loc. 365 v. City of E. Chicago*, 56 F.4th 437, 451 (7th Cir. 2022) (brackets omitted) (quoting *Elrod v. Burns*, 427 U.S. 347, 373 (1976)). Thus, "irreparable harm is presumed in First Amendment cases." *Id.* at 450-51. accord *Higher Socy of Ind. v. Tippecanoe County*, 858 F.3d 1113, 1116 (7th Cir. 2017) ("[I]n First Amendment cases, the likelihood of success on the merits will often be the determinative factor because even short deprivations of First Amendment rights constitute irreparable harm[.]"*Full Circle of Living & Dying*, 2020 WL 7714200, at *7 ("The 'loss of First Amendment rights, for even minimal periods of time, unquestionably constitutes irreparable injury. (quoting *Klein v. City of San Clemente*, 584 F.3d 1196, 1207-08 (9th Cir. 2009)).

This case perfectly represents why there is a presumption of irreparable harm. Mr. Van Ness is now under a governmental mandate not to speak under the continuing threat of excessive fines and criminal prosecution. Since the Board voted to assess him a $20,000.00+ fine and referred his actions to the district attorney for criminal prosecution, he has already been forced to sacrifice his First Amendment rights and stop talking. These burdens and continued fears of imprisonment have had severe, tangible effects on Mr. Van Ness and his ability to interact with his actual and extended family. At any time, one of his family members, friends, co-parishioners, or neighbors could experience a sudden death of a loved one, or be diagnosed with a terminal illness, and they would need Mr. Van Ness' (now prohibited) services immediately. In these circumstances, common in Mr. Van Ness' field of expression, "delay of even a day or two may be intolerable." *Sanders Cnty. Repub. Cent. Comm. v. Bullock*, 698 F.3d 741, 748 (9th Cir. 2012). Yet without a preliminary injunction while this case is pending, he will be muzzled and unable to offer guidance, support, and English translation services when they are most needed.

## III. THE BALANCE OF EQUITIES AND THE PUBLIC INTEREST FAVOR A PRELIMINARY AND PERMANENT INJUNCTION.

"[I]n First Amendment cases the balance of harms normally favors granting preliminary injunctive relief because the public interest is not harmed by preliminarily enjoining enforcement that is probably unconstitutional." *Higher Soc'y of Ind.,* 858 F.3d at 1116. Thus, "the analysis begins and ends with the likelihood of success on the merits of the First Amendment claim." *Id*. (brackets omitted) (After all, it is in the public interest for the government to follow the Constitution. So where a government entity is "applying [its] policy in a manner that violates [Plaintiffs'] First Amendment rights" as here-then it "is no harm at all" to the government to enjoin enforcement of that unconstitutional policy. *Christian Legal Soc'y v. Walker*, 453 F.3d 853, 867 (7th Cir. 2006). "Stated differently, 'injunctions protecting First Amendment freedoms are always in the public interest. *Alvarez*, 679 F.3d at 590 (quoting *Christian Legal Soc'y*, 453 F.3d at 859). Accord *Full Circle of Living & Dying*, 2020 WL 7714200, at *7 ("It is always in the public interest to prevent the violation of a party's constitutional rights." (brackets omitted) (quoting *Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012)). Add to that the severe burdens currently suffered by Mr. Van Ness while he labors under a broad gag order on his speech and religious expression, peaceful religious assembly, ability to engage in language translation, and seek redress by speaking with medical examiners, it is obvious the equities and public interest tilt decisively in his favor.

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully ask the Court to enter a preliminary injunction protecting their constitutional speech rights for the pendency of this case. The specific requested relief is described in the motion.

Respectfully Submitted:


\_\_/s/ James Roberts_____


James D. R. Roberts #017537
**Creditor Law Center, PLLC Attorneys at Law**
P. O. Box 641, Dickson, Tennessee 37056
(615) 242-2002 office
Jim.Roberts@CreditorLawCenter.com
*Attorney for Reid Van Ness*




**Certificate of Service**

I certify a true copy of this document was sent via ECF, mail(or hand delivery), and email to Troy Bryant, Associate General Counsel, Department of Commerce and Insurance, Davy Crockett Tower, 500 James Robertson Parkway, Nashville, Tennessee 37243; and by ECF, mail (or hand delivery) to Jonathan Skrmetti, Attorney General of the State of Tennessee, P. O. Box 20207, Nashville, TN 37202 on this the 23rd day of April 2025.


\_\_\_ /s/ James Roberts _____
James Roberts