# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF TENNESSEE
### NASHVILLE DIVISION

|  |  |  |
|---|---|---|
| **REID VAN NESS,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **No. 3:24-cv-01353** |
| | ) | |
| **PAMELA STEPHENS, et al.,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## <u>MEMORANDUM OPINION</u>

Plaintiff Reid Van Ness ("Van Ness") is a death doula. As a death doula, he helps people confront a difficult topic—death—through providing advice on end-of-life options and practices, assisting with funeral services, and serving as a support system for grieving individuals. This case arises from the Tennessee Board of Funeral Directors and Embalmers members Pamela Stephens, Christopher W. Lea, Wendell J. Naylor, Randolph R. Nash, Timothy W. Wheeler, Donald S. Haynes, Scottie Poarch (collectively, "Funeral Board") and Attorney General of Tennessee Jonathan Skrmetti ("Skrmetti") (altogether, "Defendants") decision allegedly fining and threatening to prosecute Van Ness because his death doula practices are violative of the Tennessee Funeral Directors and Embalmers Act ("FDEA" or "Act"). In response, Van Ness brings the instant 42 U.S.C. § 1983 ("Section 1983") suit alleging violations of his First and Fourteenth Amendment rights. Before the Court is Defendants' Motion to Dismiss (Doc. No. 39), which has been fully briefed and is ripe for review (Doc. Nos. 39, 40, 49, 50, 52). For the following reasons, the Court will grant Defendants' motion on Van Ness's claims against Skrmetti and Van Ness's requests for compensatory damages, and will deny it in all other respects. Pursuant to Federal

Rules of Civil Procedure 12 and 21, the Court will *sua sponte* dismiss Van Ness's claims against Lawrence and Van Ness's requests for equitable relief for injuries to third parties.[1]

## I.    BACKGROUND AND FACTUAL ALLEGATIONS[2]

Van Ness was a licensed Tennessee funeral director and embalmer from 1987 to 2020. (Doc. No. 36 ¶ 48). In March 2020, Van Ness surrendered his licenses and retired. (Id. ¶¶ 6–7, 49–50; Doc. Nos. 36-2, 36-3). Though no longer licensed, Van Ness elected to work as a death doula and community death care advocate, (Doc. No. 36 ¶¶ 4, 37), to advise and guide families throughout the death process. (Id. ¶ 1). This work is different from what licensed funeral directors and embalmers typically do; indeed, Van Ness does not hold himself out as either. (Id. ¶¶ 54, 57, 79, 81). Rather, Van Ness provides free services to share his knowledge about end-of-life options, engages with people on difficult conversations surrounding death, and gives families support after their loved one's passing. (Id. ¶¶ 4, 8, 38, 71, 73, 78).

Van Ness alleges that, despite the FDEA not applying to him and committing to avoid engaging in practices that fall within its scheme, Defendants have applied the Act to him to punish him for his death doula practices and quell his protected speech and conduct. (Id. ¶¶ 4, 6, 8–10, 12, 99). This began on June 21, 2022, when the Funeral Board, through the Associate General

---

[1] The Amended Complaint (Doc. No. 36) ("Complaint") also names Carter Lawrence ("Lawrence") in his official capacity as the Commissioner of the Tennessee Department of Commerce and Insurance and the State Fire Marshall. (Doc. No. 36 ¶ 33). However, the Complaint contains only a single allegation about Lawrence, describing his job title and responsibilities. (Id.). Given the Complaint is devoid of any allegations showing Van Ness has standing to sue Lawrence, or that Lawrence is properly named in the Complaint, the Court will dismiss Lawrence from this action *sua sponte* under Rules 12 and 21. See Letherer v. Alger Grp., 328 F.3d 262, 267 (6th Cir. 2003), overruled on other grounds by Blackburn v. Oaktree Cap. Mgmt., 511 F.3d 633 (6th Cir. 2008).

[2] The Court draws the facts in this section from the Complaint and assumes the truth of those facts for purposes of ruling on the instant motion. See Erickson v. Pardus, 551 U.S. 89, 94 (2007).

2

Counsel for the Department of Commerce and Insurance ("Department") Troy Bryant ("Bryant"), sent Van Ness a letter entitled "Public Chapter No. 1014" ("June 2022 Letter"). (Id. ¶ 11). The June 2022 Letter told to Van Ness that:

> The Department would like to make it formally known to you of the passing of Public Chapter No. 1014, effective May 9, 2022. In part, the Public Chapter redefines the definition of "Unlicensed Assistant" to exclude individuals who formally held a funeral director or embalmer license that was previously revoked, suspended, or voluntarily surrendered with outstanding complaints.
>
> Under Public Chapter No. 1014, you are no longer considered an "Unlicensed Assistant" for the purposes of applicable statutes and rules and any future involvement in the business of funeral directing or embalming, whether under the supervision of Mr. [Shane] Hessey [("Hessey")] or not, will be considered unlicensed activity.[3]
>
> For the sake of clarity, the following are examples that include, but are not limited to, actions that would be considered unlicensed activity if you were to engage in them:
>
> - Speaking or engaging with current or prospective consumers in Tennessee
> - Speaking to medical examiners in Tennessee
> - Meeting with clients to discuss arrangements to be provided in Tennessee
> - Translation services for current or prospective consumers for Tennessee residents
> - Any action relating to providing removal services to Tennessee residents
> - Any action relating to providing funeral services to Tennessee residents
> - Any action relating to providing embalming services to Tennessee residents
> - Any action relating to securing grave spaces or plots to Tennessee residents
>
> If any of the above listed actions, or any others that involve providing funeral directing, embalming, or removal services to any resident of Tennessee, are performed or performed by someone else with your involvement, such actions will be considered unlicensed activity on your behalf. Following such action, the Department will administratively open a complaint against you regarding unlicensed activity where civil penalties or other disciplinary action may be assessed.

(Id. ¶ 11; Doc. No. 36-5).

---

[3] Van Ness alleges that Hessey is a licensed funeral director. (Doc. No. 36 ¶ 15).

3

Bryant echoed a similar sentiment in correspondence with Hessey's counsel in August 2022 ("August 2022 Letter"). (Doc. No. 36 ¶ 15; Doc. No. 36-6). Hessey's attorney inquired with Bryant on whether Van Ness had violated any Tennessee laws by conducting his death doula services. (Doc. No. 36 ¶ 15; Doc. No. 36-6). In the August 2022 Letter, Bryant responded:

> As discussed in our phone conversation on July 8, 2022, Mr. Van Ness is not "free to engage in [the listed] activities as long as he is not under the supervision of someone subject to [the Department's] authority." The activities listed in the initial June 21 letter, or any other activities that involve the assistance in operation of a funeral establishment or that effectively hold Mr. Van Ness out to the public to be a funeral director, are unlicensed activity. Mr. Van Ness is not to engage in unlicensed activity and will be held accountable, as will anyone who aides or abets Mr. Van Ness' unlicensed activity. The allegations regarding Mr. Hessey and Mr. Van Ness' alleged business relationship is still being investigated at this time.
>
> Finally, the Department is unable to provide any interpretation that could be construed as an informal opinion of the Board regarding hypothetical activity conducted by Mr. Van Ness. However, as we discussed on July 8, the above-referenced list of activities that Mr. Van Ness is prohibited from engaging in, though it is not an all-encompassing list, may be of help in determining what actions Mr. Van Ness is prohibited from taking following the enactment of Public Chapter 1014. Likewise, Tenn. Code Ann. § 62-5-101 may also be helpful in determining what is defined as "Funeral Directing" under Tennessee Code.

(Doc. No. 36-6 at 1).

Throughout 2022 and 2023, the Funeral Board began receiving complaints from funeral directors who expressed concerns that Van Ness's death doula activities constituted unlicensed activity prohibited by the FDEA. (Doc. No. 36 ¶¶ 18, 97–99; see Doc. No. 36-7 at 8–17). The Funeral Board addressed these complaints against Van Ness at its board meeting on November 14, 2023. (Doc. No. 36 ¶ 17). The board meeting minutes describe the investigators' assessments of the lodged complaints. (Doc. No. 36-7 at 8–17). The minutes reveal that the investigators obtained evidence of various instances of Van Ness: accepting payment to arrange, manage, and perform funeral directing services; requesting to embalm and prepare loved ones of the deceased; and

holding himself out as a licensed funeral director under another individual's name. (See id.). The minutes also reflect that the investigators discovered that Van Ness:

- Entered the hearse after conducting the graveside service;
- Moved the casket in the church with the assistance of another individual;
- Set up the casket at the front of the church and arranging the flowers and commemorations around the casket;
- Removed the casket and flowers from the hearse;
- At the front of the church, spoke at the service of the decedent while a member of the family translated;
- Arrived at the service first and directed a few cars to the designated area in the cemetery;
- Handed out programs at the church;
- Had been present at the graveside;
- Handed out programs and greeting guests; and
- Accompanied a family to the cemetery to make burial arrangements.

(See id.; Doc. No. 36 ¶ 105).

During the meeting, the Funeral Board determined Van Ness had engaged in unlicensed activity under the FDEA, and voted to recommend he be assessed for a:

$20,000.00 civil penalty plus the costs of investigation. Break-down of civil penalty for each of the cases. FUN-2022021381 - $12,000.00, FUN-2022044371 - $1,000.00, FUN-2023029901 - $4,000.00, and FUN-2023029921 - $3,000.00. Authorize via Consent Order and formal hearing if necessary.

(Id. ¶¶ 19, 101–02; Doc. No. 36-7 at 17). Absent from the board meeting minutes is any indication on what portion of Van Ness's actions the Funeral Board found to constitute unlicensed activity under the FDEA. (See Doc. No. 36-7 at 17).

That same day, the Funeral Board also voted to make a referral of Van Ness's actions to the district attorney's office for criminal prosecution pursuant to Tenn. Code Ann. § 62-5-103. (Doc. No. 36 ¶ 21; Doc. No. 36-7 at 17). Again, the minutes are silent on the exact basis for the Funeral Board's referral. (See Doc. No. 36-7 at 17). On July 8, 2024, Van Ness's counsel emailed Bryant, asking if the Funeral Board "ever instigate[d] criminal action against him for his alleged violations of TCA 62-5-101(13)[.]" (Doc. No. 36 ¶ 23; Doc. No. 36-8 at 2). Bryant responded a

5

week later, stating only that he "ha[d] been in contact with both District [A]ttorneys and the Attorney General's office regarding Mr. Van Ness." (Doc. No. 36-8 at 1).

Because of Defendants' enforcement actions, Van Ness curtailed his death doula services and has stopped performing many of them completely. (Doc. No. 36 ¶ 110–17). To the extent Van Ness continues his work, he does so with great fear of arrest, incarceration, and excessive fines being imposed on him for doing so. (Id.).

## II.    DISCUSSION

Defendants move to dismiss Van Ness's First Amendment claims brought pursuant to Section 1983 under Rules 12(b)(1) and (b)(6), arguing Van Ness: (1) lacks standing; (2) is barred from obtaining compensatory damages and injunctive relief under the doctrine of sovereign immunity; and (3) improperly raises only time-barred claims.[4] (Doc. No. 40 at 9–10). To properly contextualize the parties' briefing, the Court will start with some background on the statutory scheme at the heart of this case, the FDEA. It will then turn to Defendant's arguments for dismissal.

### 1.    The FDEA

"The FDEA and its implementing regulations, Tenn. Comp. R. & Regs. chs. 0660-1–0660-10, regulate the funeral and embalming industry in Tennessee." Craigmiles v. Giles, 110 F. Supp. 2d 658, 660 (E.D. Tenn. 2000). The Act establishes a "board of funeral directors and embalmers" (i.e., the Funeral Board). Tenn. Code Ann. § 62-5-201(a). The Funeral Board has the power to

---

[4] In evaluating the motion to dismiss, the Court will consider the Complaint and the exhibits attached. Bassett v. Nat'l Collegiate Athletic Ass'n, 528 F.3d 426, 430 (6th Cir. 2008). While not legally relevant for the purposes of resolving the instant motion, per Defendants' request, the Court will also consider the suits filed against Van Ness in this District and the consumer-alert bulletin, which are all judicially noticeable. Armengau v. Cline, 7 F. App'x 336, 344 (6th Cir. 2001) ("documents attached to a motion to dismiss" that are "referred to in a complaint and [are] central to the claim," as well as "public records" are "matters of which a court may take judicial notice").

"adopt, promulgate, and enforce rules and regulations" to effectuate the FDEA, (id. § 62-5-203(a)), "conduct inspections and investigate complaints" on alleged violations of the Act, (id. § 62-5-208), "assess civil penalties against [a] person for each separate violation of" the FDEA (Tenn. Com. R. & Regs. 0660-08.01), and open contested cases against individuals where it finds disciplinary action is appropriate (Tenn. Code Ann. § 62-5-105; Tenn. Comp. R. & Regs. 660-07).

The Act "requires all those engaged in ['embalming' and] 'funeral directing' to be licensed by" the Funeral Board. Craigmiles v. Giles, 312 F.3d 220, 222 (6th Cir. 2002) (citing Tenn. Code Ann. § 62-5-201). The FDEA defines both "embalming" and "funeral directing." The Act defines the former as "the preservation and disinfection, restoration or attempted preservation or disinfection of dead human bodies by the application of chemicals externally or internally, or both[.]" Tenn. Code Ann. § 62-5-101(5). It defines the latter to include the:

> (i) Practice of directing or supervising funerals or the practice of preparing dead human bodies for burial by any means, other than by embalming, or the disposition of dead human bodies;
>
> (ii) Making of arrangements to provide for funeral services or the making of financial arrangements for the rendering of funeral services;
>
> (iii) Provision or maintenance of a place for the preparation for disposition or for the care or disposition of dead human bodies;
>
> (iv) Use of the word or term "funeral director," "undertaker," "mortician," "funeral parlor," "funeral chapel" or any other word or term from which can be implied the practice of funeral directing; or
>
> (v) Holding out to the public that one is a funeral director or engaged in a practice described in this subdivision (6)[.]

Tenn. Code Ann. § 62-5-101(6)(A).

The FDEA permits a licensed funeral director or embalmer to use an unlicensed assistant in conducting his or her services so long as the unlicensed assistant is under the licensed

7

individual's supervision.  Tenn. Code Ann. § 62-5-313(a).  As of May 9, 2022, "unlicensed assistant" is defined under the Act as:

> (A) [] an individual who assists in the operation of a funeral establishment, under the direction and supervision of a funeral director or embalmer, and who is not a licensed funeral director or embalmer pursuant to § 62-5-303; and
>
> (B) [but] [d]oes not mean an individual who previously held a funeral director or embalmer license in this state that was revoked, suspended, or voluntarily surrendered with outstanding complaints.

Tenn. Code Ann. § 62-5-101(13); see 2022 Tenn. Pub. Acts, ch. 1014, § 3.

While the FDEA is expansive, it clarifies that it should not be interpreted to prevent certain types of conduct related to one's passing.  Specifically, under § 62-5-102:

> Nothing in this chapter shall be constituted to prevent or interfere with the ceremonies, customs, religious rites or religion of any people, denomination or sect, to prevent or interfere with any religious denomination, sect or any body composed of persons of a denomination, or to prevent or interfere with any church or synagogue from having its committee or committees prepare human bodies for burial or to the families, friends or neighbors of deceased persons who prepare and bury their dead without charge.

Otherwise, a violation of the FDEA is a Class C misdemeanor, which may be prosecuted by the district attorney general.  Tenn. Code Ann. § 62-5-103.

### 2. Defendants' Rule 12(b)(1) Arguments (Sovereign Immunity and Standing)

The Court turns to Defendants' arguments that they are entitled to dismissal under Rule 12(b)(1) on standing and sovereign immunity grounds.  See Stalley v. Methodist Healthcare, 517 F.3d 911, 916 (6th Cir. 2008) (referring to a "lack of standing" as a "lack of subject matter jurisdiction"); Russell v. Lundergan-Grimes, 784 F.3d 1037, 1046 (6th Cir. 2015) (Eleventh Amendment sovereign immunity is a jurisdictional issue to be addressed before the merits). Because Defendants' sovereign immunity arguments considerably narrow the scope of this case,

8

the Court will address them first.  See Thompson v. Whitmer, 2022 WL 168395, at *4 (6th Cir. Jan. 19, 2022) (addressing sovereign immunity instead of standing).

## A.  Sovereign Immunity

Defendants argue that state sovereign immunity bars the instant suit entirely.[5]  (Doc. No. 40 at 17).  Pursuant to the Eleventh Amendment, "each State[,]" including Tennessee, "is a sovereign entity in our federal system[.]"  Seminole Tribe of Florida v. Florida, 517 U.S. 44, 54 (1996).  It is "'inherent in the nature of sovereignty not to be amenable to the suit of an individual without its consent.'"  Id. (quoting Hans v. Louisiana, 134 U.S. 1, 13 (1890)).  "[A] suit against a state official in his or her official capacity[,]" like the one Van Ness brings against Defendants, "is not a suit against the official but rather is a suit against the official's office" and is therefore "no different from a suit against the State itself."  Will v. Michigan Dep't of State Police, 491 U.S. 58, 71 (1989).  While the Eleventh Amendment is a jurisdictional bar from suit, "unlike subject-matter jurisdiction, 'the entity asserting the Eleventh Amendment immunity has the burden to show that it is entitled to immunity.'"  Nair v. Oakland Cnty. Cmty. Mental Health Auth., 443 F.3d 469, 474 (6th Cir. 2006) (quoting Gragg v. Ky. Cabinet for Workforce Dev., 289 F.3d 958, 963 (6th Cir. 2002)); c.f. Calderon v. Ashmus, 532 U.S. 740, 745 n.2 (1998) (the Eleventh Amendment "is jurisdictional in the sense that it is a limitation on the federal court's judicial power").

---

[5] Defendants argue this with one exception: they do not move to dismiss Van Ness's requests for declaratory relief on sovereign immunity grounds.  (Doc. No. 36 at Request for Relief ¶ 1). Because the Court can address sovereign immunity issues not raised by the parties *sua sponte*, and the Court finds it just to do so here, it will consider Van Ness's requested declaratory relief in assessing the parties' sovereign immunity arguments.  See S&M Brands, Inc. v. Cooper, 527 F.3d 500, 507 (6th Cir. 2008) (a federal court "can raise the question of sovereign immunity sua sponte because it implicates important questions of federal-court jurisdiction and federal-state comity") (citation omitted).  Further, because Defendants do not argue that the Court should refrain from exercising its jurisdiction over Van Ness's requests for declaratory relief, it will not consider that issue in resolving this motion.  See Grand Trunk W. R.R. Co. v. Consol. Rail Co., 746 F.2d 323, 326 (6th Cir. 1984).

9

Van Ness contends the Eleventh Amendment's bar on suits against state officials is irrelevant here because exceptions to that doctrine allow his case to proceed. "There are three exceptions to sovereign immunity: (1) when the state has waived immunity by consenting to the suit, (2) when Congress has expressly abrogated the states' sovereign immunity, and (3) when the doctrine set forth in Ex parte Young, 209 U.S. 123 (1908), applies." Boler v. Earley, 865 F.3d 391, 410 (6th Cir. 2017) (citation omitted). Given the parties correctly agree that Tennessee has not waived its sovereign immunity in federal court, their disputes arise over the applicability of the second and third exceptions.

On the second exception, whether Congress has expressly abrogated the state's sovereign immunity, the relevant inquiry is on the applicable statute at issue. See Seminole Tribe of Florida, 517 U.S. at 56–57. It is well established that Section 1983, the statute Van Ness brings all his claims pursuant to, does not abrogate Eleventh Amendment immunity. See Quern v. Jordan, 440 U.S. 332, 340–41 (1979); Hutsell v. Sayre, 5 F.3d 996, 999 (6th Cir. 1993); Boler, 865 F.3d at 410 (citation omitted). Still, Van Ness hinges his requests for compensatory relief on a caveat to this rule that allows plaintiffs to bring "damages claims against state officers under § 1983 for the violation of constitutional rights" where "the plaintiffs sued the officers in their *personal* capacities and thus may legally seek money only from the officers' bank accounts." Thompson, 2022 WL 168395, at *5 (citing Kentucky v. Graham, 473 U.S. 159, 166 (1985)).

As Defendants emphasize, Van Ness's reliance on this exception is unsuccessful. Van Ness's own pleading choices foreclose his damages claims for the alleged constitutional violations. Critically, Van Ness unambiguously decided to sue all nine Defendants in their official capacities. (See Doc. No. 36 ¶¶ 32–34). Van Ness has unmistakably chosen to plead his claims such that the State of Tennessee is the real party in interest he seeks damages from, not the state officers in their

10

personal capacities. His case does not fall into the caveat to the general rule that allows plaintiffs to collect damages for Section 1983 claims. See Graham, 473 U.S. at 166. Accordingly, Defendants have carried their burden of showing that Van Ness's requests for compensatory damages are barred by sovereign immunity. See Will, 491 U.S. at 71. Their motion will be granted on this ground.

The parties further dispute whether the third exception to sovereign immunity, the narrow Ex parte Young doctrine, applies to Van Ness's requests for injunctive relief. Ex Parte Young, 209 U.S. at 150–56. "That exception provides that 'suits against state officials seeking equitable relief for ongoing violations of federal law are not barred by the Eleventh Amendment.'" Cooperrider v. Woods, 127 F.4th 1019, 1043 (6th Cir. 2025) (quoting Mich. Bell Tel. Co. v. Climax Tel. Co., 202 F.3d 862, 867 (6th Cir. 2000)). "But the Ex parte Young exception applies only when a plaintiff seeks and clearly alleges 'prospective' equitable relief to stop 'a continuing violation of federal law.'" Josephson v. Ganzel, 115 F.4th 771, 782 (6th Cir. 2024) (quoting Morgan v. Bd. of Pro. Resp. of the Sup. Ct. of Tenn., 63 F.4th 510, 515 (6th Cir. 2023)). To determine whether the Ex parte Young exception applies to Van Ness's claims for equitable relief, the Court "need only conduct a 'straightforward inquiry into whether [the] complaint alleges an ongoing violation of a federal law and seeks relief properly characterized as prospective.'" Verizon Md., Inc. v. Pub. Serv. Comm'n of Md., 535 U.S. 635, 645 (2002) (quoting Idaho v. Coeur d'Alene Tribe of Idaho, 521 U.S. 261, 296 (1997)). Because the parties address this issue separately for Skrmetti and the Funeral Board, the Court will do so as well.

i.  Skrmetti

First, Defendants argue that none of the injunctive relief Van Ness seeks against Skrmetti falls within the Ex parte Young exception because Van Ness cannot show that Skrmetti continues

11

to violate Van Ness's First Amendment rights. (Doc. No. 40 at 18–19). Contrary to Van Ness's argument otherwise, the Court agrees that the allegations against Skrmetti are far from sufficient to satisfy the straightforward <u>Ex parte Young</u> inquiry.

Even assuming Skrmetti is clothed with some duty to enforce the FDEA against Van Ness (as required for <u>Ex parte Young</u> to apply), the absence of allegations demonstrating whether, when, or how Skrmetti is violating Van Ness's constitutional rights dooms Van Ness's claims for equitable relief against him. As evidenced by Van Ness's response, the only substantive allegation against Skrmetti in the 45-page Complaint is that he has been an "active participant in the suppression" of Van Ness's First Amendment rights and "has coordinated" Van Ness's criminal prosecution. (Doc. No. 36 ¶ 23; <u>see</u> Doc. No. 50 at 24). In support of this allegation, Van Ness cites to Bryant's July 2024 email to Van Ness's counsel asking about the status of the Funeral Board's referral of Van Ness for criminal prosecution in November 2023. (Doc. No. 36-8 at 1). In response, Bryant states only that he has "been in contact with both District attorneys and the Attorney General's office regarding" Van Ness. (<u>Id.</u>). According to Van Ness, Bryant's references to district attorneys demonstrates that Skrmetti advances the suppression of Van Ness's First Amendment rights by continuing to pursue criminal prosecution against him. (Doc. No. 36 ¶ 23 n.2).

Omitted from the Complaint are allegations of Skrmetti's actions to support that logical leap. Van Ness's single conclusory assertion that Skrmetti has been an active participant in suppressing his First Amendment rights based solely on Bryant having contacted the Attorney General's office does not demonstrate Skrmetti has had any involvement in violating Van Ness's federal rights. Indeed, Bryant's email makes no mention of Skrmetti or his involvement in deciding whether to bring criminal charges against Van Ness. (<u>See</u> Doc. No. 36-8 at 1). Further,

the Complaint is devoid of any factual allegations that would support Van Ness's assertion that Skrmetti is pursuing his criminal prosecution. For example, there are no allegations that Skrmetti is seeking Van Ness's indictment for criminal charges; a subpoena related to his prosecution; or conversations or dealings with Skrmetti regarding Van Ness's possible prosecution. Without these sorts of allegations, Van Ness fails to allege a "realistic possibility [Skrmetti] will take legal" action against Van Ness, or provide allegations from which the Court can infer Skrmetti took action against Van Ness in the past in a manner that continues to impact him. Russell, 784 F.3d at 1048; see Ashcroft v. Iqbal, 556 U.S. 662, 676 (2009) (for Section 1983 actions, a plaintiff must "plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution" to support requested injunctive relief).

At bottom, the Complaint does not make clear what ongoing violation of Van Ness's First Amendment rights is because of Skrmetti. See Morgan v. Bd. of Pro. Resp. of the Supreme Ct. of Tennessee, 63 F.4th 510, 515 (6th Cir. 2023) (quoting Boler, 865 F.3d at 412 ("If the complaint fails to 'make clear what th[e] ongoing violations are,' the exception does not apply.")). Without this, Van Ness's requests for equitable relief against Skrmetti do not fall under the Ex parte Young exception. Accordingly, Defendants' motion will be granted on this issue, and Skrmetti will be dismissed from this case.[6]

ii.    Funeral Board

Defendants next argue that Van Ness's requests for injunctive relief against the Funeral Board also do not fall within the Ex parte Young exception, again arguing that Van Ness has failed to allege that Defendants are continuing to violate Van Ness's First Amendment rights. (Doc. No.

---

[6] Because Skrmetti will be dismissed from this action, the Court's references to "Defendants" for the remainder of the opinion will refer to the Funeral Board only.

13

40 at 19). Van Ness disagrees, highlighting that he repeatedly alleges that the Funeral Board "has and intends to prosecute him for his First Amendment expressions," as evidenced by the Funeral Board assessing him for fines and referring his cases for criminal investigation in November 2023. (Doc. No. 50 at 25). For the following reasons, as well as those in the Court's standing analysis, see infra, Section II.2.B, the Court agrees with Van Ness that his requests for equitable relief against the Funeral Board fall within the Ex parte Young exception to sovereign immunity.

Van Ness's allegations against the Funeral Board pass the straightforward Ex parte Young inquiry. See Verizon, 535 U.S. at 645. Van Ness repeatedly alleges the Funeral Board, a group with administrative authority, has committed an ongoing violation of his First Amendment rights by punishing him for his death doula activities. For instance, Van Ness alleges that the June and August 2022 Letters warned him that speaking with consumers, medical examiners, and clients could be considered unlicensed activity resulting in the Department "administratively open[ing] a complaint against [him] regarding unlicensed activity where civil penalties or other disciplinary action may be assessed." (Doc. No. 36 ¶¶ 11, 15). Van Ness further alleges that this threat came to bear on November 2023, when the Funeral Board voted to assess fines and criminal prosecution for engaging in unlawful activity under the FDEA, some of which included speaking at services and with grieving families. (Id. ¶ 105). These actions, in turn, have chilled Van Ness's First Amendment activities pertaining to his death care services. (Id. ¶¶ 110–35).

To address the ongoing harm to his First Amendment rights, Van Ness seeks prospective relief: preliminary and permanent injunctions "enjoining future enforcement of Tennessee's funeral laws and regulations facially and as applied to [Van Ness] in violation of the First Amendment," (Doc. No. 36 at Request for Relief ¶ 3), and a declaration that the Funeral Board's "enforcement of Tennessee's funeral statutes and regulations violates the First Amendment

14

facially and as applied to" Van Ness, (id. ¶ 1). This relief is, on its face, forward looking. Accordingly, Van Ness has requested properly characterized prospective equitable relief to remedy Defendants' ongoing violations of his First Amendment rights, as required to satisfy the Ex parte Young exception to Eleventh Amendment sovereign immunity. Because Van Ness's suit against the Funeral Board is against them, rather than the State of Tennessee, Defendants' motion on this ground will be denied.

      B. Standing

Having narrowed the scope of the case, the Court turns to Defendants' argument that Van Ness does not have standing to pursue his First Amendment claims. A Rule 12(b)(1) motion for lack of standing, which asserts a "lack of subject matter jurisdiction[,] can challenge the sufficiency of the pleading itself (facial attack) or the factual existence of subject matter jurisdiction (factual attack)." Cartwright v. Garner, 751 F.3d 752, 759 (6th Cir. 2014) (citing United States v. Ritchie, 15 F.3d 592, 598 (6th Cir. 1994)). A facial attack goes to whether the plaintiff has alleged a basis for subject matter jurisdiction, and the court takes the allegations of the complaint as true for purposes of the Rule 12(b)(1) analysis. Ritchie, 15 F.3d at 598. A factual attack challenges the factual existence of subject matter jurisdiction. Id. In the case of a factual attack, the court has broad discretion with respect to what evidence to consider, including evidence outside of the pleadings, and has the power to weigh the evidence to determine the effect of that evidence on the court's authority to hear the case. Id. Here, the Court interprets Defendants to make a facial challenge, and so limits its consideration to the allegations of the Complaint, which are accepted as true. (Doc. No. 40 at 9). Unlike with sovereign immunity, here, "the *plaintiff* has the burden of proving jurisdiction in order to survive the motion." Rogers v. Stratton Indus., Inc., 798 F.2d 913, 915 (6th Cir. 1986); see Abbot v. Michigan, 474 F.3d 324, 328 (6th Cir. 2007).

"[T]he irreducible constitutional minimum of standing contains three elements." Lujan v. Defs. of Wildlife, 504 U.S. 555, 560 (1992). "The plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." Spokeo, Inc. v. Robins, 578 U.S. 330, 338 (2016) (citations omitted). Defendants contest only the first prong of Van Ness's Article III standing, that Van Ness suffered an injury in fact. (See Doc. No. 40 at 10–17).

"To establish injury in fact, a plaintiff must show that he or she suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" Spokeo, 578 U.S. at 339 (quoting Lujan, 504 U.S. at 560). The entire basis for Defendants' argument that Van Ness lacks standing is their faulty belief that Van Ness's suit amounts to only a pre-enforcement challenge. (Doc. No. 40 at 10). Based on that characterization of the Complaint, Defendants contend that Van Ness cannot satisfy the elements of pre-enforcement standing to support his claims.[7] (See id.). While Van Ness's response is far from coherent, he does present a different version of the Complaint—one that alleges injuries for past and present harms unrelated to a pre-enforcement challenge that can be remedied, at least in

---

[7] Defendants fail to specifically address whether Van Ness has standing to seek his requested declaratory and injunctive relief for "all Tennessee residents." (Doc. No. 36 at Request for Relief ¶¶ 2, 4). Still, it this Court's obligation to independently review whether it has jurisdiction over all of Van Ness's claims and requested relief. See Campanella v. Commerce Exchange Bank, 137 F.3d 885, 890 (6th Cir. 1998) ("[I]t is beyond question that federal courts have a continuing obligation to inquire into the basis of subject-matter jurisdiction to satisfy themselves that jurisdiction actually exists."). In doing so, the Court finds neither of Van Ness's requests for equitable relief on behalf of "all Tennessee residents" appropriate, given the lack of allegations showing he has standing to seek relief for injuries that are not his own. Duke Power Co. v. Carolina Env't. Study Grp., Inc., 438 U.S. 59, 80 (1978) ("even when the plaintiff has alleged injury sufficient to meet the 'case or controversy' requirement," "the plaintiff generally must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties") (citation and quotations omitted). Accordingly, Van Ness's second and fourth requests for relief will be dismissed under Rule 12(b)(1) for lack of standing.

part, by his requested equitable relief. (Doc. No. 50 at 20). Given the importance of the standing inquiry, the Court will address whether Van Ness has standing from each of the parties' views of the Complaint below. See FW/PBS, Inc. v. City of Dallas, 493 U.S. 215, 231 (1990) ("standing is perhaps the most important of [the jurisdictional] doctrines") (citation and quotations omitted).

i.  Past and Present Injuries

Contrary to Defendants' read of the Complaint, the Court finds that Van Ness has sufficiently carried his burden of establishing the first prong of standing for his past and present injuries to his First Amendment rights. See Rogers, 798 F.2d at 915. First, Van Ness has undoubtedly alleged an invasion of a legally protectable interest. Van Ness has established that he has a legally protected interest in various First Amendment activities: speaking about, writing on, providing advice and counseling to, gathering with, and giving translation services to family, friends, co-parishioners, neighbors and government officials on death care (see Doc. No. 36 ¶¶ 148–49, 160, 170, 182, 195). See Spokeo, 578 U.S. at 339. He also has sufficiently alleged Defendants have invaded that right by improperly applying the FDEA to him and punishing his First Amendment activities (see, e.g., Doc. No. 36 ¶¶ 101–02, 105, 108–09). See Spokeo, 578 U.S. at 339. Second, Van Ness has alleged harms that are sufficiently "actual" and "concrete and particularized" to support his requests for equitable relief. See Spokeo, 578 U.S. at 339. Van Ness alleges that the Funeral Board's application of the FDEA to him in an excessively broad fashion has resulted in him being assessed $20,000.00 in fines and referred for criminal prosecution. (Doc. No. 36 ¶¶ 102, 110–35). This, in turn, has forced him to curtail his death doula services and has chilled his speech related to death care. (Id.).

Despite Defendants urging otherwise, Van Ness's allegations that the Funeral Board enforced the FDEA in a manner that encompassed his First Amendment-protected death doula

17

services constitute the typical injury alleged in this sort of case.[8] See Friends of George's, Inc. v. Mulroy, 108 F.4th 431, 435 (6th Cir. 2024) ("[t]ypically 'an injury' in [the] context [of an alleged constitutional violation] requires that the government enforce the allegedly unconstitutional law against the challenging party before it has standing to sue"). Accordingly, these allegations are sufficient to demonstrate that Van Ness has alleged actual, concrete and particularized harms to his First Amendment rights that continue into the present such that Van Ness has sufficiently alleged an injury in fact to support the equitable relief sought. Sullivan v. Benningfield, 920 F.3d 401, 408 (6th Cir. 2019). Because Van Ness has undoubtedly alleged that the Funeral Board caused these harms to his First Amendment rights, and the Court can remedy those harms through the relief requested, Van Ness has standing to pursue his First Amendment claims.

ii.    Future Injury

Even if the Court were to adopt Defendants' narrower reading of the Complaint that interprets Van Ness to bring only a pre-enforcement challenge, the result is the same. In the case of a pre-enforcement challenge, "whether the plaintiff has standing to sue often turns upon whether he can demonstrate an 'injury-in-fact' before the state has actually commenced an enforcement proceeding against him." Kiser v. Reitz, 765 F.3d 601, 607 (6th Cir. 2014). In this context, the injury "can derive from an imminent, rather than an actual, injury, but only when 'the threatened injury is real, immediate, and direct.'" Crawford v. U.S. Dep't of Treasury, 868 F.3d 438, 454 (6th Cir. 2017) (quoting Davis v. FEC, 554 U.S. 724, 734 (2008)). Thus, the Sixth Circuit has "permitted *pre*-enforcement review, but only when the plaintiff (1) alleges an intention to engage

---

[8] To the extent that Defendants argue that the Funeral Board has not taken actual enforcement action against Van Ness because it has not assessed Van Ness for penalties pursuant to a consent order or opened a contested case against him (Doc. No. 52 at 2), this is not clear given Van Ness's allegations that suggest the contrary (see Doc. No. 36 ¶¶ 20, 102). Given this, such argument is best presented at a later stage of litigation.

18

in a course of conduct arguably affected with a constitutional interest, (2) that the challenged statute proscribes, and (3) the plaintiff's intention generates a '*certainly impending*' threat of prosecution[.]" Friends of George's, 108 F.4th at 435. Defendants challenge the existence of the second and third elements of Van Ness's pre-enforcement injury, appropriately conceding that Van Ness has alleged that he intends to participate in death doula services that are affected with a constitutional interest. (Doc. No. 36 ¶¶ 37–38, 44–47; Doc. No. 40 at 11–17).

On the second element, Defendants contend that Van Ness fails to allege that he has an intention to engage in conduct proscribed by the FDEA. (Doc. No. 40 at 11–13). Specifically, Defendants argue Van Ness's allegations about the FDEA doom his claims, given he alleges that he is exempt from the FDEA, that his conduct is *not* proscribed by statute because it is not unlicensed funeral directing or embalming, and that the FDEA does not prohibit the services he seeks. (Id.; see Doc. No. 36 ¶¶ 79, 81, 97). In response, Van Ness emphasizes that he plausibly alleges that the Funeral Board has and will continue to apply the FDEA to him in a manner that was so restrictive as to encompass First Amendment activity, satisfying the second element of his as-applied FDEA challenge. (Doc. No. 50 at 18–19). While the Complaint is not a model of clarity on this point, nor is Van Ness in his briefing, the Court finds that he has satisfied the second element of his pre-enforcement challenge.

Van Ness's allegations on the inapplicability of the FDEA to his death doula work are not the nail in the coffin Defendants think they are. As the Supreme Court has stated, nothing in its decisions "requires a plaintiff who wishes to challenge the constitutionality of a law to confess that he will in fact violate that law." Driehaus, 573 U.S. at 163 (citing Babbitt v. United Farm Workers Nat. Union, 442 U.S. 289, 301 (1979) (plaintiffs had standing despite disavowing intent to violate the law at issue)). What is relevant is that, despite the muddled allegations Van Ness puts forward,

19

he sufficiently alleges that his intended future conduct is "arguably . . . proscribed by [the] statute" he wishes to challenge. Babbitt, 442 U.S. at 298; c.f. Daly v. McGuffey, 2021 WL 7543815, at *2 (6th Cir. Nov. 15, 2021) (plaintiffs failed to show they intended to engage in conduct proscribed by statute where they "d[id] not allege that they have engaged in any conduct prohibited by statute, nor d[id] they put forth facts that would allow a court to infer that they are substantially likely to do so").

The FDEA sweeps broadly, see supra, Section II.1, and covers at least some of the subject matter of Van Ness's intended speech and conduct. Van Ness has alleged an intent to speak with people about funeral and memorial arrangements, end-of-life options, medical interventions, and to attend those services at the individual's request. (Doc. No. 36 ¶¶ 61–64, 78). Provisions of the FDEA's definition of "funeral directing," including "supervising funerals" and the "making of arrangements to provide funeral services" plausibly include some of the activities Van Ness seeks to engage in when performing his death doula work, see Tenn. Code Ann. § 62-5-101(6)(A). (See Doc. No. 36-1). And Van Ness plausibly alleges that the Funeral Board already determined that some of Van Ness's protected speech and activity violated the FDEA when it concluded his death doula work constituted unlicensed activity, and recommended he be assessed for fines and prosecution. Taking these allegations as true and in Van Ness's favor, the Court has no difficulty concluding that Van Ness's intended death doula work is "arguably proscribed" by the Act such that the second element of his pre-enforcement challenge is satisfied. See Davis v. Colerain Township, 51 F.4th 164, 172 (6th Cir. 2022); Driehaus, 573 U.S. at 162.

Defendants' second standing argument is that Van Ness fails to allege the third element of a pre-enforcement challenge, an impending threat of prosecution. (Doc. No. 40 at 13–17). This argument fares no better than Defendants' first. In evaluating this element, "a plaintiff need not

20

expose itself to actual arrest or prosecution to bring a pre-enforcement challenge to a statute[.]" Christian Healthcare Centers, Inc. v. Nessel, 117 F.4th 826, 848 (6th Cir. 2024) (citation and quotations omitted). Still, "mere allegations of a 'subjective chill' on protected speech are insufficient to establish an injury-in-fact." Id. (citation and quotations omitted). Beyond merely chilled speech—which Van Ness plainly alleges here—"[v]arious [non-exhaustive] factors inform [the Court's] analysis of whether there is a credible threat of prosecution sufficient to confer standing[,]" including:

> (1) a history of past enforcement against the plaintiffs or others; (2) enforcement warning letters sent to the plaintiffs regarding their specific conduct; (3) an attribute of the challenged statute that makes enforcement easier or more likely, such as a provision allowing any member of the public to initiate an enforcement action; and (4) the defendant's refusal to disavow enforcement of the challenged statute against a particular plaintiff.

Online Merchs. Guild v. Cameron, 995 F.3d 540, 550 (6th Cir. 2021) (quoting McKay v. Federspiel, 823 F.3d 862, 869 (6th Cir. 2016)). The fourth McKay factor—whether the defendant refuses to disavow enforcement—is neutral, as the parties fail to discuss it entirely. See McKay, 823 F.3d at 869. Still, the other three factors weigh in favor of finding Van Ness has alleged a credible threat of prosecution by the Funeral Board.

On the first factor, a history of past enforcement, Van Ness repeatedly alleges the Funeral Board has enforced the FDEA against him in November 2023 for performing his death doula services. (Doc. No. 36 ¶¶ 17, 19, 25, 101–03, 105). This is the exact type of "past enforcement against the same conduct" he intends to engage in the future that "is good evidence that the threat of enforcement is not chimerical." Driehaus, 573 U.S. at 164 (citation and quotations omitted). Nevertheless, Defendants contend that Van Ness's reliance on the November 2023 proceedings is insufficient because a review of the board minutes "makes clear that [Van Ness] was investigated and prosecuted for engaging in unlicensed funeral directing" and that the minutes do not indicate

that Van Ness was investigated "for speaking, teaching, or counseling persons grieving" over a lost loved one, as Van Ness does when conducting his death doula work. (Doc. No. 40 at 14–15).

For now, the Court sets aside that Defendants' argument is, to some degree, misguided. See Christian Healthcare Centers, 117 F.4th at 849 ("to establish standing, a plaintiff need not always show that the statute has been enforced previously against the precise conduct it wishes to undertake"). Defendants are correct that the board meeting minutes indicate that the Funeral Board investigated and punished Van Ness for engaging in unlicensed funeral directing activities. (Doc. No. 36-7 at 8–17). For instance, contrary to the Complaint, the board minutes suggest that Van Ness: participated as an unlicensed assistant to a funeral director; held himself out as a funeral director; requested to embalm and prepare decedents for service; and accepted compensation for such services. (See id.). However, the minutes are not so inconsistent with Van Ness's allegations that the Funeral Board punished him for his First Amendment activity as to render his allegations implausible and "utterly discredited." See Bailey v. City of Ann Arbor, 860 F.3d 382, 387 (6th Cir. 2017) (if the "pleadings internally contradict verifiable facts central to [a plaintiff's] claims, that makes [the plaintiff's] allegations implausible"); Cagayat v. United Collection Bureau, Inc., 952 F.3d 749, 755 (6th Cir. 2020) ("For the exhibits to contradict the pleadings, the exhibits must 'utterly discredit' the allegations central" to a plaintiff's claims.).

Consistent with Van Ness's allegations, the board minutes note that Van Ness: spoke at services; directed cars at services; directed the driver of a hearse where to go; directed individuals to the back of the hearse; and passed out programs at a gravesite and at a church during a service. (Doc. No. 36-7 at 8–17; Doc. No. 36 ¶ 105). While the board minutes assess Van Ness for fines and refer him for criminal prosecution, they are silent as to the exact reasons for doing so. (Doc. No. 36-7 at 8–17). Given this, the minutes do not conflict with Van Ness's central allegation that

22

the Funeral Board's punishment pertained to Van Ness's protected death doula activities.  At this stage, the Court must follow its obligation to view the allegations in the Complaint and attached exhibits as true and in Van Ness's favor.  In doing so, the Court finds Van Ness has sufficiently alleged that the Funeral Board's November 2023 actions against him constitute a past action of enforcement for the same, or similar, type of conduct he seeks to engage in now.[9]

The second McKay factor, whether Van Ness received enforcement letters about specific conduct, also supports that there is a credible threat of prosecution.  The June 2022 Letter demonstrates as much.  While Defendants contend that letter merely served to inform Van Ness that he is not considered an "unlicensed assistant" under the FDEA, not that any of his specific actions violated the FDEA, a brief reading of the letter disposes of that argument.  (Doc. No. 40 at 15–16).  On its face, the June 2022 Letter informed Van Ness that "any future involvement in the business of funeral directing and embalming, whether under the supervision of Mr. Hessey or not, will be considered unlicensed activity."  (Doc. No. 36-5 at 1).  The June 2022 Letter further emphasized that "unlicensed" activity under the FDEA included: "speaking or engaging with current or prospective consumers"; "speaking to medical examiners"; "meeting with clients to discuss arrangements"; and "translation services for current or prospective consumers."  (Id.).  Finally, it counseled that if Van Ness did any of those actions, the Department would "administratively open a complaint against [him] regarding unlicensed activity where civil penalties or other disciplinary action may be assessed."  (Id. at 2).  As Van Ness alleges, that is exactly what happened in November 2023 when the Funeral Board punished him for providing his

---

[9] Even if the Funeral Board's November 2023 assessment for fines and referral for criminal prosecution does not constitute formal enforcement, as Defendants suggest, "they may fairly be read to threaten implicitly enforcement" of the FDEA if Van Ness persisted in practicing his death doula work.  See Kiser, 765 F.3d at 609.

services. Accordingly, viewing the June 2022 Letter and related allegations in Van Ness's favor, the Court finds the June 2022 Letter constitutes an enforcement warning letter prohibiting specified conduct that demonstrates a certainly impending threat of prosecution.[10]

The credibly of the threat Van Ness has alleged is bolstered by the third McKay factor, attributes of the challenged statute that make enforcement more or less likely. McKay, 823 F.3d at 869. Under the FDEA, the "authority to file a complaint" on alleged unlawful funeral directing or embalming activity "is not limited to a prosecutor or an agency[,]" as individuals in the funeral directing and embalming sector may raise complaints. Driehaus, 573 U.S. at 164 (finding credibility of prosecution supported where the public could file complaints about violations of the statute). "Because the universe of potential complainants is not restricted to state officials who are constrained by explicit guidelines or ethical obligations, there is a real risk of complaints from," for example, funeral directors in the field that do not agree with Van Ness's choice to continue his involvement in the death care space. Id. Indeed, the impact of public participation in the FDEA scheme came to fruition here, as multiple funeral directors complained about Van Ness's conduct, leading to his investigation by the Funeral Board. (Doc. No. 36-7 at 8–17).

In sum, the McKay factors demonstrate that Van Ness's fear of prosecution is far from "imaginary or wholly speculative." Driehaus, 573 U.S. at 160 (quoting Babbitt, 442 U.S. at 302). Although not all of the McKay factors are present, Sixth Circuit precedent is clear that "a threat of

---

[10] The Court shares Defendants' view that Van Ness is inconsistent on what he views to be the import of the June 2022 Letter. (See Doc. No. 52 at 3). However, the Court departs from Defendants' position that those inconsistences render Van Ness's reliance on the letter meaningless, given Van Ness's subjective thoughts on the letter are not central to his claims that culminate on the day of the Funeral Board's November 2023 enforcement action. See Bailey, 860 F.3d at 387. Nor is the June 2022 Letter, or Van Ness's characterization of it, central to the ultimate outcome of the Court's pre-enforcement standing analysis, as Van Ness alleges a credible threat of enforcement through the Funeral Board's November 2023 action and the public nature of the FDEA's complaint system.

prosecution can be sufficiently 'credible' for the purposes of establishing an injury in fact" regardless. Online Merchants Guild, 995 F.3d at 552. Thus, Van Ness has alleged that he has suffered an injury in fact. Because Van Ness would have no difficulty demonstrating that this injury can be traced directly to the Funeral Board's enforcement of the FDEA, and that injunctive and declaratory relief would redress those injuries, Van Ness has established standing for his pre-enforcement constitutional claims.

### 3. Defendants' Rule 12(b)(6) Argument (Statute of Limitations)

Having determined that the Court has jurisdiction over Van Ness's First Amendment claims requesting equitable relief against the Funeral Board, the Court turns to Defendants' Rule 12(b)(6) argument for dismissal: that Van Ness's claims are barred by the applicable statute of limitations. See Jones v. Bock, 549 U.S. 199, 215 (2007) ("If the allegations . . . show that relief is barred by the applicable statute of limitations, the complaint is subject to dismissal for failure to state a claim[.]").

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), "the complaint must include a 'short and plain statement of the claim showing that the pleader is entitled to relief.'" Ryan v. Blackwell, 979 F.3d 519, 524 (6th Cir. 2020) (quoting Fed. R. Civ. P. 8(a)(2)). When determining whether the Complaint meets this standard, the Court must accept all the Complaint's factual allegations as true, draw all reasonable inferences in the plaintiff's favor, and "take all of those facts and inferences and determine whether they plausibly give rise to an entitlement to relief." Doe v. Baum, 903 F.3d 575, 581 (6th Cir. 2018); see also Ashcroft, 556 U.S. at 678–79. The Court must determine only whether "the claimant is entitled to offer evidence to support the claims," not whether the plaintiff can ultimately prove the facts alleged. Swierkiewicz v. Sorema N.A., 534 U.S. 506, 511 (2002) (quoting Scheuer v. Rhodes, 416 U.S.

232, 236 (1974)). And "[w]hile the complaint does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions" or "a formulaic recitation of a cause of action's elements[.]" Blackwell, 979 F.3d at 524 (internal quotations omitted) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)). "The defendant has the burden of showing that the plaintiff has failed to state a claim for relief." Directv, Inc. v. Treesh, 487 F.3d 471, 476 (6th Cir. 2007) (citing Carver v. Bunch, 946 F.2d 451, 454–55 (6th Cir. 1991)).

The statute of limitations is "generally an inappropriate vehicle for dismiss[al]" given it is an affirmative defense. Cataldo v. U.S. Steel Corp., 676 F.3d 542, 547 (6th Cir. 2012). "But, sometimes the allegations in the complaint affirmatively show that the claim is time-barred." Id. That is what Defendants argue here, as they contend Van Ness's reliance on the June 2022 Letter makes his claims untimely. To evaluate Defendants' argument, the Court starts with determining the applicable statute of limitations for Van Ness's Section 1983 claims. Section 1983 "does not include a statute of limitations," and so it borrows "the statute of limitations from Tennessee for personal-injury torts," which are one year. Dibrell v. City of Knoxville, Tennessee, 984 F.3d 1156, 1161 (6th Cir. 2021) (citing Tenn. Code Ann. § 28-3-104(a)(1)(A)).[11] "Although the statute of limitations turns on state law, the question of when a § 1983 claim accrues to trigger the statute turns on federal law." Id. at 1161–62 (citing Wallace v. Kato, 549 U.S. 384, 388 (2007)). The standard "accrual" rule is that a claim accrues "when the plaintiff has a complete and present cause of action" that can be raised in court. Rotkiske v. Klemm, 589 U.S. 8, 13 (2019) (citation and

---

[11] As the Sixth Circuit in Dibrell opined, "Tennessee has another statute of limitations for actions 'under the federal civil rights statutes.'" Dibrell, 984 F.3d at 1161 (quoting Tenn. Code Ann. § 28-3-104(a)(1)(B)). Like the Dibrell court, this Court need not consider whether that statute or the Tennessee torts statute applies, given both set a one-year period to bring claims. Id.

quotations omitted). "The Supreme Court has contrasted this 'standard' rule with a 'discovery' rule that times the start of the limitations period to when the plaintiff discovered (or should have discovered) the cause of action." Dibrell, 984 F.3d at 1162. Oddly, Defendants merge these two rules together in arguing that the statute of limitations for Van Ness's claims accrued when he received the June 2022 Letter. (Doc. No. 40 at 16–17). Van Ness fails to provide a clear response to this argument, but at various times asserts that the Funeral Board's November 2023 actions are what led to the instant case. (Doc. No. 50 at 20). While the Court remains unimpressed by Van Ness's articulation of his own case, it finds Defendants fail to carry their burden in establishing dismissal is warranted on this affirmative defense.

Defendants' argument only works if the Court were to read the Complaint in a vacuum. True, Van Ness refers to the June 2022 Letter in the Complaint to demonstrate the Funeral Board's all-encompassing view of the FDEA and subsequent enforcement of it. (See, e.g., Doc. No. 36 ¶¶ 100, 107, 109). While the Court is skeptical that Van Ness would have had actionable Section 1983 pre-enforcement claims against the Funeral Board after receiving the June 2022 Letter, (see Doc. No. 36 ¶¶ 12, 14–15; Doc. No. 36-6 at 2), it need not decide that issue definitively. This is because under either the standard or discovery test, Van Ness has alleged he suffered constitutional injuries giving rise to Section 1983 claims on November 14, 2023, making his claims timely.[12] Rotkiske, 589 U.S. at 13; Dibrell, 984 F.3d at 1162.

Van Ness alleges that on that day, the Funeral Board recommended he be assessed for fines and for criminal prosecution for purported unlawful activity that included, to some degree, his First Amendment death doula activities that he engaged in throughout 2022 and 2023. (Doc. No. 36 ¶¶

---

[12] Contrary to Defendants' argument otherwise, this is consistent with the Van Ness's pre-enforcement theory of liability. See Kiser, 765 F.3d at 609 (past warning letters outside the statute of limitations period supported plaintiff's alleged credible threat of enforcement).

101–02, 105). He further alleges that was the first time he was informed of the Funeral Board's action against him for those activities. (Id. ¶ 17). Taking these allegations as true and in Van Ness's favor, Van Ness alleges that November 14, 2023 is the first day that he knew or should have known he had Section 1983 causes of action against the Funeral Board for that enforcement action, and is the first day that Van Ness's actions for that enforcement accrued against them. Rotkiske, 589 U.S. at 13. Because Van Ness filed the Complaint a year from the date of accrual or discovery of his Section 1983 causes of action against the Funeral Board—on November 14, 2024—the Complaint is timely under both the standard and discovery rules. (See Doc. No. 1).

Defendants have failed to show that Van Ness "can prove no set of facts in support of his claim[s]" that would entitle him to relief for the Funeral Board's constitutional violations arising on November 14, 2023. Ricco v. Potter, 377 F.3d 599, 602 (6th Cir. 2004) (quotations omitted). Accordingly, Defendants' motion must be denied on this ground.

## III. CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss (Doc. No. 39) will be granted on all claims against Skrmetti and Van Ness's requests for damages, and will be denied in all other respects. Pursuant to Rules 12 and 21, the Court will *sua sponte* dismiss Van Ness's requests for equitable relief for injuries to third parties and all claims against Lawrence.

An appropriate order will enter.

_____
WAVERLY D. CRENSHAW, JR.
UNITED STATES DISTRICT JUDGE