

**TENNESSEE BOARD OF FUNERAL DIRECTORS AND EMBALMERS**
**500 JAMES ROBERTSON PARKWAY**
**NASHVILLE, TENNESSEE 37243**
**615-741-5062**

**Minutes of Board Meeting**
**January 14, 2025**

President Chris Lea called the meeting to order at 10:00 a.m. The meeting was conducted in Conference Room 1-B, Davy Crockett Tower, Nashville, Tennessee.

## ROLL CALL:

Lisa Bohannon called the roll, and it was established that a quorum was present.

> **BOARD MEMBERS PHYSICALLY PRESENT:** Chris Lea, President; Wendell Naylor, Vice President; Don Haynes, and Tim Wheeler.
>
> **BOARD MEMBERS ABSENT:** Randy Nash, Scottie Poarch, and Pamela Stephens
>
> **STAFF MEMBERS PHYSICALLY PRESENT:** Robert Gribble, Executive Director; Troy Bryant, Associate General Counsel; and Lisa Bohannon, Regulatory Board Administrative Manager.

President Chris Lea explained the process for public comment, stating that any member of the public could provide comments related to agenda items, and that opportunity would be available near the end of the board meeting.

The following business was transacted:

## AGENDA:

Tim Wheeler made a motion to adopt the agenda as published. This was seconded by Don Haynes and adopted by voice vote.

<span style="color:red">**Exhibit A**</span>

**NOVEMBER 12, 2024 MINUTES:**

Don Haynes made a motion to adopt the minutes from the November 12, 2024, meeting as written and presented to the board. This was seconded by Tim Wheeler and adopted by voice vote.

**LEGAL REPORT:**
**TROY BRYANT, ASSOCIATE GENERAL COUNSEL**

1. **Case No.: 2024051451 – Funeral Establishment**

This case was administratively opened following a routine inspection conducted on September 11, 2024. During the course of this routine inspection, the inspector observed the following:

Respondent had employees on their website that were not properly identified as to their licensing status. Specifically, the employees were not notated to indicate whether they were a licensed funeral director or embalmer, or a non-licensed employee. The inspector stated that they had previously spoken to the manager of Respondent establishment concerning this violation on previous visits, but that the corrections had not been made. **Respondent replied stating that the violations were corrected on the same day as the inspection. Respondent stated the employee titles were erroneously listed on the website and that following notice of the violation, they contacted the company that ran their website to make the necessary corrections.**

**Recommendation**:
- Letter of Warning

A motion was made by Tim Wheeler to accept Counsel's recommendation. This was seconded by Wendell Naylor and adopted by voice vote.

2. **Case No.: 2024051601 – Funeral Establishment**

Complainant alleged that an employee of Respondent funeral establishment had stalked himself and his girlfriend while "a deceased body had been abandoned in the [Respondent's] chapel van." Complainant stated that the employee was ultimately arrested, and alleged that Respondent permitted the employee to return to work, who again stalked Complainant, returned to work, and was arrested a second time. Complainant contended that Respondent negligently

permitted the employee to return to work after allegedly abandoning a decedent in their chapel van. Further, Complainant contends that Respondent violated applicable laws and rules by failing to notify of the board of the employee's arrest.

Respondent replied stating that, to their understanding, this matter involves an alleged love triangle between the former employee, Complainant, and Complainant's girlfriend. The manager of Respondent establishment stated that they were out of the country on the dates that this incident occurred, but when they were called and made aware, they instructed staff that the employee was not allowed to come to work and that their employment would be terminated. The Respondent stated that from their understanding, the employee was incarcerated from August 11-19, 2024, and upon being released and attempting to return to work on August 19, 2024, the employee was terminated. Respondent stated that they are unaware of any obligation on behalf of Respondent establishment to notify the board of an employee's legal incident.

**Based on the above, Legal believes the rule Complainant is attempting to reference is 0660-01-.03(1)(i) which states:**

**(1) In addition to any other requirement of the Board's rules or any statute pertaining to the profession of funeral directing or embalming, the following shall be reported in writing to the Board by the licensee within ten (10) days of the effective date of the change:**

**(i)     A conviction of a misdemeanor involving fraud, dishonesty, or moral turpitude or a conviction of any felony.**

**This obligation is on behalf of the licensee, and in this case the employee, not Respondent establishment.**

**A complaint has been opened against the employee's funeral director and embalmer licenses and the matter is currently under investigation, but based on the information provided by Complainant, there is no proof that Respondent establishment has violated any applicable laws or rules.**

**Recommendation**:
- Closure

A motion was made by Don Haynes to accept Counsel's recommendation. This was seconded by Wendell Naylor and adopted by voice vote.

### 3. Case No.: 2024052541 – Funeral Establishment

Complainant, writing on behalf of the brother of the decedent, alleged that Respondent had conspired with a member of his family to exclude him from the planning of his sister's services. Complainant contended that their father, the brother of the decedent, was the next of kin, and alleged that Respondent had ignored his communications to obtain a death certificate for estate planning. Complainant also expressed grievances that the visitation was canceled, and when asked why the other family member had been permitted to make the decisions, was told that a brother did not take precedent over a child of the decedent. Complainant then alleges that the individual Respondent had identified as a child of the decedent was in fact not a child of the decedent but was "simply the mother of her grandchildren."

Respondent replied through counsel stating that the decedent died leaving a sole surviving child, and that this child made payment for the funeral services, participated in the planning of the services, and made decisions regarding the visitation. Respondent stated that they honored those choices as required to do by law. Respondent also provided an obituary that identified that the decedent had a daughter-in-law, which Complainant had referenced, but also had a daughter, who Respondent had designated as next of kin and made funeral arrangements with.

**Based on the above, Complainant contends that the decedent's brother should have been named next of kin and states that the Respondent chose to acknowledge a daughter-in-law over the decedent's brother. However, Respondent provided proof that the next of kin determinant was a daughter of the decedent, and that they followed her wishes in compliance with the law.**

**Recommendation**:
- Closure

A motion was made by Tim Wheeler to accept Counsel's recommendation. This was seconded by Wendell Naylor and adopted by voice vote.

### 4. Case No.: 2024053261 – Funeral Establishment

This case was administratively opened following a routine inspection conducted on September 17, 2024. During the course of this routine inspection, the inspector observed the following:

Respondent's establishment licensed expired on June 30, 2024. Respondent did not meet the requirements for reinstatement/renewal until September 2, 2024. During this unlicensed period, Respondent remained open for business and had written twenty-one (21) funeral contracts. **The owner and operator of Respondent replied stating that when he and his wife had renewed their funeral director licenses in June, they thought they had also renewed the establishment license as well. Respondent stated it was not until they received a call from the licensing office on September 3, 2024, that they realized the license was expired. Respondent stated it was never their intent to operate without an establishment license.**

**Recommendation**:
- $2,000.00 civil penalty. Authorize via Consent Order and formal hearing if necessary.

A motion was made by Tim Wheeler to accept Counsel's recommendation. This was seconded by Wendell Naylor and adopted by voice vote.

## 5. Case No.: 2024053951 – Funeral Establishment

This case was administratively opened following a routine inspection conducted on September 18, 2024. During the course of this routine inspection, the inspector observed the following:

An employee of Respondent establishment had allowed their funeral director and Embalmer licenses to expire on June 30, 2024, and did not meet the requirements for reinstatement until July 15, 2024. During this unlicensed period, the employee continued to be employed by Respondent, signed off on two (2) contracts, and continued to wait on families. **Respondent admitted that the employee had a lapse in their license, and that they believed he had renewed his license on time. Respondent stated the employee had problems submitting online payment, and that he was not very web savvy. Respondent stated another employee had to assist him in setting up a password and making payment. Respondent stated this unknowingly caused a lapse in his license as they believed it had been submitted on time. Respondent further stated that the employee did wait on two (2)**

families during this time, but did not embalm, and that the license is now renewed and active.

**Recommendation**:
- $500.00 civil penalty. Authorize via Consent Order and formal hearing if necessary.

A motion was made by Tim Wheeler to assess a $750.00 civil penalty. Authorize via Consent Order and formal hearing if necessary. This was seconded by Wendell Naylor and adopted by voice vote.

### 6.  Case No.:  2024053971 – Funeral Director

This case was administratively opened following a routine inspection conducted on September 18, 2024. During the course of this routine inspection, the inspector observed the following:

Respondent is the employee from complaint number 5 who permitted their funeral director and embalmer licenses to expire on June 30, 2024, and did not meet the requirements for reinstatement until July 15, 2024. During the unlicensed period, Respondent signed off on two (2) contracts and continued to wait on families. **Respondent reiterated their response from complaint number 5.**

**Recommendation**:
- Letter of Warning

A motion was made by Wendell Naylor to assess a $250.00 civil penalty. Authorize via Consent Order and formal hearing if necessary. This was seconded by Don Haynes and adopted by voice vote.

### 7.  Case No.: 20240053981 – Funeral Establishment

This case was administratively opened following a routine inspection conducted on September 23, 2024. During the course of this routine inspection, the inspector observed the following:

The manager of Respondent establishment had allowed their funeral director and their embalmer licenses to expire on June 30, 2024, and did not meet the requirements to reinstate the licenses until July 22, 2024. During the unlicensed period, Respondent had written two (2) funeral contracts without a valid

manager. **Respondent stated that the lapse in licensure was unintentional and that the licenses were ultimately renewed once they were aware they had expired.**

**Recommendation**:
- $250.00 civil penalty. Authorize via Consent Order and formal hearing if necessary.

A motion was made by Tim Wheeler to assess a $500.00 civil penalty. Authorize via Consent Order and formal hearing if necessary. This was seconded by Wendell Naylor and adopted by voice vote.

## 8. Case No.: 20240053991 – Funeral Director

This case was administratively opened following a routine inspection conducted on September 23, 2024. During the course of this routine inspection, the inspector observed the following:

a. Respondent is the manager from complaint number 7 who had allowed their funeral director and embalmers licenses to expire on June 30, 2024, and did not meet the requirements to reinstate the license until July 22, 2024. During the unlicensed period, Respondent had written two (2) funeral contracts without a valid license. **Respondent reiterated their reply from the preceding complaint stating that the lapse was unintentional, and they were renewed as soon as he was aware of the expirations.**

**Recommendation:**
- Letter of Warning

A motion was made by Tim Wheeler to assess a $500.00 civil penalty. Authorize via Consent Order and formal hearing if necessary. This was seconded by Wendell Naylor and adopted by voice vote.

## 9. Case No.: 2024057471 – Funeral Establishment

Complainant stated that on October 22, 2021, she, her husband, and mother-in-law went to Respondent funeral home to set up a pre-need contract for cremation services. Complainant stated that her mother set up transfer of the insurance to pay for part of the costs. Complainant stated at the time they received a Statement of Funeral Goods and Services Selected that was not itemized (except to indicate a direct cremation for $2,295.00, alternative container for

$100.00, death certificates for $30.00, and sales tax of $9.70), with costs totaling $2,434.70. Complainant stated the insurance was assigned at that time, and stated they were aware the insurance would not cover everything, and they would need to accrue another $400 or so dollars to cover the difference. Complainant alleged that when they tried to pre-pay the difference, Respondent did not allow them to as they stated they would need to rewrite the contract. Complainant stated their mother died on September 6, 2024, and that when they arrived at Respondent establishment, they were given another contract with a total cost of $2,837.19. Complainant stated that Respondent informed them that the cost of cremation had gone up.

Respondent replied stating that according to their paperwork from the October 22, 2021, meeting, the decedent had wanted to irrevocably assign the amount of the funeral expenses to Respondent establishment. Respondent stated that the written goods and services were for the price of the direct cremation and two death certificates, and that they had made an unfunded preneed arrangement, in which prices were not guaranteed. Respondent explains that when a family irrevocably assigns the proceeds to the funeral home, this does not guarantee pricing or lock in a specific price, and that this is only done when a life insurance policy is written by their funeral home and placed in an insurance policy or trust. Respondent stated that Complainant was not allowed to pre-pay the difference because the insurance company they write their pre-need funerals with only permits them to write a policy for $500.00 increments, and that the amount due was less than $500.00, and that the denial had nothing to do with needing to re-write a contract, because a contract had never been written. Respondent also stated that they cannot legally accept a pre-payment for a funeral without applying it to a funeral, and that in this case, a death had not yet occurred. Finally, Respondent stated that when the family came in in September of 2024, they provided a purchase contract reflecting the services quoted in October 2021, but with 2024 pricing.

**Respondent provided a copy of the Statement of Funeral Goods and Services dated September 6, 2024, which is itemized to reflect the cost of the direct cremation, death certificates, and an alternative container. From Legal's review, it appears that Complainant's mother and Complainant were given a Statement of Funeral Goods and Services when the insurance funds were assigned to Respondent establishment in 2021. Complainant operated with the belief that the prices from 2021 had been locked in since the insurance funds had been assigned to Respondent establishment. The**

increase in price that Complainant experienced came from the increase in pricing from 2021 to 2024.

However, the 2021 Statement of Funeral Goods and Services Selected was not a binding contract because it was not signed by either party. Included in the document was an itemized price for direct cremation ($2,295.00), an alternative container ($100.00), death certificates ($30.00), and sales tax ($9.70). Although Respondent stated, "the copy of the Statement of Funeral Good and Services provided is an estimate, not a guaranteed Statement of Goods and Services. . . we made an unfunded preneed arrangement, in which the prices are not guaranteed." Respondent put the $2,295.00 number representing the direct cremation, and put the $2,395.00 number representing direct cremation and the alternative container in boxes marked on the contract as "Total Services (GUARANTEED)" and "Total Cost of Selected Items (GUARANTEED) respectively. Likewise, Respondent provided the information of their funeral home, their address, and phone number in the signature box of the contract forgoing only their signature marking official agreement and acceptance. Complainant's signature box did not have any information provided.

Based on Legal's review, although this document may have been used to show the family what the costs would look like generally speaking and was an "estimate, not a guaranteed Statement of Goods and Services" and the agreement may have been "an unfunded preneed arrangement, in which the prices are not guaranteed." Based on the document and the "(GUARANTEED)" notation next to some of the prices, it would be reasonable, for the reasonable person to leave that arrangement conference believing that the prices they had been given were locked in. Arguably, this may be considered a violation of professional conduct for leading Complainant and their family to believe, whether advertent or inadvertent, that the $2,434.70 price they had been quoted in October 2021 was a guaranteed price that had been locked in upon the death of the decedent in September 2024.

Recommendation:
- Letter of Warning focused specifically upon Respondent's obligation to educate the consumer about guaranteed and non-guaranteed pricing, and likewise focused on the risks of using official Statement of Funeral Goods and Services documentation to make estimations regarding pricing and future pricing.

A motion was made by Wendell Naylor to issue a Letter of Instruction. This was seconded by Don Haynes and adopted by voice vote.

### 10. Case No.: 2024057081 – Funeral Establishment

This case was administratively opened following a routine inspection conducted on October 16, 2024. During the course of this routine inspection, the inspector observed the following:

An employee of Respondent establishment had allowed their funeral director license to expire on July 31, 2024, and did not meet the requirements for reinstatement until September 24, 2024. During the unlicensed period, the employee made funeral arrangements for one (1) decedent. **Respondent stated that during the employee's time with them, the employee had a "strong commitment to professionalism and compliance" and that they were not informed nor aware of the employee's lapse in licensure. Respondent stated that this was the first instance of any licensing issues since the employee had begun working there, and that they had no reason to believe they would fail to renew their license as it had not been an issue in the past. Respondent stated that they will ensure that their staff operates within all regulatory guidelines in the future.**

**Recommendation:**
- $250.00 civil penalty. Authorize via Consent Order and formal hearing if necessary.

A motion was made by Tim Wheeler to assess a $500.00 civil penalty. Authorize via Consent Order and formal hearing if necessary. This was seconded by Wendell Naylor and adopted by voice vote.

### 11. Case No.: 2024057091 – Funeral Director

This case was administratively opened following a routine inspection conducted on October 16, 2024. During the course of this routine inspection, the inspector observed the following:

Respondent is the employee from the preceding complaint who had allowed their funeral director license to expire on July 31, 2024, and did not meet the requirements for reinstatement until September 24, 2024. During the unlicensed period, the employee made funeral arrangements for one (1) decedent.

**Respondent replied stating that the lapse in their license was "due to grave oversight on [their] part, and [they] take full responsibility for not seeking the necessary clarification or advising [the owners] about the status of [their] license." Respondent stated since becoming a licensed funeral director in 2010, they had not had licensing violations but that they have been undergoing a large amount of stress as they have become the full-time caregiver to their mother who has Alzheimer's. Respondent stated once they became aware of the renewal requirements, they worked quickly to obtain the continuing education credits, which were completed by August 15, 2024. Respondent stated that unfortunately, even with expedited renewal, took several days for the submission to be processed. Respondent stated that they were under the impression that since they were working to actively submit the remaining CE hours that their license status was under a grace period and that they did not realize they needed to pause working until the renewal was completely processed. Respondent apologized for the misunderstanding and stated that they will be more vigilant about meeting all requirements moving forward.**

**Recommendation:**
- Letter of Warning

A motion was made by Tim Wheeler to assess a $250.00 civil penalty. Authorize via Consent Order and formal hearing if necessary. This was seconded by Don Haynes and adopted by voice vote.

### 12.   Case No.:  20240057941 – Funeral Establishment

Complainant stated that their father passed away on September 26, 2024, and that Respondent establishment made funeral arrangements with her grandmother for the decedent, without their or their brother's consent. In addition to making arrangements with the non-next of kin, Complainant alleged that information on the provided death certificate is incorrect and that Respondent will not make the changes because it is against the grandmother's wishes.

An office assistant with Respondent replied stating that first, they did not refuse to make changes to the death certificate, but instead advised Complainant as to the process and procedures for amending a death certificate which would include an affidavit to make the desired changes. Next, the owner of Respondent establishment stated they were present during the arrangement meeting where the grandmother included both grandchildren (Complainant and their brother) in the arrangement process. Respondent stated during this time, all pertinent

information regarding the decedent was discussed, including the details for the death certificate. Respondent stated at no time did any family member raise any concerns or objections. Respondent stated later when Complainant raised concerns about information contained in the death certificate, they contacted the grandmother to verify the information. Respondent stated that the grandmother confirmed that no changes were necessary because she believed the provided information was correct.

Respondent provided a copy of the authorization for cremation and disposition of human remains where all three individuals (grandmother, son, daughter) signed providing approval for cremation.

Respondent, in their formal response, says the following:

"[Grandmother], the mother of the deceased and our primary informant, assumed responsibility for providing information for the death certificates and making arrangements. Both [Complainant] and [brother] attended the arrangement meeting with [grandmother] who included them as part of her decisions and invited their involvement. . . It is important to note that Complainant arrived on her own to this meeting and actively participated as did her brother. We were led to believe that [grandmother] was the primary next of kin at the time of the initial removal and arrangements."

The grandmother also provided a statement which provided in part, "As [decedent's] mother, I was the primary responsible party for making his final arrangements, which included providing the information necessary for his death certificate. During the arrangement meeting, I ensured that the [decedent's] children were included so they could have a say in their father's arrangements. I included them as a way to honor their roles in the process, and at no time were they prevented from participating in the arrangements."

**Based on the above, it appears that although the Complainant and her brother were permitted to engage in the arrangement process (to what extent is uncertain), this was done as a decision of the grandmother. Respondent's formal reply acknowledges that the grandmother was noted as the legal next of kin when stating, "we were led to believe that [grandmother] was the primary next of kin at the time of the initial removal and arrangements." However, it does not appear that upon learning that the grandmother was not the legal next of kin, did next of kin determination shift to the decedent's children as required by law. It appears based on the**

information provided, that legal authority remained with grandmother despite the emergence of two children that would take legal precedence. Luckily, it appears all parties (grandmother, son, and daughter) agreed on authorization for cremation as each party signed the document, and Complainant did not object to the cremation of the decedent. However, it appears that after designating the grandmother as the legal next of kin, and realizing that the decedent had two children, Respondent failed to re-assign next of kin determination to the children to make the arrangements and provide information on the death certificate in violation of applicable law.

Recommendation:
- $1,000.00 civil penalty. Authorize via Consent Order and formal hearing if necessary.

A motion was made by Tim Wheeler to accept Counsel's recommendation. This was seconded by Wendell Naylor and adopted by voice vote.

## 13. Case No.: 2024065741 – Funeral Director

Complainant, a family member of decedent, alleged that the establishment that Respondent works for had not been forthcoming regarding a pre-need policy involving the decedent. Complainant does not specifically specify the alleged violation of Respondent funeral director.

**Respondent replied through counsel explaining the pre-need processes for the establishment and why the information provided to Complainant was accurate and not intended to be misleading. As the Complainant did not specifically allege what rules and or laws Respondent had violated, counsel did not directly address Respondent's alleged involvement.**

**Based on Legal's review, this complaint is entirely a pre-need complaint. There is no specific allegation of violation of funeral laws or rules against Respondent funeral director. Complainant opened a separate pre-need complaint against Respondent establishment and the Commissioner's designee will make a determination based on the allegations contained in that complaint for the pre-need seller registration of the establishment.**

Recommendation:
- CLOSURE WITH A CUSTOM CLOSURE LETTER TO COMPLAINANT EXPLAINING THE DISTINCTION BETWEEN THE FUNERAL AND PRE-NEED COMPLAINT.

A motion was made by Tim Wheeler to accept Counsel's recommendation. This was seconded by Wendell Naylor and adopted by voice vote.

## RE-PRESENT

14. Case No.: 2021037061 – Previously licensed as a Funeral Director
15. Case No.: 2021037081 – Previously licensed as a Funeral Director
16. Case No.: 2021026541 – Previously licensed as a Funeral Director
17. Case No.: 2021015561 – Previously licensed as a Funeral Director
18. Case No.: 2021015581 – Previously licensed as a Funeral Director
19. Case No.: 2021020121 – Previously licensed as a Funeral Director
20. Case No.: 2022044371 – Previously licensed as a Funeral Director
21. Case No.: 2022021381 – Previously licensed as a Funeral Director
22. Case No.: 2023029901 – Previously licensed as a Funeral Director
23. Case No.: 2023029921 – Preciously licensed as a Funeral Director

**THE ABOVE CITED CASES ARE ALL OPEN COMPLAINTS INVOLVING A FORMER LICENSED FUNERAL DIRECTOR. EACH COMPLAINT ALLEGES CONTINUED UNLICENSED ACTIVITY ON BEHALF OF THE RESPONDENT. DUE TO THE EXTENT OF THE RECURRING NATURE OF THE UNLICENSED ACTIVITY, LEGAL ADVISES THAT THE MOST EFFECTIVE AND EFFICIENT MANNER TO ADDRESS THESE CONCERNS IS BY REFERRAL TO THE DISTRICT ATTORNEY'S OFFICE IN EACH APPROPRIATE JURISDICTION. EACH MATTER HAS BEEN INVESTIGATED, WITH EVIDENCE AND SWORN STATEMENTS COLLECTED. THESE MATERIALS WILL BE PROVIDED TO EACH DISTRICT ATTORNEY ALONG WITH THE REFERRAL.**

**Recommendation:**
- **CLOSURE WITH EACH COMPLAINT REFERRED TO THE DISTRICT ATTORNEY IN THE APPROPRIATE JURISDICTION.**

A motion was made by Tim Wheeler to accept Counsel's recommendation. This was seconded by Wendell Naylor and adopted by voice vote.

## EXECUTIVE DIRECTOR'S REPORT:
## ROBERT GRIBBLE, EXECUTIVE DIRECTOR

## FINANCIAL DATA FOR FY23-24:

**Financial Recap**
**Fiscal Year July 1, 2023 – June 30, 2024**

Financial data was made available to the Board's Executive Director by the Assistant Commissioner's Office for Regulatory Boards of the Tennessee Department of Commerce and Insurance on October 8, 2024 for use in the compilation of this report.

| | |
|---|---|
| Beginning Balance – July 1, 2023 | $1,125,381.00 |
| Net Revenue (Earnings) for July 1, 2023 – June 30, 2024 | $   736,166.00 |
| Total Funds Available | **$1,861,547.00** |
| Total Expenditures for July 1, 2023 – June 30, 2024 | $ - 763,113.00 |
| **Reserve Balance – July 1, 2024** | **$1,098,434.00** |
| CORE Expense for FY23-24 | $ -          0.00 |
| **Reserve Balance – July 1, 2024 (After CORE Expense)** | **$1,098,434.00** |

## LEGISLATIVE UPDATE:

Neither the Tennessee State Funeral Directors & Morticians Association nor the Tennessee Funeral Directors Association has officially contacted our office regarding their intent to pursue legislation that would affect the Board of Funeral Directors & Embalmers during the upcoming legislative session.

We invite both associations and any other interested parties to meet with our staff and legal counsel before such legislation is introduced.

## LICENSEE REPORT:

**REPORT OF LICENSES ADMINISTRATIVELY APPROVED BY EXECUTIVE DIRECTOR PURSUANT TO BOARD AUTHORITY FOR THE PERIOD OF NOVEMBER 6, 2024 – JANUARY 10, 2025**

| **Establishment(s)** | **Type of Action(s)/Change(s)** |
|---|---|
| Blount Funeral and Cremation<br>Maryville, TN | Initial |
| Companion Funeral & Cremation Service<br>Oak Ridge, TN | Initial |
| Southern Heritage Mortuary and Cremation | Initial |

Services
Nashville, TN

| | |
|---|---|
| Bowlin Funeral Home, Inc.<br>Dresden, TN | Change of Ownership |
| Gowen-Smith Chapel<br>Shelbyville, TN | Change of Ownership |
| Heritage Funeral Home & Cremation Services<br>Columbia, TN | Change of Ownership |
| Madison Funeral Home<br>Madison, TN | Change of Ownership |
| Manchester Funeral Home<br>Manchester, TN | Change of Location |
| CremateSimply<br>Old Hickory, TN | Change of Name |
| Dotson Funeral Home & Cremation<br>Maryville, TN | Change of Name |

| **Individual(s)** | **Type of License(s)** |
|---|---|
| Whitley Raell Beverly<br>Jackson, TN | Funeral Director and Embalmer |
| Yashan Eugene Long<br>Cleveland, TN | Funeral Director and Embalmer |
| Callia Lee Riden<br>Nashville, TN | Funeral Director and Embalmer |
| Nicole Alexis Paige Scott<br>Morristown, TN | Funeral Director and Embalmer |
| David Larry Smith<br>Soddy Daisy, TN | Funeral Director and Embalmer |
| Adriel Sierra Patrick<br>Jefferson City, TN | Funeral Director and Embalmer |
| Ron Charles Swanson<br>Ooltewah, TN | Funeral Director and Embalmer<br>Reciprocity – Washington State |

**Tennessee Board of Funeral Directors and Embalmers**

January 14, 2025, Minutes · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · Page 17 of 20

| | |
|---|---|
| Thomas Kirk Bower, II<br>Mountain City, TN | Funeral Director |
| Jason Matthew Patterson<br>Church Hill, TN | Funeral Director |
| Antoinette L. Robinson<br>Ripley, TN | Funeral Director |
| Travis Lee Taylor<br>Lebanon, TN | Funeral Director |
| Angel Sheree Wilson<br>Fayetteville, TN | Funeral Director |
| Jerry Wayne Taylor<br>Knoxville, TN | Funeral Director<br>Reapplication |
| Holle Lynn Ford<br>Memphis, TN | Embalmer |

## CLOSED ESTABLISHMENT REPORT:

Four (4) establishments have reported closing since the last board meeting:

- Eastland Funeral Home & Cremation Service, 904 Gallatin Avenue, Nashville, TN;
- Gateway Funeral Home & Cremation Center, 335 Franklin Street, Clarksville, TN;
- Lumen Cremation, 355 East Main Street, Hendersonville, TN; and
- Spencer Funeral Home, 16000 State Highway 111, Spencer, TN.

## DISCIPLINARY ACTION REPORT:

**These are Consent Orders that have been administratively accepted / approved by the Executive Director pursuant to Board authority and as reported on the October 2024 and November 2024 Regulatory Boards Disciplinary Action Reports**

Respondent: Gerald DuBose Bowen, LaVergne, TN
Violation: Operated as a manager of a funeral establishment despite having an expired funeral director license
Action: $250 Civil Penalty

Respondent: Sara B. Dean, Springfield, TN

| | |
|---|---|
| Violation: | Engaged in funeral directing and embalming without valid funeral director and embalmer licenses |
| Action: | $250 Civil Penalty |
| | |
| Respondent: | Gowen-Smith Chapel, Shelbyville, TN |
| Violation: | Engaged in deceptive acts or practices as defined in the Funeral Rule, reason for embalming was missing on nine contracts, and the license for the crematory used was not available for inspection |
| Action: | $500 Civil Penalty |
| | |
| Respondent: | Hibbett & Hailey Funeral Home, Nashville, TN |
| Violation: | Funeral establishment employed an individual as manager of the establishment with an expired funeral director license who had written three funeral contracts |
| Action: | $750 Civil Penalty |
| | |
| Respondent: | Jones & Son Funeral Home, Oneida, TN |
| Violation: | Did not have a licensed funeral director operating as manager of the establishment |
| Action: | $250 Civil Penalty |
| | |
| Respondent: | Richard A. Lewis, Sr., Nashville, TN |
| Violation: | Unprofessional conduct (sold a casket and vault, casket would not fit into the vault at the graveside, and parts of the casket were removed for it to fit inside the vault) |
| Action: | $750 Civil Penalty |
| | |
| Respondent: | Neal-Tarpley-Parchman Crematory, Clarksville, TN |
| Violation: | Permitted an individual to engage in funeral directing with an expired funeral director license |
| Action: | $250 Civil Penalty |
| | |
| Respondent: | Neal-Tarpley-Parchman Funeral Home, Clarksville, TN |
| Violation: | Permitted an individual to engage in funeral directing with an expired funeral director license |
| Action: | $250 Civil Penalty |
| | |
| Respondent: | Poole-Serenity Funeral Home & Cremation Services, Cleveland, TN |
| Violation: | False or misleading advertising and failed to report a change of the establishment manager to the Board within the time required by law |
| Action: | $500 Civil Penalty |
| | |
| Respondent: | Simple Cremation and Funeral Services, Smyrna, TN |

| | |
|---|---|
| Violation: | Funeral establishment had written 17 funeral contracts without a licensed funeral director operating as manager of the establishment |
| Action: | $500 Civil Penalty |

| | |
|---|---|
| Respondent: | Snow Funeral Home, Memphis, TN |
| Violation: | Failed to take decedent into the establishment's care until 11 days after release from medical examiner's office and caused a delay regarding cremation of decedent |
| Action: | $1,000 Civil Penalty |

| | |
|---|---|
| Respondent: | Woodlawn-Roesch-Patton Funeral Home & Memorial Park, Nashville, TN |
| Violation: | Unprofessional conduct (unsatisfactory embalming results – did not begin embalming a decedent until approximately 41 hours after the authorization to embalm had been received) |
| Action: | $500 Civil Penalty |

**OPEN COMPLAINT REPORT:**

As of January 10, 2025, there were a total of 64 open complaints, 32 against funeral directors and/or embalmers and 32 against funeral establishments.

A motion was made by Don Haynes to accept the Executive Director's Report. This was seconded by Tim Wheeler and adopted by voice vote.

**ESTABLISHMENT APPLICATION(S):**

HORIZON CREMATIONS CHATTANOOGA, LLC
ATTN:  YASHAN EUGENE LONG, MGR.
1509 SOUTH SMITH STREET, SUITE A
EAST RIDGE, TN  37412-3800

**Initial Establishment**
**Ownership:** Limited Liability Company
**Owner(s):**  Horizon Cremations Chattanooga, LLC, 1482 Kincaid Road Southeast, Cleveland, TN  37323-7726

Based on the application record, Wendell Naylor moved that this establishment application be approved for licensure by the Board. Don Haynes seconded this motion, which was adopted by voice vote.

**NEW BUSINESS:**

**BOARD QUESTION:**

Associate General Counsel Troy Bryant responded to the board's inquiry about dates for securing their future lodging reservations and answered that the formal hearing where testimony was previously heard and continued to a later date is expected to be heard again on March 11, 12, and 13, 2025.

---

**PUBLIC COMMENTS:**

President Chris Lea inquired whether any members of the public wished to provide comments regarding the agenda items. No public comments were offered at that time.

---

**ADJOURN:**

A motion was made by Tim Wheeler to adjourn. This was seconded by Wendell Naylor and adopted by voice vote.

The meeting was adjourned by President Chris Lea at 11:36 a.m.

Respectfully submitted,

*Robert B. Gribble*

Robert B. Gribble, CPM, CFSP
Executive Director