# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF TENNESSEE
### NASHVILLE DIVISION

| | | |
|---|---|---|
| REID VAN NESS, | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| v. | ) | No. 3:24-cv-01353 |
| | ) | |
| TENNESSEE BOARD OF FUNERAL | ) | |
| DIRECTORS AND EMBALMERS, et | ) | |
| al., | ) | |
| | ) | |
| **Defendants.** | ) | |

## MEMORANDUM OPINION

The threshold standing issue has haunted this case at every turn. At the motion to dismiss stage, the Court accepted the Amended Complaint's allegations as true and found that Van Ness alleged standing. (Doc. No. 62 at 15–25). On Van Ness's motion for preliminary injunction, however, the Court found that the evidence contradicted his allegations and concluded that Van Ness was unlikely to succeed in establishing standing. (Doc. No. 87 at 11–20). The standing issue returns once again. This time it is the nail in the coffin. The injury that Van Ness claims to experience is not cognizable. Any act of forbearance he has taken—or will take—is what the law requires of him: that he refrain from crossing the line into unlicensed funeral directing. The Tennessee Board of Funeral Directors and Embalmers (together with all other named Defendants, "Board"), moreover, has never enforced the law against Van Ness for crossing that line. For those reasons, the Court will grant the Board's motion for summary judgment (Doc. No. 109).

## I. FACTUAL BACKGROUND

### A. Procedural Background

The Court must first address Van Ness's untimely opposition. A brief recap of the timing of the events is in order. In March 2025, the Court set a jury trial on June 30, 2026, with dispositive

motions due February 16, 2026, and pretrial filings due June 15, 2026. (Doc. No. 53 at 4; Doc. No. 54 at 1–2). The Board moved for summary judgment on February 16. (Doc. No. 109). Van Ness's response was due twenty-eight days later on March 16. (Doc. No. 53 at 4).

On March 9, counsel sought a "short" sixty-day extension, citing Van Ness's "lack of financial resources" and counsel's "heavy trial schedule." (Doc. No. 112 at 1–2). Counsel also mistakenly asserted that this case was "not yet set for trial" even though the trial date was set nearly a year prior. (Id. at 2). The Court denied the request because the extension would push the motion past the date by which it must be ripe under Local Rule 16.01(h)(i). (Doc. No. 114). Van Ness's March 16 opposition deadline therefore remained in effect.

Instead of filing an opposition by that deadline, counsel decided to do nothing. Having received no opposition, the Board moved to treat the motion as unopposed and its statement of facts as undisputed on March 26. (Doc. No. 115). Van Ness's counsel filed a renewed extension request the same day. He complained that he "has practiced in state and federal court and has never had a timely request for an extension of time to file a response denied. Especially in a case which is not yet set for trial." (Doc. No. 116 at 1–2). The Court again denied the request. For the second time, the Court clarified what should have been apparent—that this case was, in fact, set for trial on June 30. (Doc. No. 118 at 1).

Despite the Court's denial of those extension requests, counsel ignored the Court, essentially granting himself the extension that he always wanted. On April 19—two days past the date corresponding to counsel's originally requested sixty-day extension—counsel filed an opposition, response statement of facts, and motion to accept the late filings as timely. (Doc. Nos. 120, 121, 122). The Board opposed the retroactive extension request. (Doc. No. 123).

Van Ness's counsel has not shown good cause to excuse his neglect. Fed. R. Civ. P. 6(b)(1)(B). Counsel disregarded a deadline and ignored two orders explaining why the deadline stands. All attorneys learn—at the earliest stages of their career—that deadlines matter. The Federal Rules of Civil Procedure set deadlines that must be adhered to. As do the Local Rules. And as does the Court. It should go without saying that counsel's self-created busy litigation schedule is an insufficient excuse to blow Court-mandated deadlines. Father & Sons Lumber & Bldg. Supplies, Inc. v. NLRB, 931 F.2d 1093, 1096 (6th Cir. 1991) (finding that "heavy attorney workloads . . . do not constitute 'good cause'" to excuse "a party's failure to file a timely response"). That is especially so here, where the dispositive motion deadline and trial date were set nearly a year before Van Ness's response was due. The deadline was not new or surprising. A party who chooses to sue must be prepared to litigate within the deadlines that bind every other party. That counsel "has never had a timely request for an extension of time to file a response denied" misses the point. It is not this Court's role to manage counsel's caseload so that counsel has time to defend the claims his client chose to bring.

This sideshow dispute has consumed five filings, two orders, and the Court's time, all to address a deadline counsel had no authority to unilaterally extend. The Board's motion is also before the Court without the benefit of a reply brief. Reopening briefing now would push it into the pretrial-filing window and derail the schedule the Court set nearly fifteen months ago.

For those reasons, the motion to deem the motion for summary judgment as unopposed and the statement of material facts as undisputed (Doc. No. 115) will be granted, and the motion to accept the late filings as timely (Doc. No. 122) will be denied. The Court has nevertheless considered the untimely opposition and response statement of facts. Even with the benefit of counsel's late submissions, they do not change the result. Van Ness lacks standing.

B.    Undisputed Facts

In May 2025, the Court held an evidentiary hearing on Van Ness's motion for a preliminary injunction. (Doc. No. 78 ("Inj. Hr'g Tr.")). During that hearing the Court received testimony from Van Ness, the Board's executive director Robert Gribble, and Aphton Wilson, whose grandfather's funeral Van Ness performed in February 2025. The Court also received exhibits. As a result of that proceeding, the Court made factual findings (Doc. No. 87 at 1–8). To be clear, the Court no longer acts as a factfinder at this posture. The Court instead draws facts from the hearing record only to the extent the Court finds them to be genuinely undisputed at summary judgment, and it draws all inferences in Van Ness's favor.[1]

---

[1] Local Rule 56.01(e) requires the nonmovant to respond to each asserted fact with an admission or denial. If a fact is disputed, the response must cite admissible evidence supporting the dispute, "limited to evidence specific to that particular fact." Van Ness's responses frequently exceed the scope of the Local Rule. Many purported denials do not actually dispute the fact asserted or the evidence cited by Defendants, but instead supply additional context or argument. (See, e.g., Doc. No. 120 ("Response SUMF") ¶ 16 (denying that the Board did not approve the June 2022 letter by discussing the legal basis for the letter rather than addressing approval)). Several purported admissions likewise fail to respond to the fact asserted, instead admitting a different proposition altogether. (See, e.g., id. ¶ 14 (purporting to admit that the June 2022 letter "was sent on behalf of the Funeral Board" where the Board's statement only asserted that Bryant sent the letter)). The most striking example appears in paragraph 33. There, Van Ness denies that the subject of the November 2023 meeting was Van Ness's funeral directing activities. (Id. ¶ 33). He then purports to "admit" that "Bryant gave untrue, incomplete and misleading interpretations about Mr. Van Ness' actions," "failed to advise the Funeral Board that Mr. Van Ness was exempt from the regulatory scheme," and "admitted he made no investigation into Mr. Van Ness' relationship with the families to determine if he was exempt." (Id.). None of those "admissions" address whether the subject of the meeting was Van Ness's funeral directing activities.

The purpose of a Rule 56.01 response is to identify genuine disputes as to the movant's asserted facts, not to supplement the record with additional factual assertions that do not controvert those facts. To the extent a response does not genuinely controvert the asserted fact with admissible evidence, the Court treats the fact as undisputed. When a response cites evidence supporting a proposition different from the one asserted, the Court accepts only those facts that the cited evidence establishes.

### 1. Factual Background

Van Ness held funeral director and embalmer licenses in Tennessee for over twenty years. (Doc. No. 110 ("SUMF") ¶ 2; Inj. Hr'g Tr. 17:8–18:22). On March 6, 2020, he surrendered both. (SUMF ¶ 3; Inj. Hr'g Tr. 18:20–22). Van Ness claimed he was exempt from the Tennessee Funeral Directors and Embalmers Act ("FDEA") if he did not charge for his services, but he never confirmed that view with the Board. (Inj. Hr'g Tr. 21:10–20, 180:16–25, 235:23–236:11). Van Ness now describes himself as a "death doula." (Inj. Hr'g Tr. 35:6–36:11). Death doulas work with individuals who are near death, as well as their families, to provide emotional and spiritual support. (Id. 35:6–36:11, 237:12–23). The Board does not have jurisdiction to regulate death doula activity. (Response SUMF ¶ 10; Inj. Hr'g Tr. 231:20–22).

### 2. The June 21, 2022 Letter

On June 21, 2022, Troy Bryant, associate general counsel for the Tennessee Department of Commerce and Insurance ("TDCI"), sent Van Ness a letter advising him of an amendment to the FDEA's definition of "unlicensed assistant." The letter also listed activities the TDCI considered unlicensed if Van Ness performed them.[2] (SUMF ¶ 14; Doc. No. 109-7). The Board did not approve the letter. (SUMF ¶ 16; Inj. Hr'g Tr. 250:3–5). The letter did not represent the Board's view of Van Ness's activities.[3] (SUMF ¶ 18; Inj. Hr'g Tr. 250:23–25).

---

[2] The full terms of the June 2022 letter are set forth in the Court's prior opinions and are well known to the parties. (Doc. No. 62 at 3–4; Doc. No. 87 at 3–4).

[3] Van Ness denies that the June 2022 letter did not represent the Board's view of Van Ness's activities, citing to Gribble's testimony that the letter was "predicated upon" the new statutory chapter. (Response SUMF ¶ 18). That testimony does not address whether the letter represented the Board's view. Van Ness's position is further contradicted by Gribble's direct testimony that the letter "doesn't represent what the board thinks." (Inj. Hr'g Tr. 250:23–25). Van Ness also points to an August 9, 2022 letter from Bryant to Van Ness's counsel that refers back to the June 2022 letter, and asserts that the Board's disavowal came only "after being sued in Federal Court." (Response SUMF ¶ 18; Doc. No. 109-9). That letter reaffirms Bryant's interpretation that "[t]he activities listed in the initial June 21 letter . . . are unlicensed activity" and warns that Van Ness

Van Ness either skimmed the letter or did not read it, throwing it in a stack of correspondence he had "no desire to deal with."  (Inj. Hr'g Tr. 46:5–9).  He did not think the letter applied to him, and he did not change his conduct because of it.  (SUMF ¶ 22; Inj. Hr'g Tr. 172:4–16 (Van Ness testifying that he received the letter, did not think it applied to him, threw it in the corner, and did not change his conduct)).

### 3.      Van Ness's 2022 and 2023 Activity

Throughout 2022 and 2023, Van Ness continued to operate in the funeral directing space. He performed most of his conduct with, or on behalf of, Todd County Funeral Home ("TCFH"). (SUMF ¶¶ 24, 25).  He contacted cemeteries and grave diggers on behalf of decedents' families. (Inj. Hr'g Tr. 66:1–8).  He met with families to make funeral arrangements and discussed funeral options with them.  (Id. 69:20–70:1, 77:1–14, 79:11–20).  He prepared statements of goods and services using funeral home price lists.  (Id. 79:21–80:18, 149:13–151:7).  He accepted family payments, including checks made out to funeral homes, and delivered them.  (Id. 80:9–25, 152:1–19).  He rode in TCFH's vehicle to retrieve decedents' bodies and helped move the bodies into and out of the vehicle.  (Id. 81:1–82:1).  He arranged flowers, set up caskets, participated in visitation, directed traffic, directed pallbearers, moved caskets to the grave site, distributed memorial programs, spoke at services and graveside committals, and provided translation services for Spanish-speaking families.  (Id. 107:24–113:25, 116:11–119:24).  Van Ness admitted that he did "everything that a funeral director, if hired, probably would have done" except charge.  (Id. 114:20–25).

---

"will be held accountable" if he engages in them.  (Doc. No. 109-9).  In the same letter, however, Bryant expressly disclaimed authority to "provide any interpretation that could be construed as an informal opinion of the Board regarding hypothetical activity conducted by Mr. Van Ness."  (Id.). In short, the evidence Van Ness cites does not contradict the Board's position that it did not approve the June 2022 letter, and that fact therefore remains undisputed.

### 4. The November 14, 2023 Board Meeting

The Board received complaints from licensed funeral directors about Van Ness's conduct. (Id. 218:9–16). On November 14, 2023, the Board considered four complaints filed against Van Ness for his funeral directing work. (SUMF ¶¶ 28, 29; Doc. No. 109-8 ("November 2023 Minutes") at 8–17). Van Ness attended the meeting. (Inj. Hr'g Tr. 62:14–23). He has since admitted that he engaged in the conduct described in the meeting minutes. (SUMF ¶ 34; Inj. Hr'g Tr. 105:1–119:9). The Board voted to resolve the complaints by consent order or contested case hearing, and on its own motion voted to refer the matters to the appropriate district attorney's office. (SUMF ¶ 31; Inj. Hr'g Tr. 119:15–19, 176:7–13).

The Board did not follow through. The Board never issued a consent order to Van Ness. (SUMF ¶ 35; Inj. Hr'g Tr. 176:14–19). The Board did not open a contested case. (SUMF ¶ 36; Inj. Hr'g Tr. 236:19–237:1). The Board did not attempt to collect any civil penalty. (SUMF ¶ 37; Inj. Hr'g Tr. 176:7–19). No district attorney pursued a case against Van Ness.[4] (SUMF ¶ 41; Inj. Hr'g Tr. 178:9–13, 237:2–4).

---

[4] Van Ness denies that the Board did not refer a case to the district attorney. (Response SUMF ¶ 41). He cites a July 15, 2024 email from Bryant stating that he had "been in contact with both District attorneys and the Attorney General's office regarding Mr. Van Ness." (Doc. No. 36-8). He also cites Gribble's testimony at pages 151 and 152 for the proposition that "Mr. Van Ness had been referred to the Cheatham County District Attorney," and that Gribble "spoke with the District Attorney in May 2023." (Response SUMF ¶ 41). Those pages of Gribble's testimony do not exist. His deposition transcript runs only 114 pages. A review of the transcript, moreover, reveals the opposite of what Van Ness argues. Gribble testified that he did not "know that [a district attorney had] been asked" to prosecute and did not "know of anyone that's agreed to." (Doc. No. 109-2 at 81:5–7). He also testified that a district attorney from Cheatham County told him "that he would," but "that wasn't because" Gribble "asked him to"—rather, "he volunteered that himself." (Id. 81:7–11). Gribble and Bryant each testified directly that the Board made no referral on the November 2023 complaints, the May/July 2022 conduct, or the March 2023 conduct. (Inj. Hr'g Tr. 237:2–4; Doc. No. 109-4 at 108:8–15, 122:25–123:4, 135:18–21). Van Ness thus has not come forward with evidence to raise a genuine dispute about the Board's alleged referral to the district attorney. The evidence instead reflects communication with prosecutors rather than a referral by the Board.

On January 15, 2025, the Board voted to close every complaint against Van Ness. (Inj. Hr'g Tr. 123:16–19). The complaints remain closed. (SUMF ¶ 42). Gribble, the Board's executive director for more than twenty-two years, testified that he has never seen the Board reopen a closed complaint.[5] (Id. ¶¶ 42, 43; Inj. Hr'g Tr. 220:17–221:15, 222:9–15).

### 5. Van Ness's Continuing Activity

Van Ness continues to operate in the funeral space. He assists funeral homes by providing them with bodies to embalm, helping with transport, providing information to complete death certificates, and delivering payments from decedents' families. (Inj. Hr'g Tr. 152:16–19, 159:2–4). He has a contract with Cone Funeral Home ("CFH") in Bowling Green, Kentucky, which obligates him to pay CFH the charges he presents to families in statements of goods and services for funerals where CFH is the funeral home provider. (SUMF ¶ 45; Inj. Hr'g Tr. 158:16–24). As of May 2025, he had performed funeral directing services for four different families that year. (SUMF ¶ 49; Inj. Hr'g Tr. 133:11–15, 162:8–21). Van Ness testified that he wants to continue performing all those activities without a license.

> **The Court**: What you've described to me is really the activities that funeral directors engage in. Is that what you're telling me, you want to be able to continue to do those funeral director activities . . . [w]ithout any licensure from the funeral board? Yes, no, or you don't know?
>
> **The Witness**: Yes. That's correct.
>
> **The Court**: And – and that's because you think the funeral board doesn't have the authority to [regulate that conduct]?
>
> **The Witness**: That is correct, sir.

---

[5] Van Ness's response to SUMF paragraphs 42 and 43 characterizes Gribble's testimony as conceding that he did not know if the complaints "could be re-opened at any time." (Response SUMF ¶ 42). His actual testimony was that, based on twenty-two years in his role, he had "never seen it done," had "never seen an attorney ask the board to do that," and that he "would consider these complaints are closed. That's – that's the end of them." (Inj. Hr'g Tr. 220:19–221:15). Gribble also confirmed that the Board could not vote to assess civil penalties or investigation costs on the closed complaints going forward. (Id. 222:9–15).

(Inj. Hr'g Tr. 138:20–23, 140:8–13).

## II. LEGAL STANDARD

Summary judgment is appropriate when there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "The party bringing the summary judgment motion has the initial burden of informing the Court of the basis for its motion and identifying portions of the record that demonstrate the absence of a genuine dispute over material facts." Rodgers v. Banks, 344 F.3d 587, 595 (6th Cir. 2003). In deciding a motion for summary judgment, the Court generally reviews all the evidence, facts, and inferences in the light most favorable to the party opposing the motion. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (citation omitted). The Court does not weigh the evidence, judge the credibility of witnesses, or determine the truth of the matter, and instead determines only whether the evidence presented reveals a disputed material issue of fact for the jury to decide. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986). The mere existence of a scintilla of evidence in support of the nonmoving party's position will be insufficient to survive summary judgment; rather, there must be evidence on which the jury could reasonably find for the nonmoving party. Rodgers, 344 F.3d at 595.

## III. ANALYSIS

Van Ness pursues two theories of injury based on the Board's alleged past enforcement of the FDEA against him and the threat of future enforcement. Neither support standing.

### A. Standing Legal Standard

"Federal courts," the Supreme Court has often explained, "are courts of limited jurisdiction." See, e.g., Kokkonen v. Guardian Life Ins. Co. of Am., 511 U.S. 375, 377 (1994). Consistent with that limited jurisdiction, federal courts "do not possess a roving commission to

9

publicly opine on every legal question." TransUnion LLC v. Ramirez, 594 U.S. 413, 423 (2021). The text of the Constitution instead limits a federal court's jurisdiction to only the kinds of "Cases" and "Controversies" listed in Article III. U.S. Const. art. III, § 2, cl. 1.

For Van Ness's "lawsuit to constitute a case within the meaning of Article III," he "must have standing to sue." Diamond Alt. Energy, LLC v. EPA, 606 U.S. 100, 110 (2025). Standing is a continuing jurisdictional requirement. Lujan v. Defs. of Wildlife, 504 U.S. 555, 561 (1992) (reasoning that because standing is not merely a pleading requirement "but rather an indispensable part of the plaintiff's case, each element must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, i.e., with the manner and degree of evidence required at the successive stages of the litigation"). On summary judgment, Van Ness must produce evidence showing the "specific facts" that support standing. Tenn. Conf. of the NAACP v. Lee, 105 F.4th 888, 903 (6th Cir. 2024) (quoting id.). That showing requires proof of three elements: "injury in fact, causation, and redressability." Diamond Alt. Energy, 606 U.S. at 111 (citing Lujan, 504 U.S. at 560).

The Court's analysis once again starts and stops with the first requirement—injury in fact. (See Doc. No. 87 at 20 (concluding that Van Ness could not demonstrate an injury in fact)). To satisfy the injury-in-fact requirement, Van Ness must demonstrate an injury that is "concrete," "particularized," and "actual or imminent, not speculative." FDA v. All. for Hippocratic Med., 602 U.S. 367, 381 (2024). That requires Van Ness to demonstrate more than mere "subjective chill" of his First Amendment protected conduct. Speech First, Inc. v. Schlissel, 939 F.3d 756, 764 (6th Cir. 2019) (quoting Clapper v. Amnesty Int'l USA, 568 U.S. 398, 418 (2013)). Instead, he must prove "specific present objective harm or a threat of specific future harm." Id. (quoting Clapper, 568 U.S. at 418); see also Morrison v. Bd. of Educ. of Boyd Cnty., 521 F.3d 602, 610

(6th Cir. 2008) ("In order to have standing . . . a litigant alleging chill must still establish that a concrete harm—i.e., enforcement of a challenged statute—occurred or is imminent.").

Van Ness pursues both of those theories of injury. He argues that the Board's past enforcement of the FDEA against him, as well as credible threat of future enforcement, chill his protected conduct. (Doc. No. 121 at 17–22). The undisputed facts reflect otherwise.

B.      Past Enforcement

Van Ness seeks both prospective relief and compensatory damages for the Board's alleged past enforcement of the FDEA against him. (Doc. No. 36 at 44–45). To establish injury in fact based on the Board's past enforcement, Van Ness must produce evidence of a "concrete," "particularized," and "actual" injury. All. for Hippocratic Med., 602 U.S. at 381. To support his request for prospective relief, that past injury must produce "continuing, present adverse effects." Sullivan v. Benningfield, 920 F.3d 401, 408 (6th Cir. 2019) (citation omitted).

It is undisputed that the Board never took enforcement action against Van Ness for his death doula work. Start with the June 2022 letter. The letter was not approved by the Board and did not represent the Board's view of Van Ness's activities. (SUMF ¶¶ 16, 18). Van Ness also did not change his conduct because of it. (Id. ¶ 22; Inj. Hr'g Tr. 46:5–9, 172:4–16). The letter caused Van Ness no injury.

The November 14, 2023 Board meeting likewise did not produce a cognizable harm. The subject of that meeting was Van Ness's funeral directing activities—not the death-doula or community death-care advocate work on which his First Amendment claims rest. (SUMF ¶¶ 28–29; November 2023 Minutes at 8–17). Van Ness himself admits the conduct described in the meeting minutes. (SUMF ¶ 34; Inj. Hr'g Tr. 105:1–119:9). He also concedes that he did "everything that a funeral director, if hired, probably would have done" except charge. (Inj. Hr'g Tr. 114:20–25). As the Court previously held, "that the Funeral Board's purported enforcement

11

action against Van Ness pertains to different conduct than what he bases his claims on is enough to doom his standing arguments for his purported past and present injuries." (Doc. No. 87 at 13). The undisputed evidence supports that same finding here.

Even worse, the Board never followed through on the November 2023 vote. The Board never issued a consent order to Van Ness. (SUMF ¶ 35; Inj. Hr'g Tr. 176:14–19). The Board did not open a contested case against Van Ness. (SUMF ¶ 36; Inj. Hr'g Tr. 236:19–237:1). The Board did not attempt to collect any civil penalty from Van Ness. (SUMF ¶ 37; Inj. Hr'g Tr. 176:7–19). No district attorney pursued a case against Van Ness. (SUMF ¶ 41; Inj. Hr'g Tr. 178:9–13, 237:2–4). The Board closed every complaint against Van Ness in January 2025, and Gribble has never seen the Board reopen a closed complaint. (SUMF ¶¶ 42, 43; Inj. Hr'g Tr. 220:17–221:15). As of today, those complaints remain closed. (SUMF ¶ 42). Van Ness has not been arrested, contacted by any district attorney, or otherwise subjected to enforcement. (SUMF ¶¶ 38–40). Viewing that undisputed evidence in the light most favorable to Van Ness, the Court cannot conclude that he has demonstrated a protected interest that the Board invaded through enforcement of the FDEA. See All. for Hippocratic Med., 602 U.S. at 381.

Van Ness also argues that he is presently chilled from engaging in his death-doula and community death-care advocate work. He testified that, out of fear of the Board, he had declined to offer services to between "75 to . . . 175" individuals. (Inj. Hr'g Tr. 196:1–2). That assertion is unverified. Van Ness refused to identify a single individual he had turned away at the injunction hearing. (Inj. Hr'g Tr. 167:5–169:10). He also fails to come forward with that evidence at summary judgment. At summary judgment, Van Ness must produce "specific facts" supporting standing. Lee, 105 F.4th at 903. Contrary to Van Ness's testimony, the undisputed record shows Van Ness's continued activity rather than chilled expression. Van Ness continued to assist funeral

homes and families through 2024 and 2025, including by performing funeral-directing services for four families in early 2025. (SUMF ¶¶ 44, 49; Inj. Hr'g Tr. 133:11–15, 162:8–21). Being charitable, Van Ness claims "subjective chill," which is exactly what the Sixth Circuit has held as insufficient to establish a cognizable injury. Speech First, 939 F.3d at 764; Morrison, 521 F.3d at 610. Van Ness thus lacks standing based on past and present injuries because he has not offered evidence of those injuries.

      C.      Future Enforcement

This leaves Van Ness with one remaining path to demonstrate standing: he must show that he has standing to bring a pre-enforcement challenge against the Board. In a pre-enforcement posture, an injury may rest on "an imminent, rather than an actual, injury, but only when the 'threatened injury is real, immediate, and direct'"—i.e., "certainly impending." Crawford v. U.S. Dep't of Treasury, 868 F.3d 438, 454 (6th Cir. 2017) (quoting Davis v. FEC, 554 U.S. 724, 734 (2008)). The Sixth Circuit weighs four non-exclusive "McKay factors": (1) a history of past enforcement; (2) enforcement warning letters sent to the plaintiff regarding the plaintiff's specific conduct; (3) statutory features that make enforcement easier or more likely; and (4) the defendant's refusal to disavow enforcement. Friends of George's, Inc. v. Mulroy, 108 F.4th 431, 439 (6th Cir. 2024) (citing McKay v. Federspiel, 823 F.3d 862, 868–69 (6th Cir. 2016)). The Court considered each of these factors at the preliminary-injunction stage in finding that Van Ness failed to make the required showing necessary to establish standing for his pre-enforcement claims. (Doc. No. 87 at 16–20). Viewing the record in the light most favorable to Van Ness, none of those findings have shifted in Van Ness's favor.

The first McKay factor, history of past enforcement, weighs against Van Ness. The Board has never enforced the FDEA against Van Ness for the death-doula activity on which his claims

Case 3:24-cv-01353    Document 136    Filed 06/03/26    Page 13 of 15 PageID #: 3765

rest. (SUMF ¶¶ 35–42). The record contains no evidence of enforcement against others for comparable activity.

The second McKay factor, enforcement warnings regarding specific conduct, likewise weighs against Van Ness. The only possible candidate is the June 2022 letter from Bryant. It is undisputed that the Board did not endorse that letter, and it was not aimed at Van Ness's specific conduct. Rather, Bryant sent the June 2022 letter to various individuals to provide them information about the new FDEA provision on unlicensed assistants. (SUMF ¶¶ 16, 18; Inj. Hr'g Tr. 250:3–5, 250:23–25). Van Ness has not demonstrated that the June 2022 letter was an enforcement letter, or one attributable to the Board, under McKay.

The third McKay factor, whether there are attributes of the FDEA that make enforcement more or less likely, is neutral. As the Court explained in its prior Memorandum Opinion, the FDEA permits any member of the public to file a complaint, but the Board is not required to act on a complaint. It may decline to investigate, and it proceeds with an investigation only after determining that it has jurisdiction. (Doc. No. 87 at 18–19; SUMF ¶¶ 7, 8, 9). The Board also does not have jurisdiction to regulate death doula activity. (Response SUMF ¶ 10). This factor again does little to sway the Court's analysis one way or another. (Doc. No. 87 at 19).

Finally, the fourth McKay factor, the Board's position on enforcement, again weighs against Van Ness. The record shows that the Board has no interest in enforcing the FDEA against Van Ness if he truly seeks to participate in death doula work. The Board has disclaimed jurisdiction over that conduct. (Response SUMF ¶ 10; Inj. Hr'g Tr. 231:20–22). The prior alleged enforcement that Van Ness cites to pertained to his funeral directing work. The Board closed every complaint against Van Ness in January 2025. (SUMF ¶ 42). It has never reopened a closed complaint. (Id. ¶ 43).

At bottom, three of the four <u>McKay</u> factors weigh against a finding that enforcement against Van Ness for his death doula work is "certainly impending." <u>Friends of George's</u>, 108 F.4th at 435. The Court therefore finds that Van Ness fails to establish standing for his pre-enforcement claims.

## IV.  CONCLUSION

Van Ness has not suffered an injury. Viewed in the light most favorable to him, the undisputed facts establish at most subjective chill—exactly what the Sixth Circuit has held is insufficient to establish standing. <u>Speech First</u>, 939 F.3d at 764; <u>Morrison</u>, 521 F.3d at 610. The Board never enforced the FDEA against Van Ness, and there is no certainly impending future enforcement. <u>Friends of George's</u>, 108 F.4th at 435. What remains is a mismatch between what Van Ness pleads and what the record shows. His First Amendment claims rest on speech, religious expression, and uncompensated help to family, friends, co-parishioners, and neighbors. Yet the activity the record reflects—and that Van Ness wants to continue—is funeral directing without a license. (Inj. Hr'g Tr. 138:20–23, 140:8–13). Van Ness, in short, requests an advisory opinion about whether the FDEA reaches his conduct. The Court cannot issue one.

The Board's motion for summary judgment (Doc. No. 109) will be granted. The request to treat the motion for summary judgment as unopposed and the statement of material facts as undisputed (Doc. No. 115) will be granted. The motion to accept the late filings as timely (Doc. No. 122) will be denied.

An appropriate order will enter.

_____
WAVERLY D. CRENSHAW, JR.
UNITED STATES DISTRICT JUDGE